Matthew E. Lewitz (SBN: 325379)
Email: mlewitz@cozen.com
Brett N. Taylor (SBN: 274400)
btaylor@cozen.com
Matthew E. Lewitz (SBN: 325379)
Email: mlewitz@cozen.com
Gianna Puccinelli (SBN: 311313)
gpuccinelli@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394-4700

Melissa Siebert (*Pro Hac Vice* Forthcoming)
Email: msiebert@cozen.com
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312.382.3100
Facsimile: 312.382.8910

Attorneys for Defendant
Samba TV, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP MCDONALD, STEVE DELLASALA, BOB WARDEN, and VINCE TOPHONEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMBA TV, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03470-JSC<br><br>**DEFENDANT SAMBA TV, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 9, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. Jacqueline Scott Corley<br><br>Complaint Filed: April 18, 2025<br><br>[Served and Filed Concurrently with Declaration of Emanuele Mazzoni; Declaration of Chi-Feng (Fynn) Chen; Declaration of Tony Tseng; Request for Judicial Notice and [Proposed] Order] |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 10

II. RELEVANT FACTUAL BACKGROUND ........ 11

A. Plaintiffs' Allegations ........ 11

B. Any Samba Software Was Enabled and Consented To By Plaintiffs ........ 12

III. ARGUMENT ........ 13

A. Applicable Legal Standard ........ 13

B. Plaintiffs Lack Article III Standing Because They Have No Injury-in-Fact ........ 14

C. Plaintiffs Have No Actionable Claims Against Samba ........ 15

1. Plaintiffs are Non-Californians and Cannot Bring State Law Claims ........ 15

2. The Complaint Fails to State a Common Law Claim for Intrusion Upon Seclusion or a Constitutional Claim for Invasion of Privacy ........ 17

a. Plaintiffs Had No Reasonable Expectation of Privacy in the Alleged "Personally Identifiable Information" at Issue ........ 17

b. Samba's Alleged Conduct was Neither Offensive Nor Serious Enough to Meet the Threshold for an Actionable Intrusion ........ 19

3. Plaintiffs Fail to Adequately Plead Their CIPA Claims ........ 20

a. Plaintiffs Cannot State a Claim Under Penal Code Section 631 ........ 20

b. Plaintiffs Cannot State a Claim Under Penal Code Section 632 ........ 22

c. Because None of Samba's Alleged Conduct Occurred Via Telephone Line, Plaintiffs' Trap and Trace Claims Fail ........ 23

d. Samba's Technology Allegedly Captures "Data" Beyond the Scope of the Trap and Trace Statute ........ 26

e. The Rule of Lenity Supports a Finding that the Trap and State Provisions of CIPA Do Not Apply to Internet-Based Activity ........ 27

4. The Complaint Fails to State a CDAFA Claim ........ 28

5. VPPA Does Not Apply ........ 29

a. Samba Is Not a "Video Tape Service Provider" ........ 30

b. Plaintiffs Are Not "Consumers" ........ 31

c. Samba Does Not Disclose "Personally Identifiable Information" ........ 32

d. The Rule of Lenity Requires That Any Ambiguity Be Read Against Expanding VPPA to a Software Developer Like Samba ..... 33

6. Plaintiffs Equitable Relief Claims Fail ..... 33

IV. CONCLUSION ..... 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basile v. LA Film Sch., LLC*,
827 Fed.App'x 649 (9th Cir. 2020) .... 13

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 13, 14

*Bibiano v. Lynch*,
834 F.3d 966 (9th Cir. 2016) .... 13

*Cantu v. Tapestry, Inc.*, *Cantu v. Tapestry, Inc.*
2023 WL 4440662 (S.D. Cal. July 10, 2023) .... 31

*Carroll v. General Mills, Inc.*,
2023 WL 4361093 (C.D. Cal. Jun. 26, 2023) .... 30, 31

*Cody v. Ring LLC*,
718 F.Supp.3d 993, 999 (N.D. Cal. 2024) .... 25

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461 (N.D. Cal. 2021) .... 29

*Crandon v. United States*,
494 U.S. 152 (1990) .... 33

*Doe v. Cty. of Santa Clara*
2024 WL 3346257 (N.D. Cal. July 8, 2024) .... 29

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .... 32

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .... 31

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .... 34

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) .... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 19

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ... 22

*In re Ford Tailgate Litig.*,
2014 WL 1007066 (N.D. Cal. Mar. 12, 2014), ... 34

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ... 31, 32

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ... 19, 20, 22

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ... 20

*Graham v. Noom, Inc.*,
533 F.Supp.3d 823 (N.D. Cal. 2021) ... 21

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100 (N.D. Cal. 2013) ... 14

*Hazel v. Prudential Fin., Inc.*
2023 WL 3933073 (N.D. Cal. June 9, 2023) ... 29

*Heeger v. Facebook, Inc.*
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ... 17

*Henderson v. Chicago Cubs Baseball Club, LLC*,
2018 WL 3326682 (C.D. Cal. May 24, 2018) ... 16, 19

*Hubbard v. Google LLC*
2024 WL 3302066 (N.D. Cal. July 1, 2024) ... 20, 33, 34

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ... 20, 28, 29

*Kishnani v. Royal Caribbean Cruises Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025) ... 27, 33

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ... 13

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F.Supp.3d 1072 (C.D. Cal. 2023) ... 25

*Lightoller v. Jetblue Airways Corp.*
2023 WL 396823 (S.D. Cal. June 12, 2023) ... 19

*Lineberry v. AddShopper, Inc.*
2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......... 16, 17, 29

*Lopez v. Apple, Inc.*,
2021 WL 823122 (N.D. Cal. Feb. 10, 2021) .......... 22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 17, 20, 28

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .......... 27, 33

*Mastel v. Miniclip SA*,
549 F.Supp.3d 1129 (E.D. Cal. 2021) .......... 21

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 17

*Mejia v. Reed*,
31 Cal.4th 657 (2003) .......... 23

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 22

*Mollaei v. Otonomo Inc.*,
(9th Cir. Apr. 22, 2025) .......... 23

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 14

*N. Alaska Salmon Co. v. Pillsbury*,
174 Cal. 1 (1916) .......... 16

*Nei Contracting & Engineering, Inc. v. Hanson Aggregates Pac. Sw., Inc.*
2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) .......... 14

*In re Nickelodeon Consumer Priv. Litig.*,
827 F. 3d 262 (3d Cir. 2016) .......... 32

*Nowak v. Xapo, Inc.*
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......... 29

*People v. Avery*
27 Cal.4th 49 (2002) .......... 27

*People v. Martinez*,
88 Cal.App.4th 465 (2001) .......... 16

*People v. Perez*,
35 Cal.4th 1219 (2005) ... 22

*People v. Wilson*,
17 Cal.App.3d 598 (1971) ... 22

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ... 31

*Posadas v. Goodyear Tire & Rubber Co.*
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ... 18

*Revitch v. New Moosejaw, LLC*
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 22

*Rodriguez v. Delta T LLC*
2023 WL 9419152 (C.D. Cal. Dec. 12, 2023) ... 31

*Rodriguez v. JP Boden Servs. Inc.*
2024 WL 559228 (S.D. Cal. Feb. 12, 2024) ... 31

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ... 13

*Shulman v. Group W Prods., Inc.*
18 Cal. 4th 200 (1998) ... 17

*Smith v. Maryland*,
442 U.S. 735 (1979) ... 26

*Solomon v. Flipps Media, Inc.*,
136 F. 4th 41 (2d Cir. 2025) ... 32

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ... 14

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ... 30

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191 (2011) ... 16

*Tavernetti v. Superior Court*,
22 Cal.3d 187 (1978) ... 20, 22

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008) ... 23

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .... 19

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 751 (N.D. Cal. 2023) .... 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .... 21

**Statutes**

18 U.S.C.A. § 2710(a)(4) .... 30, 32

18 U.S.C. § 2710(a)(1) .... 31

18 U.S.C. § 2710(c)(2) .... 33

Cal. Penal Code § 502(a) .... 16, 24

Cal. Penal Code § 502(e)(1) .... 28

Cal. Penal Code § 630 .... 16, 24

Cal. Penal Code § 631 .... 15, 20

Cal. Penal Code § 631(a) .... 20, 21, 22, 25

Cal. Penal Code § 632 .... 15, 22

Cal. Penal Code § 632(a) .... 22

Cal. Penal Code § 632.01 (eff. Jan. 1, 2017) .... 25

Cal. Penal Code §§ 638.50 and 638.51 .... 15, 23, 26, 27

Cal. Penal Code § 638.50(b) .... 26

Cal. Penal Code § 638.50(c) .... 26

Cal. Penal Code § 638.51 .... 26

Federal Rule of Civil Procedure 12(b)(1) .... 13

Federal Rule of Civil Procedure 12(b)(6) .... 13

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) .... 10

Penal Code §§ 629.51(2), 638.50(a), 638.51(b) .... 28

Penal Code § 638.51(c) .... 27

U.S. Code Title 18 .......... 33

**TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 9, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard, in the above-entitled Court located at 450 Golden Gate Avenue, Courtroom 8,11th Floor, San Francisco, California 94102, Defendant Samba TV, Inc. ("Samba") will move, and hereby does move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an Order dismissing Plaintiffs' Complaint in its entirety without leave to amend. This motion is made on the ground that Plaintiffs fail to allege the necessary facts to establish that they suffered an injury-in-fact to confer this Court with subject matter jurisdiction. This motion is also made on the ground that Plaintiffs fail to state any plausible claims for relief.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Emanuel Mazzoni, the Declaration of Tony Tseng, the Declaration of Chi-Feng (Fynn) Chen, the accompanying Request for Judicial Notice, all pleadings and papers on file, and such other further matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Steve DellaSala, Bob Warden, and Vince Tophoney (collectively, "Plaintiffs")—all non-California residents—invoke cherry-picked screenshots from Defendant Samba TV, Inc.'s ("Samba") website, selective soundbites, and provocative, yet empty buzzwords like "video fingerprinting" and "wide-spread surveillance" to weave a tall tale about Samba's alleged collection of mundane television viewing habits without their consent. Plaintiffs spin this concocted narrative in furtherance of their putative class action "kitchen sink" Complaint asserting alleged common law privacy violations and claims under penal statutes intended to regulate criminal activity, which are not valid.

As a threshold matter, the Court lacks subject matter jurisdiction over this dispute because Plaintiffs lack standing. The Samba technology at issue is only enabled when a Smart TV owner (here Plaintiffs) affirmatively actually enables it via a toggle button that also indicates consent to Samba's comprehensive Privacy Policy. Plaintiffs' own allegations establish any collection, use, and sharing of Plaintiffs' viewership data was knowing and consensual. Thus, Plaintiffs did not

sustain any injury-in-fact to confer them with standing to maintain this action.

Moreover, none of the Plaintiffs are California residents, and thus cannot avail themselves of the California Constitution, the California Invasion of Privacy Act ("CIPA") and the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), which are intended to protect California citizens. There is no basis for Plaintiffs to ask this Court to entertain claims under California law based on alleged capture of their viewing activity by software contained within their own television sets, which are located in North Carolina and Oklahoma, where they reside.

Beyond these gateway problems, pleading defects abound. Plaintiffs' common law and constitutional invasion of privacy claims fail because Plaintiffs do not allege that Samba's supposed intrusion into their IP addresses and "other information" was sufficiently offensive. Plaintiffs' CIPA claims must also be dismissed, particularly when viewed through the lens of CIPA's legislative origins as a criminal statute proscribing telephone surveillance. Plaintiffs' CIPA claims also fail to allege that Samba intended to wiretap a telephone line or intercept the contents of any of Plaintiffs' communications in real time. Further, Plaintiffs do not maintain a reasonable expectation of privacy in their television watching or "internet-based" activity. Plaintiffs' CIPA trap and trace claim is doomed because Samba did not record any information through telephone lines.

Plaintiffs' remaining statutory and equitable claims fare no better. Plaintiffs' CDAFA claim fails because they do not plausibly allege how they have been harmed by the purported collection of their information. Plaintiffs cast an outstretched net in trying to hold Samba liable under the Video Privacy Protection Act ("VPPA"), yet another inapplicable criminal statute. VPPA imposes liability against only "video tape service providers," and Samba isn't one. Consequently, Plaintiffs do not constitute "subscribers" under VPPA to confer them with standing. Plaintiffs' failure to allege collection of "personal identifying information" that could enable an "ordinary person" to identify their video viewing habits is the proverbial "cherry on top" supporting dismissal. Finally, Plaintiffs' equitable claims do not pass muster.

## II. RELEVANT FACTUAL BACKGROUND

### A. Plaintiffs' Allegations

Samba is a television technology company whose proprietary Automatic Content

Recognition ("ACR") software is utilized in Sony Smart TVs. (Compl. ¶¶ 2, 62.) The ACR software and Samba's corresponding "Identity Graph" compile and process video viewing activity in connection with the applicable Sony Smart TV, only after the television's owner enables the software and consents. (Compl. ¶¶ 59, 62, 108.) To facilitate this process, the Samba technology assigns each Smart TV device a unique identifier known as a "Samba ID" to compile and process viewer activity. (Compl. ¶¶ 5-6.)

Plaintiffs DellaSala, Warden, and Tophoney are residents of North Carolina, Oklahoma, and North Carolina, respectively.[1] (Compl. ¶¶ 19, 26, 33.) Plaintiffs allege that they each own Sony Smart TVs that contain Samba's ACR software. (Compl. ¶¶ 20, 27, 34.) Plaintiffs contend that, at some unspecified time, they watched/streamed video content on their respective televisions. (Compl. ¶¶ 20-21, 27-28, 34-35.) According to Plaintiffs, the ACR Software captured their "IP address[es] and other information" to identify their viewing habits. (Compl. ¶¶ 21, 28, 35.) Plaintiffs do not allege that the ACR Software captured any sensitive, personal information. (*See generally*, Compl.) Plaintiffs contend that Samba has unlawfully tracked their video viewing activity across other, unidentified "internet-enabled" devices without their consent to use for Samba's and third-party advertisers' commercial purposes. (Compl. ¶¶ 24-25, 31-32, 38-39.)

### B. <u>Any Samba Software Was Enabled and Consented To By Plaintiffs</u>

Contrary to Plaintiffs' allegations, the Samba technology at issue maintains "opt-in only" functionality. (Declaration of Emanuele Mazzoni ("Mazzoni Decl."), ¶ 7.) In other words, the ACR software, embedded in Sony Smart TVs since approximately 2015, remains dormant by default and does not collect viewership signals unless and until a Smart TV owner affirmatively enables the ACR software. (*Id.*; Declaration of Tony Tseng ("Tseng Decl."), ¶ 4, 12.) The ACR software is enabled only when a Smart TV owner either (1) consents to its activation at the time of initial installation of a Sony Smart TV, or (2) manually activates the software through the Smart TV's "Settings" menu. (Tseng Decl. ¶¶ 6-11.) Moreover, device owners, like Plaintiffs, acknowledge that by choosing to enable the ACR software, they are consenting to Samba's Privacy Policy and

[1] For unknown reasons, early on in the pendency of this action, Plaintiff Philip McDonald dismissed his claims without prejudice. (*See* ECF No. 23.)

the collection of their viewership data for all enumerated purposes. (*Id.* ¶¶ 7-11.) At all relevant times, Samba's Privacy Policy discloses Samba's collection and potential use of viewership data. (Declaration of Chi-Feng (Fynn) Chen ("Chen Decl."), Exs. 1-3.) The Privacy Policy also discloses that viewership information may be shared with third-parties, like advertisers and content producers. (*Id.*) Any collection of Plaintiffs' viewership data was done with consent through their own activation of the ACR software.

## III. ARGUMENT

### A. Applicable Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires the Court to assess subject matter jurisdiction "before moving on to other, non-merits threshold issues." *Bibiano v. Lynch*, 834 F.3d 966, 971 n.4 (9th Cir. 2016). A jurisdictional attack "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). On a facial attack, a defendant submits extrinsic evidence and "the court need not presume the truthfulness of the plaintiff's allegations." *Id.* In response, "the plaintiff must support [his] jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint and scrutinizes whether a plaintiff adequately states a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While a court generally must deem a complaint's allegations as true and draw all reasonable inferences in plaintiff's favor, "pleadings that contain no more than conclusions are not entitled to the assumption of truth." *Basile v. LA Film Sch., LLC*, 827 Fed.App'x 649, 652 (9th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679). This plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, "[f]actual allegations must be enough to 'raise a right to relief above the speculative level.'" *Pac. Shores Hos.*

*v. EMCOR Group Inc.,* No. CV-10-07480, 2011 13217541, at *1 (E.D. Cal. Feb. 4, 2011) (quoting *Twombly*, 550 U.S. at 555). "[A] court may take judicial notice of documents referenced in the complaint, as well as matters in the public record" in deciding a motion to dismiss. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).

### B. Plaintiffs Lack Article III Standing Because They Have No Injury-in-Fact

"[S]tanding is a threshold matter central to subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see also Murthy v. Missouri*, 603 U.S. 43, 56 (2024). Standing requires that Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks and citation omitted).

Here, the interactive prompts and conspicuous disclosures made to Plaintiffs on their own televisions establish their consent to collection of their viewership data, such that they have not sustained an injury-in-fact. With consent, "[t]he critical question is whether the party whose communications were intercepted had adequate notice of the interception." *Nei Contracting & Engineering, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 12-cv-01685-BAS(JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). Here, the ACR software could not have collected Plaintiffs' data unless Plaintiffs affirmatively consented—either at the time their Smart TVs were installed or by later manually activating the software. (Tseng Decl., ¶¶ 4-12; Mazzoni Decl., ¶¶ 7-8.) By enabling the Samba Technology, Plaintiffs necessarily consented to Samba's Privacy Policy, which identifies the specific types, potential uses, and sharing with third parties of such data. (Chen Decl., Exs. 1-3.) Plaintiffs admit as much, as evidenced by the screenshot embedded in their Complaint at ¶ 108:

///

///

///




Because Plaintiffs' consent to Samba's alleged conduct negates any injury-in-fact (and highlights that any purported "injury" was self-inflicted), Plaintiffs' lack standing. *Larroque v. First Advantage LNS Screening Solutions, Inc.*, Case No. 15-04684-JSC, 2016 WL 4577257, at *5 (lack of subject matter jurisdiction over alleged FCRA claim where plaintiff "expressly consented" to release of credit report and therefore lacked standing).

**C. <u>Plaintiffs Have No Actionable Claims Against Samba</u>**

Plaintiffs' Complaint asserts nine causes of action against Samba for (i) intrusion upon seclusion; (ii) invasion of privacy under the California Constitution; (iii) CIPA violations under Cal. Penal Code § 631; (iv) CIPA violations under Cal. Penal Code § 632; (v) CIPA violations under Cal. Penal Code §§ 638.50 and 638.51; (vi) violation of CDAFA; (vii); violation of VPPA; (viii) unjust enrichment; and (ix) injunctive relief. Each of Plaintiffs' claims fails to satisfy the factual and legal predicates necessary to establish their alleged privacy violations and, in some cases, even fail to allege the use of the technologies required to invoke particular privacy statutes.

**1. <u>Plaintiffs are Non-Californians and Cannot Bring State Law Claims</u>**

None of the Plaintiffs are California residents. Yet, they seek relief under the California Constitution and California statutes—namely, CIPA and CDAFA—that are, by their express terms,

intended to protect ***California citizens only***. Because neither the California Constitution, nor CIPA, nor CDAFA apply extraterritorially, Plaintiffs' claims thereunder must be dismissed.

Article I, Section 1 of the California Constitution, on which Plaintiffs' constitutional claim rests, is aimed at protecting the privacy rights of California citizens. *See People v. Martinez*, 88 Cal.App.4th 465, 474 (2001) ("Section 1 … ***protects Californians*** against invasions of privacy by nongovernmental as well as governmental parties.") (internal quotation marks and citation omitted) (emphasis added); *Henderson v. Chicago Cubs Baseball Club, LLC*, 2018 WL 3326682, at *1 (C.D. Cal. May 24, 2018) ("If none of the scouts whose privacy Defendant seeks to protect are California residents, then the California [constitutional] right of privacy would not apply to them."). Further, "[o]rdinarily, the statutes of a state have no force beyond its boundaries." *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). "A California statute applies extraterritorially only if that 'intention is clearly expressed or reasonable to be inferred from the language of the act or from its purpose, subject matter or history.'" *Lineberry v. AddShopper, Inc.*, Case No. 23-cv-01996-VC, 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025) (internal quotation marks and citation omitted); *see also Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) ("However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, … unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.").

Here, both CIPA and CDAFA are clear and unambiguous in their limited application to California citizens. The "Legislative Declaration and Intent" that serves as the preamble to CIPA explicitly provides that CIPA "intends to protect the right of privacy ***of the people of this state***." Cal. Penal Code § 630 (emphasis added). Similarly, the California Legislature enacted CDAFA to ensure "the protection of the privacy of individuals … and others ***within this state*** that lawfully utilize … computers, computer systems, and data." Cal. Penal Code § 502(a) (emphasis added).

Plaintiffs admit they reside outside of California in North Carolina (Plaintiffs DellaSala and Tophoney) and Oklahoma (Plaintiff Warden). (Compl. ¶¶ 19, 26, 33.) Further, each Plaintiff contends that his "IP address and other information" was allegedly intercepted through a Samba "chip set embedded in [Plaintiffs'] televisions…" or through the alleged matching of signals from

Plaintiffs' Smart TVs and other personal devices (Compl. ¶¶ 6, 21, 28, 35.) In other words, any purported interception occurred in Plaintiffs' televisions or devices at their places of residence outside of California. Accordingly, Plaintiffs' claims under the California Constitution (Count II), CIPA (Counts III-V), and CDAFA (Count VI) are all ripe for dismissal. *See Lineberry*, 2025 WL 551864, at *3 (dismissing CIPA and CDAFA claims brought by non-California resident).

**2. <u>The Complaint Fails to State a Common Law Claim for Intrusion Upon Seclusion or a Constitutional Claim for Invasion of Privacy</u>**

Plaintiffs assert companion claims for intrusion upon seclusion and purported privacy violations under the California Constitution. (Compl. ¶¶ 149-171.) While Plaintiffs cannot assert these California-law based claims, to the extent they are entertained they still fail.

To state a intrusion upon seclusion claim, a plaintiff must allege "(1) intrusion into a private place, conversation or matter (2) in a manner highly offensive to a reasonable person." *Shulman v. Group W Prods., Inc.* (1998) 18 Cal. 4th 200, 231. To allege a violation of California's constitutional right to privacy, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citation omitted). When brought together, "it is appropriate to assess the two claims together and examine 'the[ir] largely parallel elements' which call on the Court to consider '(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests.'" *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1031-37 (N.D. Cal. 2019). "A plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved." *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (cleaned up).

**a. <u>Plaintiffs Had No Reasonable Expectation of Privacy in the Alleged "Personally Identifiable Information" at Issue</u>**

Plaintiffs conveniently omit any allegations about (1) when they purchased their Smart TVs; (2) the setup/installation process for those devices (and whether they were actually prompted to

consent to use of Samba's technology at that time); and (3) when their viewership data was allegedly recorded.[2] (*See generally*, Compl.) Against this backdrop, they allege that Samba purportedly intercepted Plaintiffs' IP addresses, video-viewing data, and unspecified "other information." (Compl. ¶¶ 6, 21, 28, 35, 91, 189.). Because Plaintiffs do not maintain a reasonable expectation of privacy in this information, Plaintiffs' intrusion upon seclusion and constitutional privacy claims fail.

"To determine whether a reasonable expectation of privacy exists, the Court considers 'whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402-L-DDL, 2024 WL 5114133, at *6 (S.D. Cal. Dec. 13, 2024). "This question depends on 'a variety of factors, including the customs, practices, and circumstances surrounding defendant's particular activities.'" *Id.* (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020)).

While the Complaint dramatically alleges that Samba engages in "wide-spread surveillance" (Compl. ¶ 9), Plaintiffs fail to identify the collection of any sensitive personally identifiable information in which they maintain a reasonable expectation of privacy. Rather, all of the information generally identified within the Complaint constitutes unremarkable personal information that is routinely collected as part of electronic communications and digital commerce. (Compl. ¶¶ 21, 23, 38, 30, 35, 37 (alleging intercepted data included Plaintiffs' "IP address[es] and other information" as well as unique identifiers including the "Samba ID").)

In other words, Samba is not alleged to have collected any sensitive data in which Plaintiffs held a reasonable expectation of privacy. *See, e.g*, *Posadas*, *supra*, 2024 WL 5114133, at *7 (dismissing intrusion upon seclusion claim where pleading "contain[ed] no factual allegations that Plaintiff disclosed intimate or sensitive personally identifiable information the capture and use of which can be considered 'highly offensive'") (citation omitted); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024) (dismissing invasion of privacy claim because plaintiff did not allege facts suggesting defendant collected intimate or sensitive personally identifiable

[2] In fact, it's entirely unclear when any allegedly actionable conduct ever took place.

information); *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*.") (emphasis in original).[3] Plaintiffs lack a reasonable expectation of privacy in their anonymous data.

**b. <u>Samba's Alleged Conduct was Neither Offensive Nor Serious Enough to Meet the Threshold for an Actionable Intrusion</u>**

Even if Plaintiffs have a reasonable expectation of privacy in their IP addresses, video - viewing content, and unspecified "other information" (respectfully, they do not), "'[t]he California Constitution and the common law set a high bar' for an intrusion to be actionable." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (collecting cases)). "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.*

Plaintiffs allege that Samba captured their IP addresses, SambaID (that is not personally sensitive, but is naturally generated by Samba), and vaguely described "other information." (Compl. ¶¶ 21, 23, 38, 30, 35, 37.) The alleged collection of this unremarkable information is not a "highly offensive invasion of privacy" or an afront to modern social norms.

Indeed, "[m]any courts have found that the collection—and even disclosure to certain third parties—of personal information about the user's use of a technology may not constitute a

[3] *See also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers ...."); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 396823, at *4 (S.D. Cal. June 12, 2023) ("Although Plaintiff alleges that Defendant monitored and recorded her communications via software when she visited Defendant's website, Plaintiff does not allege that she disclosed any personal information when she visited the website. As such, no personal information was intercepted and recorded.").

sufficiently "egregious breach of social norms" to make out a common law or constitutional privacy claim." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 830. Courts characterize the collection and disclosure of such data as "routine commercial behavior." *Low*, 900 F. Supp. 2d at 1025. "'[D]ata collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy.'" *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (quoting *Hammerling*, 615 F. Supp. 3d at 1090 (citations omitted)); *see also*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (alleged disclosure of unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices did not constitute an egregious breach of social norms); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive).

Samba did not engage in any conduct that would meet the high bar for highly offensive behavior to constitute or support a common law or constitutional claim for invasion of privacy.

**3. <u>Plaintiffs Fail to Adequately Plead Their CIPA Claims</u>**

**a. <u>Plaintiffs Cannot State a Claim Under Penal Code Section 631</u>**

Plaintiffs seek to hold Samba liable under all four clauses of Section 631(a). (Compl. ¶¶ 160-71.) Section 631(a) prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978). A fourth claim under Section 631(a) exists for someone who "aids, agrees with, employs, or conspires with any persons or persons to unlawfully do, or permit, or cause to be done" any conduct under the other three prongs. Because Plaintiffs fail to establish the requisite elements to trigger each clause, their Section 631(a) claims fail as a matter of law.

*First*, Section 631(a)'s first clause prohibits "any person who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any

***telegraph or telephone*** wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal ***telephonic*** communication system[.]" Cal. Penal Code § 631(a) (emphasis added). While this unambiguous statutory language was not up for genuine debate, the Ninth Circuit recently "put the kibosh" on any uncertainty, reaffirming that the first clause of Section 631(a) applies to unauthorized connections through telephone or telegraph communications only. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1, *3 (Bybee, J., concurring) ("…§ 631(a)'s text, legislative history, subsequent augmentation, and relative ambiguity … compel the conclusion that § 631(a)'s first clause does not apply to the internet"); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755-56 (N.D. Cal. 2023); *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135-36 (E.D. Cal. 2021).

As Plaintiffs admit, Samba's purported conduct occurred through Plaintiffs' "internet-enabled" devices. (Compl. ¶¶ 25, 32, 39, 165.) Conversely, Plaintiffs' Complaint is silent as to any use by Samba of a telephone or telegraph wire or cable. (*See generally*, Compl.) Because Plaintiffs do not allege any wiretapping of telephonic or telegraphic communications, Section 631(a)'s first clause does not apply to Samba's alleged conduct.

*Second*, to establish a claim under the second clause of Section 631(a), Plaintiffs must allege that Samba "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable…." Cal. Penal Code § 631(a). To the extent Plaintiffs' claim is predicated on the purported collection of IP addresses, unique identifier, and other amorphous record "information" (Compl. ¶¶ 21, 28, 35, 62), it fails. "The term 'contents" is not intended to record information, such as the name, address, or subscriber information of a website user." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021).

Further, Plaintiffs do not plausibly allege that Samba learns the contents of any in-transit communications. While Plaintiffs parrot Section 631(a)'s second clause, they equivocally allege that the alleged interception happens "prior to or at the same time they would be received by the intended recipient." (Compl. ¶ 166.) But the plain statutory language requires that any alleged

intrusion occur while a message is being transmitted, not after it is received. *Lopez v. Apple, Inc.*, 2021 WL 823122, at *10 (N.D. Cal. Feb. 10, 2021) ("The context in which these terms are used—communications 'in transit or passing over any wire, line, or cable, or [being] sent from, or received at any place within this state'—makes clear that those terms distinguish messages that have already arrived or are immediately being sent, as opposed to those 'in transit.'"); *People v. Wilson*, 17 Cal.App.3d 598, 603 (1971).

*Third*, and finally, claims under Section 631(a)'s third and fourth clauses are derivative in nature, and presume the existence of a violation under one of the section's first two clauses. *See* Cal. Penal Code § 631(a); *In re Google Assistant Privacy Litig*, 457 F.Supp.3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue … was obtained through a violation of the first or second clauses [of Section 631(a)]."). Therefore, because Plaintiffs' claims under Section 631(a)'s first and second clauses fail, they cannot maintain a claim under remaining clauses. *Id.*; *People v. Perez*, 35 Cal.4th 1219, 1225 (2005) ("[A]bsent proof of a predicate offense … an aiding and abetting theory cannot be sustained."); *Tavernetti*, 22 Cal.3d at 192.

#### b. <u>Plaintiffs Cannot State a Claim Under Penal Code Section 632</u>

To establish a claim under Section 632 of CIPA, Plaintiffs must allege that Samba "intentionally and without the consent of all parties to a confidential communication, use[d] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a). A communication is confidential "if a party has an objectively reasonably expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002). California "courts have developed a presumption that Internet communications do not reasonably give rise to that expectation" of privacy." *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). Given this presumption, Plaintiffs must "show[ ] that there is something unique about these particular internet communications which justify departing from the presumption." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (communications made in context of patient-medical provider relationship

deemed distinguishable from typical online communications). There is nothing unique about the alleged conduct that warrants departing from the presumption that internet communications and activity are not cloaked with an expectation of privacy.

#### c. Because None of Samba's Alleged Conduct Occurred Via Telephone Line, Plaintiffs' Trap and Trace Claims Fail

Plaintiffs' trap and trace claims under Cal. Penal Code §§ 638.50 and 638.51 are equally vulnerable because those statutes regulate use of a trap and trace device or pen register tied to a telephone line, the involvement of which is conspicuously absent here. CIPA's express language confirms, and its underlying legislative history reinforces, that trap and trace devices and pen registers are confined to recording information through incoming or outgoing telephone calls.

Section 638.52 is replete with references to attachment of a trap and trace device or pen register to a telephone line only. Cal. Penal Code §§ 638.52(c) ("Information acquired solely pursuant to the authority for a pen register or trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined ***from the telephone number***") (emphasis added); 638.52(d)(1) (an order authorizing installation and use of a trap and trace device should specify "[t]he identity, if known, of the person … in whose name is listed ***the telephone line to which the pen register or trap and trace device is to be attached***") (emphasis added). These CIPA provisions "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed*, 31 Cal.4th 657, 663 (2003); *see also Mollaei v. Otonomo Inc.*, No. 23-16079, 2025 WL 1163727, at *2 (9th Cir. Apr. 22, 2025) ("[O]ur task is to ascertain the intent of the [l]egislature so as to effectuate the purpose of the law") (internal quotation marks omitted).[4] When doing so, the trap and trace statute's plain language confirms it is limited to telephone communications only.

CIPA's legislative history leaves no doubt. (*See* Request for Judicial Notice ("RJN"), Lewitz Decl., Ex. 1, Senate Committee on Public Safety Analysis of California Assembly Bill 929,

[4] Federal courts interpreting California statutes must apply California's rules of statutory construction and interpretation. *See Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008) ("Because we are interpreting a California statute, we apply California's rules of statutory construction.").

California 2015-2016 Regular Session (June 16, 2015), at 7 (explaining that the bill "provides an order [authorizing use of a trap and trace device] shall specify … ***[t]he number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached***…."), at 11 ("a 'pen register' … allows law enforcement officers to record all outgoing numbers ***from a telephone line***. In addition …a 'trap and trace device' … allows [law enforcement] to record ***what numbers have called a specific telephone line, i.e., all incoming phone numbers***."), at 11 ("Pen registers and tra[p] and trace devices generally track incoming and outgoing ***telephone calls***.") (emphasis added throughout).) The Legislative Counsel's Digest clarifies that "any location information obtained by a pen register or a tra[p] and trace device is limited ***to the information that can be determined from the telephone number***." (RJN, Lewitz Decl., Ex. 2, Stats. 2015, Ch. 204, Sec. 2, Assembly Bill No. 929 (emphasis added).)

By Plaintiffs' admission, the purported interception at issue occurred through Samba's alleged tracking of Plaintiffs "across ***internet-enabled*** services and devices." (Compl. ¶¶ 25, 32, 39 (emphasis added).) This purported tracking occurred through computers, mobile devices, and Smart TVs to access "online services."[5] (Compl. ¶¶ 164 (alleging use of Samba's TV ACR technology through "Plaintiffs' and Class Members' computers, mobile devices, and connected TVs…."), 165 ("Samba TV used its technology … to access online services…."), 188 ("Samba TV implemented and installed the ACR technology and its identity solution …. on Plaintiffs' and Class Members' devices including their Smart TVs"), 191 (alleging installation of technology on "devices and browsers").) The Complaint is bereft of any allegations that Samba conducted any wiretapping, surveillance or interception via a telephone line. This silence is fatal.

The California Legislature did not intend to expand CIPA's reach beyond telephone lines to emerging technologies that post-date its enactment, but instead focused on prohibiting the use of certain advances in technology that preceded CIPA's enactment. *See* Cal. Penal Code § 630 ("The Legislature hereby declares that advances in science and technology have led to the development of

[5] Plaintiffs' attempt to invoke the CDAFA—a statute regulating computer technology—to hold Samba liable amounts to a tacit concession that the subject conduct does not implicate a telephone line. *See* Cal. Penal Code § 502(a) ("It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems.").

new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society … The Legislature recognizes that law enforcement agencies have legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of lawbreakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter."); *Converse Inc.*, *supra*, 2025 WL 1895315, at *2, n. 2 (Bybee, J., concurring) (emphasizing that CIPA's preamble "sounds in retroactivity—CIPA seeks to criminalize the use of 'advances' *predating* its passage. Its last paragraph provides helpful specificity—the 'advances' it speaks of are identified as 'listening devices.' This is yet another reason to construe the statute as concerning the tapping of telephone conversations, not chat messages sent over the internet.") (emphasis in original).

While the California Legislature has amended CIPA on several occasions to address emerging technologies, yet has declined to expand CIPA's reach to the transmission of data between computers or via the internet.[6] *See Cody v. Ring LLC*, 718 F.Supp.3d 993, 999 (N.D. Cal. 2024) (rejecting argument that "CIPA should be interpreted to apply to new technologies" and highlighting that "CIPA's multiple amendments, including in 2011 and 2022 … [did] not update[] [clause one of Section 631] to include internet technologies"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1080 (C.D. Cal. 2023) ("[t]he fact that the Legislature has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections").

///

///

[6] The lone exception is found in Cal. Penal Code § 632.01 (eff. Jan. 1, 2017), which penalizes the intentional "disclos[ure] or distribut[ion], in any manner, in any forum, including, but not limited to, Internet Web sites and social media, or for any purpose, the contents of a confidential communication with a health care provider that is obtained by" the offending person. Section 632.01 is quite clearly irrelevant to the instant case, as Plaintiffs do not allege the disclosure of their communications with a health care provider. Further, Section 632.01 confirms that when the California Legislature intended for CIPA to apply to the internet, it expressly stated as much.

**d. Samba's Technology Allegedly Captures "Data" Beyond the Scope of the Trap and Trace Statute**

As set forth above, Samba has not employed a pen register or trap and trace device as a matter of law given that its alleged conduct is divorced from a telephone line. (*See supra*, Section III(b)(3)(a).) To compound Plaintiffs' problems, they allege that Samba's ACR and Identity Solution technologies constitute "pen registers and/or trap and trace devices"[7] collect substantive data beyond what is expressly proscribed under the trap and trace statute. In other words, Plaintiffs plead their way out of a trap and trace claim under Cal. Penal Code § 638.51.

A "pen register" is "a device or process that records or decodes dialing, routing, addressing or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents of a communication***." Cal. Penal Code § 638.50(b) (emphasis added); *see also Smith v. Maryland*, 442 U.S. 735, 736, n. 1 (1979) (explaining that a pen register "records the numbers dialed on a telephone … [but] does not overhear communications and does not indicate whether calls are actually completed"). Conversely, a "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing or signaling information reasonably likely to identify the source of a wire, ***but not the contents of a communication***." Cal. Penal Code § 638.50(c) (emphasis added). Upon distilling these concepts, it is clear that Cal. Penal Code §§ 638.50 and 638.51 regulate information "about" a communication (*i.e.* record information), but not the substance of a communication itself.

Plaintiffs' allegations concede that the alleged data captured is not limited to "dialing, routing, addressing and signaling information." Plaintiffs contend that Samba's ACR and Identity Solution technology "uses video fingerprinting and machine learning to accurately identify what the viewer is watching on their Smart TV[,]" (Compl. ¶ 2), intercepts "private video-viewing data … including what [t]he[y] watched[,]" (Compl. ¶¶ 23, 30, 37), and records their "communications."

---

[7] Plaintiffs do not specifically articulate whether Samba's technology constitutes a "pen register" or "trap and trace device," and instead simply speculate in "either or" fashion that the technology must be one or the other. (*See, e.g.*, Compl. ¶¶ 188, 189-90, 192.)

(Compl. ¶ 176.) Moreover, Plaintiffs contend that Samba can identify particular television shows they consumed. (*See* Compl. ¶¶ 70-72.) However, this purportedly captured data constitutes "contents," and not record information.[8] Because Plaintiffs' allegations seek to hold Samba liable for the recording of information outside the scope of Cal. Penal Code §§ 638.50 and 638.51, Plaintiffs' trap and trace claim must be dismissed. *See, e.g., Kishnani v. Royal Caribbean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (noting "the distinction between information ***about*** a communication versus information ***within*** a communication" and dismissing trap and trace claim where defendant allegedly "collect[ed] content information from communication between the parties") (emphasis in original).

### e. **<u>The Rule of Lenity Supports a Finding that the Trap and State Provisions of CIPA Do Not Apply to Internet-Based Activity</u>**

Trap and trace violations gives rise to criminal liability. *See* Penal Code § 638.51(c) ("A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment."). The trap and trace statute's express provisions and legislative history limit the statute's contours to surveillance of telephonic communications. (*See supra*, Section III(B)(3)(a).) To the extent any ambiguities in these provisions exist, they must be resolved in Samba's favor based on the "rule of lenity." *People v. Avery* (2002) 27 Cal.4th 49, 57 ("…when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the [] court should ordinarily adopt that interpretation more favorable to the defendant"); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009). "This rule has constitutional underpinnings. Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature … and the court in defining criminal liability." *Avery*, 27 Cal.4th

[8] Plaintiffs attempt to evade the trap and trace statute's narrow scope, alleging that the ACR software intercepts a Samba TV domain, the IP address of the sender and receiver, timestamps, and "other identifiers" like a SambaID. (Compl. ¶ 189.) It strains credulity that Plaintiffs maintain a reasonable expectation of privacy in these anonymous datapoints, especially when a Samba web domain and SambaID are created *by Samba itself*. Moreover, Plaintiffs cannot escape their myriad other allegations about the supposed collection of the "contents" of their "communications," which aren't covered by the trap and trace statute. (*See* Compl. ¶¶ 23, 30, 37, 176.)

at 57 (citation omitted).

While Plaintiffs allege that Samba's technology constitutes a trap and trace device because it surveils "electronic communications" (Compl. ¶¶ 184-85), it is uncertain, at best, whether Samba captures "electronic communications" covered under the trap and trace statute. *See* Penal Code §§ 629.51(2), 638.50(a), 638.51(b). Consideration of what constitutes an electronic communication in these circumstances must be viewed through the lens of the trap and trace law's foundational underpinnings which are limited to the unlawful wiretapping of telephone lines. (RJN, Lewitz Decl., Ex. 1, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015); Ex. 2, Stats. 2015, Ch. 204, Sec. 2, Assembly Bill No. 929.) Accordingly, the rule of lenity warrants an interpretation of CIPA's trap and trace statute that resolves any and all ambiguities in Samba's favor.

**4. The Complaint Fails to State a CDAFA Claim**

Plaintiffs assert a CDAFA claim based on the alleged deprivation of control over their "sensitive personal data" and alleged loss of their ability to receive compensation for their data or withhold such data for sale. However, these speculative allegations do not establish that Plaintiffs sustained actionable "damage or loss" within the meaning of the CDAFA, under which they must allege that they "suffer[ed] damage or loss by reason of a violation" of the criminal statute. Cal. Penal Code § 502(e)(1). The CDAFA permits recovery of "[c]ompensatory damages [that] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id.* Plaintiffs' claimed harmed is their supposed loss of control over and ability to be compensated for their information (*i.e.* "IP address and 'other information'"). (Compl. ¶¶ 21, 2,8, 25, 204.) Plaintiffs try to equate their anonymized general data to "valuable property." (Compl. ¶ 204.) These exaggerated allegations of harm do not implicate CDAFA.

*First*, as a threshold matter, Plaintiffs' personal information does not constitute property. *See Low*, *supra*, 900 F. Supp. 2d at 1030 (explaining that the "weight of authority" holds that a plaintiff's personal information does not constitute property); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1074–75 (holding that personal information is not property).

*Second*, Plaintiffs do not plausibly allege how they've lost control of their information. (*See generally*, Compl.) Plaintiffs do not credibly plead why they no longer have access to any of their data simply because Samba allegedly also has it. (*Id.*) And, in any event, the loss of the right to control one's data does not constitute the requisite "damage or loss" under the CDAFA. *Lineberry v. AddShopper, Inc.*, Case No. 23-cv-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (dismissing CDAFA claim where complaint failed to explain whether individual could still sell her data if defendant already possessed it "nor how the value of a person's data decreases when their data is misappropriated"); *Doe v. Cty. of Santa Clara*, No. 23-CV-04411-WHO, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (rejecting theory of damage under CDAFA on "loss of the right to control [one's] own data, the loss of the value of [one's] data, and the loss of the right to protection of the data" and dismissing CDAFA claim for lack of standing) (citation omitted); *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 488 (N.D. Cal. 2021) (same).

*Third*, to the extent Plaintiffs insinuate that the purported value of their "information" has diminished, Plaintiffs are still out of luck. The Complaint does not allege facts plausibly supporting the notion that Plaintiffs have not been able to capture the full value of their information as a result of Samba's alleged conduct. Moreover, the purported loss of value of data is not a type of loss covered by CDAFA. *See Nowak v. Xapo, Inc.*, No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim based on loss of value of stolen cryptocurrency in part because the nature of the loss was not cognizable under CDAFA).

*Fourth*, whether Samba derived financial gain from Plaintiffs' information is irrelevant. (Compl. ¶¶ 3, 75-76, 109.) Plaintiffs cannot invoke Samba's supposed profit from the alleged dissemination of their information to demonstrate the existence of a loss under the CDAFA. *See Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (explaining that even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property). Given the absence of any alleged "damage or loss" covered by the CDAFA, Plaintiffs' claim fails.

**5. <u>VPPA Does Not Apply</u>**

VPPA, a limited scope penal statute promulgated in the 1980's, "prohibits a 'video tape

service provider' from (1) knowingly disclosing to any person (2) personally identifiable information concerning any consumer of such provider (3) except for certain disclosures—such as to the consumer or law enforcement—allowed under section 2710(b)(2)." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 850 (N.D. Cal. 2022). Plaintiffs' VPPA claim fails because (1) Samba is not a "video tape service provider;" (2) consequently, Plaintiffs are not "consumers;" and (3) the information Samba allegedly collected does not constitute "personally identifiable information."

**a. <u>Samba Is Not a "Video Tape Service Provider"</u>**

"[T]he term 'video tape service provider' means any person, engaged in the business … of ***rental, sale, or delivery*** of prerecorded video cassette tapes or similar audio visual materials…." 18 U.S.C.A. § 2710(a)(4) (emphasis added). In *Osheske v. Silver Cinemas Acquisition Co.*, the Ninth Circuit held that "the phrase 'rental, sale, or delivery' characterizes the exchange of a video product." 132 F.4th 1110, 1113 (9th Cir. 2025). Applying that distilled definition, the Ninth Circuit affirmed dismissal of a VPPA claim against a movie theater operator because it "d[id] not deliver any 'audio visual materials'" to its customer and, thus, was not found to be a "video tape service provider." *Osheske*, 132 F.4th at 1113. Samba, a technology and analytics company that is not "in the business of" exchanging or providing audio-visual materials to users in any way whatsoever, is similarly situated. Plaintiffs concede as much, failing to allege that Samba itself rented, sold, or delivered any audio visual materials to them. (*See generally*, Compl. ¶¶ 55-88.)

Instead, Plaintiffs attempt to stretch the "video tape service provider" label to Samba because "its technology is incorporated in Smart TVs, which deliver prerecorded videos." (Compl. ¶ 211.) Plaintiffs' effort to shoehorn Samba into the "video tape service provider" definition is in vain. To establish a VPPA claim, a defendant's products or services must be "specifically tailored to serve audiovisual material." *Carroll v. General Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 WL 4361093, at *3 (C.D. Cal. Jun. 26, 2023) ("The statute does not cover every company that merely delivers audio visual materials ancillary to its business. It is confined to those engaged specifically *in the business* of providing audio visual materials."). "[I]t is not enough for a business to be peripherally or passively engaged in the delivery of video content to come under the obligations imposed by the VPPA. Instead, the defendant's business must be significantly tailored to serve that

purpose of delivering video content." *Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (internal quotation marks and citations omitted) (dismissing VPPA claim where defendant was not a "video tape service provider"); *see also Carroll v. General Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 WL 4361093, at *3 (C.D. Cal. Jun. 26, 2023) (same).

The incorporation of Samba's technology into Smart TVs is too attenuated from the content delivery itself to cloak Samba with "video tape service provider" status. A contrary result would render countless companies that contribute mere parts or discrete technology to a Smart TV susceptible to VPPA liability even if they play no role in the actual exchange of a video product.

**b. <u>Plaintiffs Are Not "Consumers"</u>**

"[T]he term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Because Samba is not a "video tape service provider," Plaintiffs are not "consumers" under VPPA. *Rodriguez v. JP Boden Servs. Inc.,* No. 23-CV-00534-L-VET, 2024 WL 559228, at *4 (S.D. Cal. Feb. 12, 2024) (finding that plaintiff was not "consumer" under VPPA because defendant was not a "video tape service provider").

Nor are Plaintiffs "subscribers" of Samba. The term "subscriber" is defined as "involv[ing] some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). Plaintiffs must allege "payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 164 (S.D.N.Y. 2023) (internal quotation marks and citation omitted); *see also Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1342 (11th Cir. 2017) (plaintiff was not a subscriber of defendant CNN because he did not "sign up for or establish an account with CNN, provide any personal information to CNN, make any payments to CNN in using its app, [or] become a registered user of CNN or its app…." (internal quotation marks and citation omitted)); *Rodriguez v. Delta T LLC*, No. 223CV03717HDVAGR, 2023 WL 9419152, at *5 (C.D. Cal. Dec. 12, 2023).

Plaintiffs do not contend that they paid for, registered with, or otherwise committed to Samba's services. (*See* Compl. ¶ 212 ("Plaintiffs and Class Members are subscribers because they

used Samba TV-enabled Smart TVs to view video content and Samba TV received, at minimum, their IP addresses and other identifying information….").) Thus, there is no "bilateral relationship" entitling Plaintiffs to "subscriber" status. *Golden,* 688 F. Supp. 3d at 165.

#### c. <u>**Samba Does Not Disclose "Personally Identifiable Information"**</u>

"[T]he term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider…." 18 U.S.C. § 2710(a)(4). To determine whether information can be used to identify a person, the Ninth Circuit applies the "ordinary person" test, under which only information that "'readily permit[s] *an ordinary person* to identify a [particular individual as having watched certain videos]'" constitutes "personally identifiable information" under VPPA. *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 985 (9th Cir. 2017) (alterations in original) (quoting *In re Nickelodeon Consumer Priv. Litig.,* 827 F. 3d 262, 290 (3d Cir. 2016)).

The Complaint alleges that Samba discloses "Plaintiffs' and Class Members' video viewing information, as well as their unique identifying information (e.g., IP address, Samba ID, etc.) to be disclosed to third parties…." (Compl. ¶ 214.) However, this information does not pass muster under the "ordinary person test" because an IP address and Samba ID could not and would not enable an average, "ordinary person" to identify the viewer of video content.

In *Eichenberger,* the Ninth Circuit found that the plaintiff's Roku device serial number and the names of the videos he watched were not "personally identifiable information" under VPPA because "that information *cannot* identify an individual unless it is combined with other data in Adobe's possession—data that [the defendant] never disclosed and apparently never even possessed." 876 F.3d at 985-86 (emphasis added); *see also In re Nickelodeon*, 827 F. 3d at 281-83 (combination of IP address, browser fingerprint, and "unique device identifier" was not "personal identifying information" under VPPA because "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."); *Solomon v. Flipps Media, Inc.,* 136 F. 4th 41, 54-55 (2d Cir. 2025) (upholding dismissal of VPPA claim where plaintiff failed to allege "how an ordinary person would use a[] [Facebook ID] to identify [the plaintiff]"). Because Plaintiffs' IP addresses and Samba IDs cannot permit an "ordinary person"

to identify that video viewing content of Plaintiffs, the VPPA claim must be dismissed.[9]

**d. <u>The Rule of Lenity Requires That Any Ambiguity Be Read Against Expanding VPPA to a Software Developer Like Samba</u>**

To the extent any ambiguity exists, the rule of lenity requires VPPA—like its aforementioned penal statute companions, CIPA and CDAFA—to be construed narrowly. VPPA is a penal statute, appearing in Title 18 of the U.S. Code under "Crimes and Criminal Procedure" and codified as a criminal statute with substantial civil penalties. 18 U.S.C. § 2710(c)(2) (providing for liquidated damages of $2,500, punitive damages, and attorneys' fees). As the United States Supreme Court has long recognized, where, in a civil case, "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." *Crandon v. United States*, 494 U.S. 152, 158 (1990). The rule of lenity ensures that criminal statutes will provide fair warning of what constitutes prohibited conduct, minimizes the risk of selective or arbitrary enforcement, and strikes the appropriate balance between the legislature and the court in defining liability. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (noting that "[t]he Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants" in civil actions).

**6. <u>Plaintiffs Equitable Relief Claims Fail</u>**

"To obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law." *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Conclusory statements are insufficient to maintain equitable relief claims. *Id.*; *see also Lair v. Bank of Am., N.A.*, No. 23-cv-01345-WLH, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024) ("a plaintiff facing dismissal 'must, at a minimum, *plead* [substantive allegations] that she lacks adequate remedies at law if she seeks equitable relief." (emphasis in original) (citations omitted)).

---

[9] The absence of disclosure of any "personally identifiable information" is reinforced by Plaintiffs' embedded screenshot purporting to depict the video programming data that Samba can capture. (*See* Compl. ¶ 70, Figure 5.) This screenshot reveals that purported video viewing data is, at most, tied to an entirely anonymous ten-digit alphanumeric "household" identifier. (*Id.*) An ordinary person would be left "grasping at straws" if he or she attempted to use this data to attempt to identify the identity of an actual viewer of content.

Where the relief sought is fundamentally economic in nature, claims for equitable relief are duplicative. *See In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

Plaintiffs' unjust enrichment[10] and injunctive relief claims cannot stand because Plaintiffs fail to demonstrate that they credibly lack an adequate remedy at law. Plaintiffs generally claim the absence of an adequate remedy at law, yet in another breath seek compensatory damages on the very same underlying conduct. (*Compare Compl.* ¶¶ 170, 181, 193, *with* Compl. ¶¶ 146, 157, 171, 205.) Further, Plaintiffs' claim for equitable disgorgement of profits (Compl. ¶¶ 146, 157, 225), does not render any available legal remedy as necessarily inadequate. *See Hubbard*, *supra*, 2024 WL 3302066, at *6 ("That Defendants earned profits in the process of [misappropriating Plaintiffs' information] renders neither damages for the harm a *per se* inadequate legal remedy nor the earning of those profits a distinct harm for which Plaintiffs may also recover.").

## IV. CONCLUSION

Samba respectfully requests that the Court dismiss this action in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: August 1, 2025

COZEN O'CONNOR
By: */s/ Matthew E. Lewitz*
Matthew E. Lewitz
Brett N. Taylor
Gianna Puccinelli
Attorneys for Defendant
Samba TV, Inc.

[10] To state an independent claim for unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016). As set forth above, Plaintiffs do not maintain a property interest in their IP addresses and "other information" such that Samba has not retained anything at their expense. (*See supra* at Section III(B)(4).)