Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
Yuanchen Lu (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

STEVE DELLASALA, BOB WARDEN, and VINCE TOPHONEY individually and on behalf of all others similarly situated,

Plaintiffs,

v.

SAMBA TV, INC.,

Defendant.

Case No. 3:25-cv-03470-JSC

**PLAINTIFFS' OPPOSITION TO DEFENDANT SAMBA TV, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: October 9, 2025
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1
II. BACKGROUND ........ 2
III. LEGAL STANDARD ........ 4
IV. ARGUMENT ........ 4
A. Plaintiffs Have Sufficiently Alleged Injury-in-Fact for Article III Standing ........ 4
B. Plaintiffs Can Bring California Claims ........ 7
C. Plaintiffs' Privacy Claims Should Be Sustained ........ 8
D. Plaintiffs' CIPA § 631 Claim Should Be Sustained ........ 12
E. Plaintiffs' CIPA § 632 Claim Should Be Sustained ........ 14
F. CIPA § 638.51 Applies to the Technology at Issue ........ 15
G. Interception of Contents Does Not Absolve Samba of a CIPA § 638.51 Violation ........ 17
H. Rule of Lenity Does Not Apply Here ........ 18
I. Plaintiffs' CDAFA Claim Should Be Sustained ........ 18
J. Plaintiffs' VPPA Claim Should Be Sustained ........ 20
i. Defendant Is a Video Tape Service Provider ........ 20
ii. Plaintiffs Are Consumers ........ 22
iii. Plaintiffs Allege Defendant Discloses Personal Information ........ 23
K. Plaintiffs Are Entitled to Equitable Relief ........ 24
CONCLUSION ........ 25

## TABLE OF AUTHORITIES

Cases

*Aleisa v. Square, Inc.*,
493 F. Supp. 3d 806 (N.D. Cal. 2020) .......... 4, 5

*Ballard v. Insomniac Holdings, LLC*,
No. 25-CV-00811-SI, 2025 WL 1696558 (N.D. Cal. June 17, 2025) .......... 21, 22

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
No. 314CV00751, 2016 WL 3543699 (S.D. Cal. June 29, 2016) .......... 7

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) .......... 6

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......... 25

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 14, 20

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 5, 7, 20

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 5

*Cantu v. Tapestry, Inc.*,
No. 22-CV-1974, 2023 WL 4440662 (S.D. Cal. July 10, 2023) .......... 22

*Carroll v. General Mills, Inc.*,
No. CV 23-1746, 2023 WL 4361093 (C.D. Cal. Jun. 26, 2023) .......... 22

*Cody v. Ring LLC*,
718 F.Supp.3d 993 (N.D. Cal. 2024) .......... 17

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 16

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461 (N.D. Cal. 2021) .......... 20

*Crandon v. United States*,
494 U.S. 152 (1990) .......... 19

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 24

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 24

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......... 23

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 3

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 24

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) .......... 10

*Firemans Fund Ins. Co. v. R J Kiln & Co.*,
No. CV 11-7460-GW(EX), 2012 WL 13012430 (C.D. Cal. Mar. 15, 2012) .......... 5

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 17, 18

*Golden v. NBCUniversal Media*, LLC,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) .......... 23

*Graham v. Noom, Inc.*,
533 F.Supp.3d 823 (N.D. Cal. 2021) .......... 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 10

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... passim

*Griffith v. TikTok, Inc.*,
No. 5:23-CV-00964-SB-E, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) .......... 4

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) .......... 17

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 19

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 8

*Hernandez v. Sandhu Bros. Liquor Inc.*,
No. 20-CV-07432-LB, 2021 WL 1145994 (N.D. Cal. Mar. 25, 2021) .......... 6

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 10, 12, 25

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......... 7, 8

*In re Facebook, Inc. Internet Tracking Litig. (“Faceboo*k Tracking”),
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Ford Tailgate Litig.*, No.11-CV-2953-RS,
No. 11-cv-2953, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) .......... 25

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 11, 14

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 24

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 11, 18

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 12

*In re Hulu Priv. Litig.*,
*No.* C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .......... 23

*In re Hulu Priv. Litig.*,
No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 12, 19

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 5, 15

*In re Meta Pixel Tax Filing Cases*,
No. 22-CV-07557, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) .......... 15, 17

*In re Meta Pixel Tax Filing*,
No. 22-cv-07557, 2024 WL 1251350 .......... 24

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 24

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ passim

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 13

*Jackson v. Fandom, Inc.*,
No. 22-CV-04423, 2023 WL 4670285 (N.D. Cal. July 20, 2023)........ 22

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 4

*Kauffman v. Papa John's Int'l, Inc.*,
No. 22-CV-1492-L-MSB, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 5, 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)........ 18

*Lair v. Bank of Am., N.A.*,
No. 23-cv-01345, 2024 WL 943945 (C.D. Cal. Jan. 26, 2024)........ 25

*Larroque v. First Advantage LNS Screening Solutions, Inc.*,
No. 15-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) ........ 7

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) ........ 23

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025)........ 23

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 17

*Lightoller v. Jetblue Airways Corp.*,
23-CV-00361-H-KSC, 2023 WL 396823 (S.D. Cal. June 12, 2023) ........ 10

*Lineberry v. AddShopper, Inc.*,
No. 23-cv-01996, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ........ 8, 20

*Lopez v. Apple, Inc.*,
2021 WL 823122 (N.D. Cal. Feb. 10, 2021) ........ 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 12, 19

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ........ 19

*M. H. v. Done Glob. Inc.*,
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) .......... 12, 14

*Mata v. Zillow Grp., Inc.*,
No. 24-CV-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 13, 21

*Matera v. Google Inc.*,
No. 15-CV-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 17

*Mejia v. Reed*,
31 Cal.4th 657 (2003) .......... 16

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 15

*Mollaei v. Otonomo Inc.*,
No. 23-16079, 2025 WL 1163727 (9th Cir. Apr. 22, 2025) .......... 16

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 15, 16

*N. Alaska Salmon Co. v. Pillsbury*,
174 Cal. 1 (1916) .......... 8

*Nei Contracting & Engineering, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
No. 12-cv-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) .......... 7

*Nowak v. Xapo, Inc.*,
No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......... 20

*Osheske v. Silver Cinemas Acquisition Co.*,
132 F.4th 1110 (9th Cir. 2025) .......... 21, 22

*People v. Avery*,
27 Cal. 4th 49 (2002) .......... 19

*People v. Perez*,
35 Cal.4th 1219 (2005) .......... 14

*People v. Wilson*,
17 Cal. App. 3d 598 (1971) .......... 13

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 23

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 15

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-CV-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 10

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025)........ 6

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 15

*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-CV-00824, 2025 WL 2021802 (N.D. Cal. July 18, 2025)........ passim

*Rodriguez v. Aquatic Sales Sol. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 12, 14

*Rodriguez v. Delta T LLC*,
No. 223CV03717, 2023 WL 9419152 (C.D. Cal. Dec. 12, 2023)........ 23

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........ 19, 20

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 16, 17, 18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ........ 4

*Smith v. Maryland*,
442 U.S. 735 (Cal. 1979) ........ 18

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 14

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)........ 19, 20

*Solomon v. Flipps Media, Inc.*,
136 F. 4th 41 (2d Cir. 2025) ........ 24

*Sterk v. Redbox Automated Retail, LLC*,
806 F. Supp. 2d 1059 (N.D. Ill. 2011) ........ 19

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191 (2011) ........ 8

*Tapestry*,
697 F. Supp. 3d ........ 22

*Tavernetti v. The Superior Court of San Diego*
22 Cal. 3d 187 (Cal. 1978) ........ 14

*Turner v. Apple, Inc.*,
No. 5:20-CV-07495, 2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ........ 25

*Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 19

*United States v. Forrester*
512 F.3d 500 (9th Cir. 2008) ........ 11

*United States v. Hertler*,
776 F.3d 680 (9th Cir. 2015) ........ 18

*Urb. v. Tesla, Inc.*,
698 F. Supp. 3d 1124 (N.D. Cal. 2023) ........ 4

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 5, 9

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 7

Statutes

18 U.S.C. § 1030 ........ 19

18 U.S.C. § 2710 ........ 20

18 U.S.C. § 2710(a)(4) ........ 21

18 U.S.C.A. § 209 ........ 19

Cal. Civ. Code § 1798.140 ........ 10

Cal. Pen. Code § 484 ........ 19

Cal. Penal Code § 502(e)(1) ........ 19

Cal. Penal Code §§ 502(c)(1), (2), (3), (6), (7), (8), (13) ........ 19

Rules

Fed. R. Civ. P. 8 ........ 9

## I. INTRODUCTION

Samba TV, Inc. ("Samba") has been secretly harvesting millions of consumers' private data without their knowledge for years. Through software inconspicuously incorporated into millions of Smart TVs, Samba monitors and identifies each individual user's private viewing activity by intercepting what they are viewing, when, and where, in real time. Samba does not stop there. Its interception and recording of private data expands far beyond Smart TVs, to *everything* in a user's home. Samba's technology monitors network connections in the home to spy on, identify, and intercept information about all of the user's *other internet-connected devices*, including their phones, tablets, and personal laptops—something Samba categorically should never have access to. It takes all this private information and packages it into identifiable user profiles, tied together by a unique SambaID, which it then sells to its clients so they can target these users with highly specific advertisements on each of their unique devices.

Samba's Motion to Dismiss ("Mot." or "Motion") seeks to mischaracterize its conduct as nothing more than the "mundane" collection of "anonymous data." Mot. at 10, 19, 28. But spying on consumers in the privacy of their own home and selling their identifiable data to the highest bidder is the exact opposite of "mundane." Nor is the data "*anonymous*" given that Samba goes out of its way to collect and consolidate identifiers to ensure the data is *identifiable*—a key feature it markets to advertisers so they can target Plaintiffs and Class Members with ads. This conduct can be described as nothing other than privacy-invasive and violates several laws—like the California Invasion of Privacy Act ("CIPA")—that are expressly designed to prevent this type of unlawful conduct.

Samba's claim that it had consent to engage in widespread data tracking is also an affront to consumers' privacy rights. Nowhere did Samba disclose that it would profile consumers, collect data from each of their devices, consistently monitor their private viewing activity, and sell that information to third parties.

Samba's other arguments are equally baseless. Its claim that Plaintiffs cannot bring California claims against a *California* company that collects, uses, and sells their data *in California* has no legal support. Its self-serving characterizations of its conduct as non-offensive, non-harmful, and in accord with "expectation[s] of privacy" are just more denials of its inappropriate conduct. And its assertion that neither

CIPA nor the Video Privacy Protection Act ("VPPA") applies to Samba is inconsistent with the law. The Court should reject each of these arguments and deny Samba's Motion in its entirety.

## II. **BACKGROUND**

Samba has spent over a decade spying on consumers in the privacy of their own home (¶ 2)[1] by using software—embedded directly in Smart TVs—to intercept and collect millions of consumers' private video-viewing data. ¶ 70. This technology gives Samba an insider's view of what each individual is watching, streaming, or playing, where they watch their content, and when—all of which is extremely lucrative to Samba's advertiser clients, who pay handsomely for access to this data. ¶¶ 70-71; ¶ 117 (explaining advertisers spent $18.6 million on Smart TV ads in 2022); ¶ 118 (explaining CTV viewership data with IP address, location, and video titles retails for $14,580 a month).

None of this data is "anonymized," despite what Samba represents publicly. ¶¶ 90-100. The primary reason Samba's technology is so lucrative is precisely because it identifies each individual user in the household and each of their individual devices, including their computers, TVs, tablets, and mobile phones. ¶¶ 5-6. Samba does this through its "multi-identifier pattern recognition model," which secretly monitors device signals, intercepts device information like IP addresses and unique device identifiers across an individual's home network, and then uses advanced fingerprinting to associate each device to a person. ¶¶ 62-63. Samba ties all this identifying data together, along with consumers' private video-viewing data, into individual user profiles that are each assigned a unique SambaID. ¶¶ 59-60. The identifiability of these user profiles is one of Samba's chief selling points. ¶ 57 (Samba's CEO explaining "advertisers . . . need an identifier" like SambaID following the "death of cookies" to "help them understand omniscreen performance"); ¶ 59 (promoting its "multi-identifier approach" and "SambaID identifier" to accurately identify "which phones, tablets, PCs, and TVs belong to an individual.").

Samba has found a plethora of ways to monetize these identifiable profiles. Its clients can use Samba's user profiles to identify and target individual consumers on their devices, as well as to measure campaign performance. ¶¶ 64-66 (explaining advertisers can use these "[a]ccurate real-time private identity graph[s]" to "identify" "target" and "engage" with these users); *see also* ¶ 63 n.4 (Samba's own

[1] "¶" or "Complaint," as used herein refers to Plaintiffs' Class Action Complaint, ECF No. 1.

patents recognizing its ID solution presents "revenue opportunit[ies]" through "advertiser[s]"). Clients can also pay for access to Samba's own lucrative data panel—a packaged version of identifiable user profiles—that is apparently *so extensive* that Samba claims it is comparable to U.S. Census data. ¶ 76. Or they can incorporate one of Samba's custom audiences—groups of users who share similar demographics and viewing habits—into their existing advertising strategy. ¶¶ 79-84 (examples of Samba's audiences, such as "heavy viewers" of liberal or conservative news). And these are just *some* of the ways Samba sells individual user profiles based on data it should have never had access to. ¶¶ 86-88 (describing Samba's other products premised on these identifiable user profiles). Samba's ability to monetize these identifiable user profiles only continues to grow each day, particularly as other companies are moving away from any form of identifiable tracking in recognition that such practices are privacy invasive. ¶¶ 50-56.

While Samba continues to profit from consumers' private data, consumers themselves are left in the dark. According to Sony—who manufactures the Smart TVs used by Plaintiffs—the only disclosure that mentions "Samba" claims its service is for an "Interactive TV" that allows consumers to "[i]nteract with [their] favorite shows," "[g]et recommendations," and to access "exclusive content and special offers." ¶ 108. This is simply not true. Nowhere is it disclosed that Samba will monitor and identify each individual's devices, intercept their identifiable and private video-viewing data, or that it will package and sell this data to advertisers so they can target each consumer at the individual level.

Samba's own statistics further confirm consumers categorically do not know—and do not consent to—its conduct. Per Samba's own research, only 40% of consumers would opt-in to sharing their viewing data if they knew how it would be used and by whom, 60% would not. ¶ 111. Samba, however, has collected data from 517 million unique devices but has only received *66 opt-out requests*. ¶ 112. Samba's own statistics therefore confirm that its "disclosures" (if any) are deceptive, misleading, and wholly insufficient to obtain meaningful consent or otherwise alert consumers to its conduct.

This type of unknown and unconsented-to data collection and profiling is privacy-invasive and violates each of the laws described herein.

## III. LEGAL STANDARD

When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint[,]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

When considering a Rule 12(b)(6) motion, the court must "limit its analysis to the allegations of the complaint, and disregard the evidence submitted by [defendant] in support of its motion." *Urb. v. Tesla, Inc.*, 698 F. Supp. 3d 1124, 1132 (N.D. Cal. 2023). Even when a motion is brought under 12(b)(1), extrinsic evidence is improper whenever it would require the court to resolve "factual dispute[s] going to the merits." *Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 813 (N.D. Cal. 2020).

## IV. ARGUMENT

### A. Plaintiffs Have Sufficiently Alleged Injury-in-Fact for Article III Standing

Courts routinely recognize an invasion of privacy as a "concrete" harm sufficient to confer Article III standing. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 598 (9th Cir. 2020) (finding plaintiffs have standing "because they adequately alleged privacy harms"). Here, Plaintiffs allege that Samba invaded their privacy in several ways, including by: (1) monitoring and identifying each of their internet-connected devices; (2) compiling their private video-viewing data, device identifiers, and other identifying data into unique user profiles; and (3) using and selling access to these profiles to advertisers for Samba's own gain. *See* ¶¶ 6, 8-10, 61, 73, 76-88. These allegations are sufficient to confer Article III standing. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (allegations that defendants tracked plaintiffs' activity to create profiles for targeted advertising "sufficiently allege harm to the [p]laintiffs for Article III standing"); *Griffith v. TikTok, Inc.*, No. 5:23-CV-00964-SB-E, 2023 WL 9019035, at *4 (C.D. Cal. Dec. 13, 2023) (plaintiffs had Article III standing where they alleged "[d]efendants have collected without authorization their private browsing data"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017) ("[T]he unauthorized disclosure of a person's video viewing history" constitutes an injury "sufficiently concrete for [p]laintiffs to have standing to bring suit under the Video Privacy Protection Act").

Samba's argument that its consent defense "negates" standing is just wrong. Mot. at 14-15. Consent is an affirmative defense *on the merits* that Samba bears the burden to prove; it has no impact on whether the Court has subject matter jurisdiction over the action. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof[.]") (internal quotations omitted); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019) ("[I]n virtually every privacy case, consent will be part of the merits inquiry. Because courts presume success on the merits when evaluating standing, these are not standing issues in privacy cases."). Regardless, Samba's purported "disclosures" are deficient, and could not result in consent to the alleged misconduct, because they omit any mention of Samba's omnipresent cross-device tracking, individual profiling, or its sale of this information to third-party advertisers. ¶ 109. It is black-letter law that Plaintiffs cannot consent to conduct that is not disclosed. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (same). Misleading statements about how Samba's software allows users to "interact" with their "favorite shows," "[g]et recommendations based on the content [they] love," and to receive "exclusive content and special offers," without disclosing these key facts (¶ 108) do not come close to creating actual consent to Samba's data collection and profiling practices.

Samba's attempt to overcome these clear allegations through employee declarations does not withstand scrutiny. Mot. at 14-15. The Court should disregard these declarations in their entirety because Samba cannot rely on extrinsic evidence to prove its consent defense at the motion to dismiss stage. *See Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 813 (N.D. Cal. 2020) (refusing to consider "extrinsic evidence" on consent because that "goes to the merits, not standing" and "factual dispute[s] going to the merits" are not "appropriate for resolution" on the pleadings); *Firemans Fund Ins. Co. v. R J Kiln & Co.*, No. CV 11-7460-GW(EX), 2012 WL 13012430, at *3 (C.D. Cal. Mar. 15, 2012) (declining to consider extrinsic evidence of "disputed facts" submitted to "bolster [defendant's] affirmative defenses" at the motion to dismiss stage). Samba does not avoid this by framing its consent argument as a challenge to Article III standing (where certain fact-based challenges are permitted at the motion to dismiss stage)

because, as explained above, consent is a fact-intensive affirmative defense that must be resolved later in the case. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 788; *Kauffman v. Papa John's Int'l, Inc.*, No. 22-CV-1492, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024) (whether privacy policies established consent "[is] not suitable for resolution at [the motion to dismiss] stage").

But even if the Court were to consider Samba's declarations, the carefully crafted vague statements they contain are meaningless. For instance, Samba cites a declaration from Mr. Tony Tseng as proof that there is a different "prompt"—contrary to Plaintiffs' allegations—that Sony TV users are presented with that discloses certain "features" and "surfaces" Samba's Privacy Policy. *See* Tseng Dec'l, ECF No. 33 ¶¶ 7-8. But there is no indication that Plaintiffs would have *actually* seen screens like what Mr. Tseng describes at all because his declaration is completely silent as to *when*, *where*, or *how* these "prompt[s]" existed.[2] All this declaration shows is that, at best, there are factual disputes regarding what Plaintiffs would have seen when setting up their TVs, as well as whether these "prompts" were sufficient to establish consent, neither of which can be resolved on the pleadings. *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024) (explaining "material factual disputes" on standing cannot be resolved on a Rule 12(b)(1) challenge); *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *3 (N.D. Cal. Mar. 28, 2025) (finding defendant's declarations contradicting plaintiffs' privacy claims created "a genuine dispute" "intertwined with an element of the merits of plaintiff's claim" that "cannot be resolved" on a motion to dismiss). It certainly does not show Plaintiffs lack standing.[3]

Samba's reliance on its 2023-2025 privacy policies fails for the same reason. *See* Chen Dec'l, ECF No. 32, Exs. 1-3. Like above, Samba presents no evidence that these were the privacy policies Plaintiffs saw or would have seen, or if they were even linked at any point during the set-up process Plaintiffs

---

[2] The declaration from its other employee, Emanuele Mazzoni, equally falls flat, as his claim that Samba's software purportedly was "always" opt-in is only stated "[u]pon information and belief." *See* Mazzoni Dec'l, ECF No. 34 ¶ 7. And even if the software is "opt-in," this does not change that it was misleadingly presented to users in a way that did not disclose Samba's omnipresent tracking, creation of identifiable user profiles, or the sale of this information.

[3] If the Court is inclined to consider these declarations, Plaintiffs are entitled to jurisdictional discovery to challenge the applicability of these policies and prompts described therein, including whether they were ever presented to Plaintiffs. *See Hernandez v. Sandhu Bros. Liquor Inc.*, No. 20-CV-07432-LB, 2021 WL 1145994, at *4 (N.D. Cal. Mar. 25, 2021) (allowing "limited jurisdictional discovery" in light of defendant's declarations challenging jurisdiction).

encountered when setting up their TVs. *See Kauffman*, 2024 WL 171363, at *6 (finding defendants could not rely on privacy policy to establish consent because of "factual disputes regarding whether [p]laintiff actually saw the [p]rivacy [p]olicy and consented to it"). In any event, all these policies state is that Samba may disclose the "content played through [the] TV" and only at the user's "direction" or with their express "consent," which Samba did not have here. *See* Chen Dec'l, ECF No. 32, Ex. 1 at 2, 4; Ex. 2 at 2, 4; Ex. 3 at 2, 4. A reasonable person could find these policies, even if applicable, insufficient to establish consent to create, use, and sell access to highly specific, identifiable user profiles for targeted cross-device advertising.[4] *See Calhoun*, 526 F. Supp. 3d at 623 (privacy policy could not establish consent where it "might have led a reasonable user to believe that Google did not collect his or her personal information"). That this is a question of fact for the jury precludes any finding that standing is lacking at this stage of the proceedings.

The two cases Samba relies on do not warrant a different conclusion, as they both involved *undisputed* evidence that showed the plaintiff had affirmatively consented. *See* Mot. at 14-15 (citing *Nei Contracting & Engineering, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-cv-01685-BAS(JLB), 2016 WL 4886933, at *4 (S.D. Cal. Sept. 15, 2016) (finding consent at trial based on undisputed evidence each call began with a notice of the recording and employee testified he "would have consented"); *Larroque v. First Advantage LNS Screening Solutions, Inc.*, No. 15-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. Sept. 2, 2016) (plaintiff did not dispute defendant provided written disclosures and that she gave written authorization)). Unlike these cases, Plaintiffs' allegations—even coupled with Samba's purported "evidence"—merely show these issues *are* disputed here.

### B. Plaintiffs Can Bring California Claims

Both CIPA and Comprehensive Computer Data Access and Fraud Act ("CDAFA") claims can be brought on behalf of non-California residents without violating the presumption against extraterritorial application of California statutes. *See* CIPA § 637.2 (explaining CIPA claims can be brought by "[a]ny person"); CDAFA § 502(e)(1) (CDAFA claims can be brought by any "owner or lessee"); *see also Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (holding CIPA applies to non-

[4] The "prompts" described in Mr. Tseng's declaration do not negate standing for the same reason.

California residents based on clear statutory text); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 314CV00751, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (same); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1184 (N.D. Cal. 2019) (sustaining non-California residents' CDAFA claims). Here, Plaintiffs allege Samba is headquartered in California and that its interception, profiling, and use of Plaintiffs' private data occurred in this State. *See* ¶¶ 40, 47, 134-135. Because Samba is a California resident, and a large portion of the conduct underlying Plaintiffs' claims occurred in this State, these laws apply to Samba and allow Plaintiffs to bring CIPA and CDAFA claims. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (sustaining CIPA claims by non-California residents against California company because "the conduct at issue, in terms of design and marketing of the [] technology and development and implementation of its Terms of Service, occurred in California"); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d at 1184 (rejecting argument that CDAFA does not apply extraterritorially).[5]

Samba's reliance on *Lineberry* is misplaced because, there, the defendant was not based in California and none of the underlying conduct occurred in that forum. *See* Mot. at 16 (citing *Lineberry v. AddShopper, Inc.*, No. 23-cv-01996, 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025) (noting defendant was in Florida and there were "no allegations" any "business decisions" or other underlying conduct occurred in California). The other two cases Samba relies on are similarly distinguishable, as they involved employee grievances likewise occurring outside California. Mot. at 16 (citing *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) (finding California workers' compensation laws do not apply to employee who worked and was injured in Alaska); *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (finding California's labor laws do not apply to an employee working in Arizona)). Because Plaintiffs allege the conduct here occurred in California, which is correctly covered by California law, this case plainly does not involve the extraterritorial application of either CDAFA or CIPA.

### C. Plaintiffs' Privacy Claims Should Be Sustained

In analyzing whether a plaintiff has sufficiently pled a common intrusion upon seclusion, courts evaluate whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly

[5] Plaintiffs do not dispute that claims under the California Constitution can only be brought by California residents.

offensive." *See Facebook Tracking*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). Both requirements are satisfied here.

***Reasonable Expectation of Privacy.*** Courts routinely recognize that consumers have a reasonable expectation not to be secretly monitored when using internet-connected devices or to have their online activity compiled into individually identifiable profiles. *See Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824, 2025 WL 2021802, at *3, 5-6 (N.D. Cal. July 18, 2025) (finding secretly "tracking" individuals' online "activity" to generate "uniquely identifying profiles" is a privacy intrusion); *Facebook Tracking*, 956 F.3d at 604 (9th Cir. 2020) (same); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 970 (C.D. Cal. 2023) (same). This is particularly true when it comes to individualized profiling based on private video-viewing data. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 797-98 (finding reasonable expectation of privacy over data involving "video-watching behavior"); *Griffith*, 697 F. Supp. 3d at 970-71 (users have expectation of privacy where defendant intercepted "information about the videos [plaintiff] . . . watched"); *Vizio*, 238 F. Supp. 3d at 1232 (recognizing plaintiffs have a reasonable expectation of privacy in "video viewing history"). This is the same type of privacy-intrusive conduct Plaintiffs allege here. *See* ¶¶ 59-74 (alleging Samba tracks users' IP address, device ID, household ID, and SambaID along with video-viewing data to compile identifiable user profiles); *see also* ¶¶ 89-100 (alleging Samba holds itself out as collecting only "anonymized" data while actually creating identifiable user profiles).

Samba's assertion that Plaintiffs must plead details unrelated to their claims, including *when* they purchased their TVs and *when* precisely their data was intercepted and recorded (Mot. at 17), to plausibly allege an expectation of privacy is wrong. *See* Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

Samba's separate claim that its collection of video-viewing data, coupled with a swath of unique identifiers tied together by its proprietary SambaID for unique profiling, is "routine[]" and amounts to nothing more than the collection of "anonymous data" is both factually and legally incorrect. Mot. at 18. Data accompanied by unique identifiers—and used for the express purpose of creating identifiable user profiles—categorically does not qualify as "anonymous" data, which must have no possible way of being

associated with an individual.[6] *See Riganian*, 2025 WL 2021802, at *6, 7 (rejecting argument that data is "pseudonymize[ed]" because the data can be "associated with an individual . . . effectively rendering any anonymity functionally meaningless"). And multiple courts have recognized profiling individuals and selling that information is a privacy violation. *Id.* at *7 (sustaining privacy claims based on defendant's "tracking and identity resolution to create persistent identifiers linked to comprehensive behavioral profiles, and a data marketplace enabling the sale of sensitive personal information."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1048 (S.D. Cal. 2023) (same). While it may be "routine" for tech companies, like Samba, to violate individuals' privacy rights, that does not excuse its conduct here.

Samba's reliance on a string of cases against *website owners* for collecting data from their *own web properties* does not transform Samba's secretive and widespread profiling across devices (that it should never have had access to) into a routine activity that Plaintiffs "should expect" to occur. Mot. at 17-19 (citing *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024) (dismissing privacy claims against website owner because information entered was a "part of [the] electronic communication" to buy tires on the defendant's website); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024) (dismissing privacy claims against shopping website premised on plaintiff's chat messages with its chatbot support); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 396823, at *4 (S.D. Cal. June 12, 2023) (dismissing privacy claims against an airline because information entered on its website was merely browsing "flight price[s]"); *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (dismissing privacy claims based on collection of data from defendant's own web properties)).[7] Unlike these cases, Plaintiffs had a right to expect that an unknown third-party interloper was not secretly

[6] *See* Staff in the Off. of Tech., "No, hashing still doesn't make your data anonymous", FTC (July 24, 2024), available at https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("data is only anonymous when it can never be associated back to a person"); Cal. Civ. Code § 1798.140 (deidentified data is "information that cannot reasonably identify, relate to, describe, be capable of being associated with, or be linked, directly or indirectly, to a particular consumer").

[7] Samba's reliance *United States v. Forrester* is even more off point, as that case involved unlawful searches under the Fourth Amendment and only the collection of the IP and email addresses of the *recipients* of the plaintiffs' communications, not plaintiffs' *own* unique identifiers. 512 F.3d 500, 510-11 (9th Cir. 2008).

recording their video-viewing activity, profiling them and their devices, and selling it to the highest bidder.

***Highly Offensiveness.*** Several cases—including many cited by Samba—have found allegations of surreptitious tracking and profiling of users' private and identifiable online activity sufficient to allege highly offensive conduct. *See Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *1, 10 (N.D. Cal. July 14, 2025) (rejecting motion to dismiss where the defendant collected similar data to "build behavioral profiles and serve targeted advertising"); *Riganian*, 2025 WL 2021802, at *7 (same); *see also* Mot. at 20 (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (noting the "surreptitious recording" of a plaintiff's . . . activity [may] constitute an actionable intrusion"); *Facebook Tracking*, 956 F.3d at 606 (denying motion to dismiss because the "surreptitious data collection" on websites owned by companies other than the defendant may be highly offensive)). That the data at issue here involves inherently private and identifiable video-viewing information further confirms the offensiveness of Samba's conduct. *See Griffith*, 697 F. Supp. 3d at 970-71 (finding collection of "information about the videos [plaintiff] . . . watched" sufficiently offensive); *Vizio*, 238 F. Supp. 3d at 1233 (finding defendant's collection of "information about their digital identities and viewing histories" "amount to a highly offensive intrusion"). As does the fact that Samba misleadingly represents its activity as involving the collection of only "anonymized" data when that could not be further from the truth. *See* Section IV.C, at 9; *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (sustaining invasion of privacy claims where "Google represented to the plaintiffs that their information would not be sold but then proceeded to sale [sic] it anyways.") (alterations omitted).[8]

Samba (again) tries to avoid this outcome by relying exclusively on cases where defendants were the operators of the websites or properties that plaintiffs were using, as opposed to cases involving a third-party interloper (like Samba in this case) who has no business interfering with Plaintiffs' and Class Members' communications with other entities. *See* Mot. at 20 (citing *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (commingling of data collected from data obtained from

[8] That Samba misleadingly represents that only anonymized data will be collected also confirms that Plaintiffs and Class Members have a reasonable expectation that their identifiable data will not be collected. *See Facebook Tracking*, 956 F.3d at 602 (finding privacy expectation reasonable where the defendant itself represented that the at-issue data "would not be collected" but "collected it anyway").

defendant's own web properties); *Hubbard*, 2024 WL 3302066, at *7 (same); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (involving LinkedIn profile URLs and LinkedIn ID taken from defendant's own website); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (involving collection of app usage data from apps downloaded from Apple's App Store and running on Apple's own devices)). As the Ninth Circuit has recognized, these cases simply have no bearing on what is offensive in this separate context. *See Facebook Tracking*, 956 F.3d at 606 n.8 (finding *Low*, *In re iPhone Application Litig.*, and *In re Google, Inc. Privacy Policy Litig*. inapplicable because they all involved tracking on defendants' own services as opposed to unknown, secretive tracking when using services unrelated to the defendants).

**D. Plaintiffs' CIPA § 631 Claim Should Be Sustained**

CIPA Section 631(a) is violated when any person: (1) wiretaps "any telegraph or telephone wire, line, cable, or instrument;" (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication;" (3) "uses, or attempts to use . . . any information so obtained;" or (4) "aids, agrees with, employs, or conspires" to do any of the above. *See* Cal. Penal Code § 631(a). Plaintiffs assert that Samba violated clauses (2)-(4) of Section 631(a) by intercepting their video-viewing history and identifying information (¶¶ 55-74) and using and selling that information in the form of highly specific, identifiable profiles to third parties. ¶¶ 75-88. Several courts have found this conduct violates these provisions. *See Riganian*, 2025 WL 2021802, at *10-11 (finding second clause of Section 631(a) sufficiently alleged based on similar identity profiling practice); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1228 (C.D. Cal. 2024) (finding violation of third clause established where defendant provides the data to third party "for 'profit'"); *M. H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (finding violation of fourth clause established where defendant "transmit[s] a user's website communications to third-party companies to facilitate ad retargeting").

Samba's claim that Plaintiffs cannot satisfy CIPA's "content" requirement because they only allege it intercepted their "IP addresses" and "unique identifier[s]" is a blatant misrepresentation of Plaintiffs' allegations. Mot. at 21. The Complaint clearly alleges that Samba intercepts—not just this identifying information—but video-viewing activity that courts routinely find constitutes "content" under

CIPA. *See, e.g.*, *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095, 2024 WL 5161955, at *5 (S.D. Cal. Dec. 18, 2024) (finding "names of the videos [] watched" constitute "contents"); *Riganian*, 2025 WL 2021802, at *10 (sustaining Section 631 claim where the identifying information and behavioral data together constituted "intercepted content"). The cases Samba cites—solely involving addressing data that was not accompanied by any content (e.g., video data)—are clearly inapposite. *See* Mot. at 21 (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (involving "basic identification and address information"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (plaintiffs conceded "IP addresses, locations, browser types, and operating systems" at issue was not "content")).

Contrary to Samba's Motion, Plaintiffs have also sufficiently alleged Samba learned the contents of Plaintiffs' communications while "in transit." *See* ¶¶ 23, 30, 69, 166 (alleging Samba intercepted this data "in real time," before or at the same time as its receipt by the recipient); *see also Riganian*, 2025 WL 2021802, at *10 (finding allegations premised on analogous data tracking sufficient to allege "in transit" requirement). Samba's contorted reading of this allegation to argue that data is only intercepted "*after* it is received" by the intended recipient is nonsensical. Mot. at 21. No reasonable reading of this allegation supports that conclusion. *See Riganian*, 2025 WL 2021802, at *10 (allegations that defendant "intercept[s] communications while in transit" and "connects" the data to an "identity profile" "in real time" sufficient to meet the "in transit" requirement). The two cases Samba cites are off point because they involve communications that either were not covered by Section 631 or were first intercepted by an intermediary before being relayed to the defendant, unlike here. *See* Mot. at 22 (citing *Lopez v. Apple, Inc.*, No. 19-cv-04577-JSW, 2021 WL 823122, at *10 (N.D. Cal. Feb. 10, 2021) (explaining Section 631's "in transit" requirement suggests it does not apply to oral communications taking place in person); *People v. Wilson*, 17 Cal. App. 3d 598, 603 (1971) (finding no interception by agent who received the messages from a "telephone answering service" after these messages were transmitted)).

Finally, Samba's argument that Plaintiffs' claims under Section 631's third and fourth clauses fail because they have not alleged a predicate interception fails for the same reason. Plaintiffs clearly allege an interception of the contents of their electronic communications while in transit, as well as that Samba uses and aids and abets third parties' use of this data. *See* Section II; *Rodriguez v. Aquatic Sales Sols. LLC*,

735 F. Supp. 3d 1208, 1228 (C.D. Cal. 2024) (sustaining claim under CIPA's third clause based on defendant's disclosure of the data to third party "for 'profit'"); *M. H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (finding violation of CIPA's fourth clause established where the defendant shares the data with "third-party companies to facilitate ad retargeting").[9]

**E. Plaintiffs' CIPA § 632 Claim Should Be Sustained**

CIPA Section 632 prohibits any person from "intentionally" and "without the consent of all parties" from using a "recording device" to "eavesdrop" or "record [a] confidential communication." Cal. Penal Code § 632(a). Samba only challenges whether the communications were "confidential," arguing that Plaintiffs do not have an expectation of privacy in any communications occurring online. Mot. at 22-23. This argument fails for the same reasons set forth in Section IV.C, as several courts acknowledge that individuals have an expectation not to have their private online communications—including identifying information and video-viewing activity—intercepted and compiled into "comprehensive profile[s]." *See Griffith*, 697 F. Supp. 3d at 973 (sustaining Section 632 claim against TikTok based on similar technology that collects users' identifying information and video-viewing data to create user profiles); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (finding "personally identifiable browsing history" is sufficiently confidential under Section 632); *see also Vizio*, 238 F. Supp. 3d at 1232 (recognizing a reasonable expectation of privacy in "video viewing history").

While Samba claims there is a presumption that internet communications are not private (Mot. at 22), several courts have already rejected this assertion. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Griffith*, 697 F. Supp. 3d at 971 (same). Tellingly, Samba ignores these decisions and cites a lone case that *predates* them for support. *See* Mot. at 22 (citing *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (finding the interception of mouse movement and keystrokes reflecting searches for clothing

[9] Samba's cases are therefore distinguishable because they only dismissed the claim after finding there was no interception. *See In re Google Assistant Privacy Litig*, 457 F. Supp. 3d at 827 (dismissing claim for failing to sufficiently allege an interception); *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) (same). *Tavernetti v. Super. Ct.*, which Samba also cites, merely confirms that a legal interception can still serve as a predicate for clause three claims. 22 Cal. 3d 187, 192-93 (Cal. 1978).

are not confidential)).[10] Regardless, *Revitch* is clearly distinguishable because tracking mouse movements on a clothing site—the digital equivalent to the public behavior of browsing the aisles in a store—is nothing like recording private content reflecting the content individuals watched in their home, or secretly gathering information about all devices on a person's home network, to profile them. *Compare* Section IV.C *with Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) ("[T]he monitoring of [plaintiff's] interactions with [the pet store's] website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales[.]").

**F. CIPA § 638.51 Applies to the Technology at Issue**

CIPA Section 638.51 states that a person "may not install or use a pen register or a trap and trace device without first obtaining a court order." *See* Cal. Penal Code § 638.51. Consistent with CIPA's statutory definitions (Cal. Penal Code § 638.50), several courts have recognized that modern technology that records identifying information are pen registers or trap and trace devices.[11] *See Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding software that intercepts users' IP addresses are pen registers); *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557, 2025 WL 2243615, at *6 (N.D. Cal. Aug. 6, 2025) (holding Meta Pixel, which operates similarly to Samba's technology, constitutes a pen register); *Riganian*, 2025 WL 2021802, at *11 (finding JavaScript code that tracks users' name, email, phone number are pen registers). Similar to these cases, Plaintiffs allege that Samba's Automatic Content Recognition ("ACR") technology intercepts their IP address, device identifiers, household ID, and SambaID. ¶¶ 60-63, 67-74; *see also* ¶¶ 21-22, 28-29, 35-36. This is sufficient to state a Section 638.51 claim.

Samba does not cite a single case disputing the sufficiency of these allegations but rather asks this

---

[10] *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 did not limit "confidential" communications to only certain types of internet communications but merely noted that the medical information at issue in that case was confidential.

[11] Samba's quibbles that alleging "pen register" or "trap and trace" without specifying which its technology qualifies as is somehow improper (Mot. at 26 n.7) are inconsistent with the law. *See Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (plaintiffs only need to show the technology "may qualify as a pen register *or* trap and trace device . . . at the motion to dismiss stage") (emphasis added).

Court to ignore the clear definitions set forth in Section 638.50, and apply a ***different*** section, Section 638.52, that relates to telephone lines. *See* Mot. at 23. This is improper. CIPA Section 638.52 does not limit the scope of pen registers or trap and trace devices generally, but "merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line." *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024). That the legislature found it appropriate to limit one type of pen register in Section 638.52 cannot—and does not—"alter the statutory definition of a pen register stated in § 638.50(b)." *Id.*; *see also Moody*, 742 F. Supp. 3d at 1076 (rejecting the same argument based on Section 638.52 because the definitions in Section 638.50 refer to "device[s] or process[es]" which is intentionally broader); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (rejecting reliance on Section 629.51 to limit Section 638.51 to just telephone lines). The cases Samba cites to support its tortured reading of Section 638.50 are unavailing and merely stand for the unremarkable proposition that ambiguous or undefined terms can be resolved by considering extrinsic evidence like a statute's legislative history. *See* Mot. at 23 (citing *Mollaei v. Otonomo Inc.*, No. 23-16079, 2025 WL 1163727, at *2 (9th Cir. Apr. 22, 2025) (looking to CIPA's "legislative history" because the term "vehicle" as used in Section 637.7 was not defined); *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) (considering legislative history and policy considerations because provision in Uniform Fraudulent Transfer Act was subject to multiple interpretations)). No such ambiguity exists here.

Nor does Samba's legislative history argument pass muster. Mot. at 23-24. The legislature's discussion of "telephone" lines and calls is irrelevant because it ultimately chose ***not*** to use the language in the statutory definition. If anything, this confirms Plaintiffs' interpretation that the statute was intended to be broader than these forms of communication. *See* S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess. (Cal. June 16, 2015) at 10 (choosing to define these terms more broadly in recognition of the "age of rapidly changing technology"); *id.* at 16 (explaining pen registers and trap or trace devices "track which people . . . are communicating with one another and at what times"); *see also Gabrielli*, 2025 WL 1939957, at *11-12 (rejecting the same legislative history argument as here); *Matera v. Google Inc.*, No. 15-CV-04062, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016) (recognizing the California Supreme Court "regularly reads" CIPA to include "new technologies" because of how quickly

technology evolves); *Shah*, 754 F. Supp. 3d at 930 (same).

The cases Samba cites merely confirm that courts do not defy clear statutory text, as Samba is asking the Court to do here. *See* Mot. at 25 (citing *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *2 (9th Cir. July 9, 2025) (expressing unwillingness to expand the first prong of CIPA Section 631(a) because the statutory text is explicitly limited to "telegraph or telephone wire, line, cable, or instrument"); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (same); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) (same)).[12] Unlike the first prong of CIPA Section 631(a), as discussed in these cases, CIPA Section 638.50 is expressly intended to encompass every type of pen register and trap and trace device. To limit it to something narrower would be improper.

**G. Interception of Contents Does Not Absolve Samba of a CIPA § 638.51 Violation**

Samba's separate contention that it cannot be liable because it collects *both* "dialing, routing, addressing, or signaling information" in violation of Section 638.51 and "contents" in violation of Section 631 is unsupported. Mot. at 26. Violating both statutes at the same time is not a way out of CIPA liability. Indeed, several courts have rejected the same argument because it would create a "loophole" for entities who engage in these two types of wrongdoing. *See Meta Pixel Tax Filing*, 2025 WL 2243615, at *5 (rejecting the same "loophole" argument as "troubling" given it would permit "unauthorized pen register" and noting courts have "unsurprising[ly]" permitted both claims at the same time); *see also Riganian*, 2025 WL 2021802, at *12 (allowing Section 631(a) and Section 638.51 claims to proceed concurrently); *Gabrielli*, 2025 WL 1939957, at *12 (same). The two cases Samba cites do not support the type of free pass it asks the Court to endorse here. *See* Mot. at 26-27 (citing *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (dismissing Section 638.51 claim because, although allegations were vague, the only conceivable explanation was the defendant intercepted data "input" by the user, which would be exclusively "content information"); *Smith v. Maryland*, 442 U.S. 735, 736 (Cal. 1979) (merely noting pen register liability does not cover "contents")).

---

[12] Samba cites Section 632.01 for its claim that the legislature only regulates internet communications when it expressly states so, but that is inconsistent with established case law. Mot. at 25 n.6; *see, e.g.*, *Facebook Tracking*, 956 F.3d at 607-08 (sustaining Section 631 claim based on internet communications although it does not mention "internet" specifically).

Samba's final argument that Plaintiffs' Section 638.51 claim fails because there is no "reasonable expectation of privacy" in the dialing, routing, addressing, or signaling information it intercepts conflates Section 638.51's requirements with other CIPA provisions like Sections 631 and 632. Mot. at 27 n.8. To be clear, there is no requirement that Plaintiffs have a "reasonable expectation of privacy" to pursue Section 638.51 claims. But if there were, courts have found this information is nonetheless private when used as part of profiling individual users, like Samba does here. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 947 (finding IP address is private as a part of a user profile).

**H. Rule of Lenity Does Not Apply Here**

Samba's reference to the rule of lenity does not save their arguments. That rule only applies if "after seizing everything from which aid can be derived, [the court] can make no more than a guess" as to what the legislature intended. *See United States v. Hertler*, 776 F.3d 680, 686 (9th Cir. 2015). As described in Section IV.F, courts have no issue applying Section 638.50 or understanding its contours per the legislature's directive. *See Riganian*, 2025 WL 2021802, at *12 (explaining there is "no role for that rule here" where Section 638.50's "express language" contains no "egregious ambiguity and uncertainty").

This includes interpreting the term "electronic communication" that Samba claims is ambiguous. Mot. at 28. That term is expressly defined per Section 638.50 and courts readily find the transmission of data through technology like Samba's ACR software falls within its purview. *See Shah*, 754 F. Supp. 3d at 931 (holding that the transmission of data through a similar technology "constitutes an electronic communication" under Sections 638.50 and 638.51). The cases Samba cites concern neither CIPA nor Section 638.50 specifically. *See* Mot. at 27 (citing *People v. Avery*, 27 Cal. 4th 49 (Cal. 2002) (applying the rule to Cal. Pen. Code § 484); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (interpreting 18 U.S.C. § 1030); *Crandon v. United States*, 494 U.S. 152, 158 (1990) (interpreting 18 U.S.C.A. § 209 concerning government salaries)). These cases simply have no relevance here.[13]

**I. Plaintiffs' CDAFA Claim Should Be Sustained**

A plaintiff "who suffers damage or loss by reason of a violation" of CDAFA "may bring a civil

[13] The rule of lenity also does not apply to VPPA. *See Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059, 1069 (N.D. Ill. 2011), *rev'd on other grounds*, 672 F.3d 535 (7th Cir. 2012) (denying application of rule of lenity in the VPPA context).

action against the violator." Cal. Penal Code § 502(e)(1).[14] Courts have held that allegations of a defendant's use of plaintiffs' private data, as well as "unjust profit" from that use, constitutes "a 'damage or loss' within the meaning of CDAFA." *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) ("[A] reasonable juror could find that [p]laintiffs suffered damage or loss [under CDAFA] because Google profited from the misappropriation of their data."). Here, Plaintiffs' allegations that Samba uses and sells access to their data it unlawfully acquires satisfy CDAFA's damage or loss requirement.

Samba's claim that Plaintiffs must go above and beyond this by alleging a separate loss of "property" is inconsistent with CDAFA's requirements. Mot. at 28. Its reliance on cases brought under the UCL or for common law conversion does not support this argument. *See* Mot. at 28-29 (citing *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (evaluating lost money or property for UCL claim); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (noting conversion requires a property interest); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1074 (N.D. Cal. 2012) (same)). Unlike UCL and conversion claims, CDAFA contains neither of these requirements. But even if it did, several courts recognize that stolen data is itself property. *See Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) ("[P]laintiffs have a property interest in their data."); *Calhoun*, 526 F. Supp. 3d at 635 (rejecting the applicability of *Low* because "California courts have also acknowledged that users have a property interest in their personal information"); *Griffith*, 697 F. Supp. 3d at 976 (same).

The only CDAFA cases Samba actually cites are readily distinguishable. For instance, in *Lineberry*, 2025 WL 551864, at *2, those plaintiffs vaguely asserted they suffered "damage or loss" but did not explain "how or why that is the case" such as by alleging there was a "market" for the data at issue. Here, Plaintiffs clearly allege there is a market for the precise data Plaintiffs allege Samba collected, and that Samba is one of its primary participants. ¶¶ 55-88. The other CDAFA cases it cites did not involve an unjust profit or use theory, like here, but claimed that the data itself *lost* value. Mot. at 29 (citing *Doe*

[14] Samba does not challenge, and therefore concedes, that Plaintiffs adequately allege all other elements of their CDAFA claims. *See* Cal. Penal Code §§ 502(c)(1), (2), (3), (6), (7), (8), (13); ¶¶ 195-207.

*v. Cty. of Santa Clara*, No. 23-CV-04411, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (finding the "loss of value" theory insufficient); *Nowak v. Xapo, Inc.*, No. 5:20-cv-03643, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020) (same); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (same)).[15] Samba does not cite any case addressing this separate theory of damage or loss, which several courts have accepted. *See Smith*, 2025 WL 2210002, at *3 (finding allegations of "unjustly earned profits" from misappropriated "personal information and online activity" are sufficient as "damage or loss" under CDAFA); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (confirming misappropriation of data is a sufficient "damage" or "loss"); *Rodriguez*, 772 F. Supp. 3d at 1110 (same).

### J. Plaintiffs' VPPA Claim Should Be Sustained

The VPPA is designed to prevent video tape service providers from knowingly disclosing personally identifiable information ("PII"). *See* 18 U.S.C. § 2710. Samba's conduct categorically violates the VPPA. Its arguments to the contrary do not pass scrutiny.

#### i. Defendant Is a Video Tape Service Provider

A "Video Tape Service Provider" under the VPPA includes anyone "engaged in the business" of "deliver[ing] . . . audiovisual material." *See Ballard v. Insomniac Holdings, LLC*, No. 25-CV-00811-SI, 2025 WL 1696558, at *3 (N.D. Cal. June 17, 2025) (citing 18 U.S.C. § 2710(a)(4)). Samba—which bills itself in its *own motion* as a "television technology company" (Mot. at 11)—categorically meets this definition. Its software is embedded directly in TV devices, precisely so it can spy on users' video-viewing activity to assist its customers in "deliver[ing]" targeted advertisements—including video advertisements on TV devices—based on this data. *See* ¶ 64 (Samba stating its technology allows "advertisers [to] identify any type of TV viewer, target them based on how and when they consume TV, and then engage them on their phone, tablet, PC, or TV"); ¶ 65 (screenshot from Samba's website claiming its "identity graph" allows advertisers to "measure[] campaign performance" across TV, CTV, and digital devices); ¶ 57 (Samba's CEO noting the importance for advertisers to target viewers); *see also* Mot. at 15

---

[15] Furthermore, several courts have accepted the "loss of value" theory for purposes of CDAFA. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (recognizing the loss of value theory for CDAFA); *Facebook Tracking*, 956 F.3d at 601 (recognizing loss of value of browsing data was damage or loss for CDAFA claims).

(acknowledging Samba advertises its software as permitting consumers to "[i]nteract with [their] favorite shows" and obtain "exclusive content").

Samba's assertion that it only "peripherally or passively" engages in the delivery of video content is inconsistent with its entire business model, as well as the allegations cited above. Mot. at 30. Delivery of advertisements, specifically those delivered through the TVs in which Samba's technology is incorporated, is at the heart of how Samba makes money. *See Vizio*, 238 F. Supp. 3d at 1222 (C.D. Cal. 2017) (finding the defendant a video tape service provider where it "developed a product intimately involved in the delivery of video content to consumers" and "created a supporting ecosystem to seamlessly deliver" such content "including entering into agreements with content providers" and "market[ing] its product to consumers" as a way to access this "video content"); *see also Mata v. Zillow Grp., Inc.*, No. 24-CV-01095, 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024) (finding this element satisfied where defendant "uses video content" to help clients "advertise their properties").

Samba's reliance on *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113-14 (9th Cir. 2025) does not advance its argument. There, the Ninth Circuit found that a public movie theater, which sold tickets to "shared" screenings did not fall under the VPPA. *Id.* Central to this analysis was the fact that individual patrons could not in any way "control" what was shown on the screens, unlike when consumers engage in private video-viewing in their "home" and "living room." *Id.* Here, there is no disputing that the video content seen by consumers takes place in the "home" through the TVs that incorporate Samba's technology, as well as consumers' other private devices that Samba has profiled and identified. Samba's attempt to equate its conduct with other companies engaged in completely different industries—like cereal companies and fashion brands—falls flat. Mot. at 30-31 (citing *Carroll v. General Mills, Inc.*, No. CV 23-1746, 2023 WL 4361093, at *3 (C.D. Cal. Jun. 26, 2023) (videos were ancillary where defendant was a food products company); *Cantu v. Tapestry, Inc.*, No. 22-CV-1974, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (same with respect to a luxury fashion company)).[16] Samba does

[16] The *Tapestry* court noted the *Vizio* decision and how the provision of ACR services—like Samba's here—coupled with a business of selling that information to "advertisers and media content providers" is enough to "sufficiently ple[a]d" an entity is a "video tape service provider under the VPPA." *Tapestry*, 697 F. Supp. 3d at 994.

not *happen* to *sometimes* dabble in delivering content to TV users like General Mills or Tapestry; that conduct is core to its business.

**ii. Plaintiffs Are Consumers**

Under the VPPA, being a "consumer" "involves some type of commitment, relationship, or association." *Ballard*, 2025 WL 1696558, at *4. Plaintiffs are consumers for at least two reasons. First, Plaintiffs purchased and set up their TVs, which incorporate Samba's ACR technology. ¶¶ 20-21, 27-28, 34-35, 67-74. This sale and registration process is itself sufficient to establish Plaintiffs are "consumers." *Vizio*, 238 F. Supp. 3d at 1223 (plaintiffs who "purchase[d] their Smart TVs" incorporating defendants' software were consumers within the meaning of the VPPA); *Jackson v. Fandom, Inc.*, No. 22-CV-04423, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (finding "subscriber" sufficiently alleged where plaintiff "became a registered user").[17] Plaintiffs separately qualify as "consumers" because Samba obtained their PII and assigned them unique identifiers. ¶¶ 21-22, 28-29, 35-36, 58-62. Several courts acknowledge this exchange of "personal information" is sufficient to satisfy the VPPA's "consumer" requirement. *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012) (explaining the assignment and use of "identifiers" to individuals who interact with the service sufficient to satisfy the consumer requirement); *see also Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 254 (S.D.N.Y. 2025) ("[C]onvey[ing]" "personal information" makes a plaintiff "a VPPA subscriber").

Samba attempts to avoid this precedent by relying exclusively on cases where these types of allegations were lacking. Mot. at 31 (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (dismissing VPPA claim for lack of payment or registration); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 164 (S.D.N.Y. 2023) (same); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017) (same); *Rodriguez v. Delta T LLC*, No. 223CV03717, 2023 WL 9419152, at *5 (C.D. Cal. Dec. 12, 2023) (no allegation of payment or details about the registration process)). Because the allegations missing in those cases are clearly alleged here, these cases weigh in favor of *sustaining*

[17] Samba itself claims that consumers must affirmatively register for its service. Mot. at 12-13. While Plaintiffs dispute their incomplete employee declaration is sufficient to resolve this factual dispute (*see* Section IV.A), this assertion dooms any claim now that Plaintiffs are not consumers.

rather than dismissing Plaintiffs' claims.

Samba's final argument that Plaintiffs are not consumers because it is not a video tape service provider (Mot. at 31) fails for the reasons stated in Section IV.J.i.

**iii. Plaintiffs Allege Defendant Discloses Personal Information**

In the Ninth Circuit, PII is "information that 'standing alone, identifies a person' as well as information that is 'capable of' identifying a person." *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (internal citations omitted). Here, the Complaint alleges that Samba discloses literal "identity graphs" designed for the express purpose of identifying each specific user. ¶¶ 58-66, 76-88. These graphs contain, among other things, consumers' IP addresses and unique device identifiers. ¶¶ 61, 141. There is no question that this information is "capable" of identifying a person when the identifiable nature of the identity graphs is the chief selling point for this service. *See Vizio*, 238 F. Supp. 3d at 1225 (finding IP addresses, zip codes, and device identifiers constitute PII because they alone, or in combination, can identify an individual user); *see also In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) (denying summary judgment motion because whether IP addresses and cookies to Facebook constituted "PII" under the VPPA was a fact issue).

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985-86 (9th Cir. 2017) does not support Samba's position; it proves why its argument fails. There, the Ninth Circuit found Roku serial numbers were not "PII" because plaintiff conceded both that: (1) that was the only information disclosed; and (2) that it "cannot identify an individual." *Id.* The court specifically left open the door that other types of data "may very well" qualify as PII under the VPPA particularly in light of "modern technology." *Id.* Here, Samba's comprehensive identity profiles designed precisely to identify specific individuals at the user level are the exact types of PII the *Eichenberger* court envisioned when it refused to cabin its analysis to specific types of data. Neither of the other two cases Samba cites helps its position either, as neither of them involve the types of comprehensive identity profiles Samba discloses here. *See* Mot. at 32 (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 281-83, 290 (3d Cir. 2016) (involving only "static digital identifiers" but noting "uncertainty" and "unanswered questions" about what kinds of disclosures "trigger liability"); *Solomon v. Flipps Media, Inc.*, 136 F. 4th 41, 45, 54-55 (2d Cir. 2025) ("cookies" are not PII).

**K. Plaintiffs Are Entitled to Equitable Relief**

To allege an unjust enrichment claim, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Here, Plaintiffs allege Samba was unjustly enriched because it collected and wrongfully disclosed Plaintiffs' private, personally identifiable video-viewing history for its own financial gain without Plaintiffs' authorization or compensation. ¶¶ 75-88, 219-225. This is all the law requires. *See Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501, 2025 WL 2052302, at *16 (N.D. Cal. July 22, 2025) (sustaining unjust enrichment claim where defendants intercepted plaintiffs' data without consent and unjustly retained proceeds of monetizing the illegally obtained data); *In re Meta Pixel Tax Filing*, No. 22-cv-07557, 2024 WL 1251350, at *10 (same); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1159 (N.D. Cal. 2021) (same).

Samba's argument that only "property" can support an unjust enrichment claim is inconsistent with the cases cited above. Mot. at 34 n.10. Nothing in *ESG Capital Partners*, 828 F.3d at 1038-39, which it cites for that proposition, cabined unjust enrichment claims in this manner. *Id.* (noting unjust enrichment merely requires receiving and unjustly retaining a "benefit").

Samba separately argues that Plaintiffs cannot obtain any form of equitable relief because they fail to "demonstrate that they credibly lack an adequate remedy at law." Mot. at 33-34. Not so. Plaintiffs allege they lack an adequate remedy at law because Samba has, and continues to, use and monetize their data for its own profits. ¶¶ 75-88, 170, 181, 193. California law expressly allows claims for disgorgement to reach these forms of misappropriation in recognition that they are not fully captured by legal claims. *See Facebook Tracking*, 956 F.3d at 600 (recognizing "California law requires disgorgement of unjustly earned profits" where plaintiffs "allege that Facebook profited from [their] valuable data"); *see also Turner v. Apple, Inc.*, No. 5:20-CV-07495, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (allowing equitable claims based on "misappropriated data" because "legal damages do not cover the full value of the harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (sustaining unjust enrichment claim where "the injury [] is an invasion of privacy that can never be fully remedied through damages"). An injunction is equally proper to remedy *future* harm that

legal claims undoubtedly do not cover either. Samba's own authority recognizes this. Mot. at 33 (citing *Lair v. Bank of Am., N.A.*, No. 23-cv-01345, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024) (permitting injunctive relief because legal remedies are inadequate to "prevent future harm")).[18]

Neither *Hubbard* nor *In re Ford Tailgate Litigation* supports Samba's argument. Mot. at 34. *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) did not involve a claim for disgorgement, but general unjust enrichment that "mirror[ed]" the same claim and relief sought by plaintiffs' legal claims like breach of express and implied warranty. *Hubbard*, 2024 WL 3302066, at *6 similarly is inapplicable because the claims stemmed exclusively from Google's unlawful collection of data, which was a type of harm fully covered by the plaintiffs' 50 causes of action seeking legal remedies. The same is not true here, where Plaintiffs' legal claims are not cabined to unlawful collection and do not capture every way Samba repeatedly uses and monetizes its wrongfully obtained data, which is a harm that can only be captured through equitable remedies like disgorgement.

## CONCLUSION

Samba's Motion should be denied for each of the reasons described herein.

Dated: September 2, 2025

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
Yuanchen Lu (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123

[18] *Lair* only dismissed plaintiffs' claims for restitution because he "ha[d] not explained why" actual contract damages would be inadequate to compensate him for overcharge fees. *Id.* at *6.

Telephone: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

*Attorneys for Plaintiffs and the Proposed Class*