Matthew E. Lewitz (SBN: 325379)
Email: mlewitz@cozen.com
Brett N. Taylor (SBN: 274400)
btaylor@cozen.com
Gianna Puccinelli (SBN: 311313)
gpuccinelli@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394-4700

Attorneys for Defendant
Samba TV, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILIP MCDONALD, STEVE DELLASALA, BOB WARDEN, and VINCE TOPHONEY, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

SAMBA TV, INC.,

Defendant.

Case No.: 3:25-cv-03470-JSC

**DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: October 9, 2025
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Jacqueline Scott Corley

Complaint Filed: April 18, 2025

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 8

II. ARGUMENT ........ 8

- A. Plaintiffs Lack Article III Standing Because They Have No Injury-in-Fact ........ 8
- B. Plaintiffs' Claims Should Be Dismissed ........ 10
  - 1. Plaintiffs Do Not Dispel That They Cannot Maintain CA Claims ........ 10
  - 2. Plaintiffs' Constitutional and Common Law Privacy Claims Fail ........ 12
  - 3. Plaintiffs' CIPA Claims Fail ........ 13
    - a. Plaintiffs Cannot State a Claim Under Penal Code Section 631 ........ 13
    - b. Plaintiffs Cannot State a Claim Under Penal Code Section 632 ........ 14
    - c. Plaintiffs' Trap and Trace Claims Fail ........ 15
  - 4. Plaintiffs Fail to Establish "Damage or Loss" Under CDAFA ........ 17
  - 5. Plaintiffs' VPPA Claims Fail ........ 18
    - i. Samba Is Not a "Video Tape Service Provider" ........ 18
    - ii. Plaintiffs Are Not "Consumers" ........ 19
    - iii. The Data at Issue is not PII ........ 21
  - 6. Plaintiffs' Equitable Relief Claims Fail ........ 22

III. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 15

*Calhoun v Google, LLC*,
113 F.4th 1141 (9th Cir. 2024).......... 9

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) .......... 19

*Carroll v. Chick-fil-A, Inc.*,
No. 23-CV-00314-RFL, 2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 20

*Ciganek v. Portfolio Recovery Associates, LLC*,
190 F.Supp.3d 908, 914 (N.D. Cal. 2016) .......... 16

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461 (N.D. Cal. 2021) .......... 17

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 22

*Doe v. Kaiser Foundation Health Plan Inc.*,
Case No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017).......... 21, 22

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015).......... 19

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002).......... 14

*Garza v. Alamo Intermediate II Holdings, LLC*,
No. 23-CV-05849-VC, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024) .......... 19

*Golden v. NBCUniversal Media, LLC*,
No. 22 CIV. 9858 (PAE), 2024 WL 4149219 (S.D.N.Y. Sept. 11, 2024) .......... 20

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) .......... 12

*Hammerling v. Google LLC*,
2022 WL 17365265 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 14

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) .......... 12

*Heeger v. Facebook, Inc.*,
509 F.Supp.3d 1182 (N.D. Cal. 2020) .......... 15

*Heiting v, Taro Pharmaceuticals USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) .......... 18

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
728 F.Supp.3d 1112 (C.D. Cal. 2024) .......... 13

*Hernandez v. Chewy, Inc.*,
No. 223CV05620HDVRAO, 2023 WL 9319236 (C.D. Cal. Dec. 13, 2023) .......... 20

*Hernandez-Silva v. Instructure, Inc.*,
Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 13, 18

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 12

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023) .......... 21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 8, 9

*In re Google Location History Litig.*,
514 F.Supp.3d 1147 (N.D. Cal. 2021) .......... 22

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 22

*In re Hulu Privacy Litigation*
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .......... 21

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. 2024) .......... 22

*In re Turbodyne Techs., Inc. Sec. Litig.*,
No. CV9900697MMMBQRX, 2000 WL 33961193 (C.D. Cal. Mar. 15, 2000) .......... 20

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. Mar. 2, 2017) .................... 14, 19, 20, 22

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .................... 11

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. Nov. 8, 2023).................... 11

*Jonczyk v. First Nat. Capital Corp.*,
No. SACV 13-959-JLS (C.D. Cal. Jan. 22, 2014) .................... 11, 12

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025).................... 12

*Kishnani v. Royal Carribean Cruises Ltd.*,
Case No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .................... 15, 16

*Lee v. Springer Nature America, Inc.*,
769 F.Supp.3d 234 (S.D.N.Y. 2025).................... 21

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014).................... 9

*Licea v. Cinmar, LLC*,
659 F.Supp.3d 1106 (C.D. Cal. 2023).................... 16

*Lineberry v. Addshopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025).................... 18

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) .................... 20

*Mata v. Zillow Group, Inc.*,
No. 24-CV-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024).................... 19

*Mata v. Zillow Grp., Inc.*,
No. 24-CV-01095, 2024 WL 519955 (S.D. Cal. Dec. 18, 2024).................... 13, 19

*Mejia v. Reed*,
31 Cal.4th 657, 663 (2003).................... 16

*Mitchener v. CuriosityStream, Inc.*,
Case No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025).................... 15, 16

*Osheske v. Silver Cinemas Acquisition Co.*,
132 F.4th 1110 (9th Cir. 2025).................... 18, 19

*Popa v. Microsoft*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ... 8, 9

*Riganian v. LiveRamp Holdings, Inc.*,
Case No. 25-cv-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ... 13

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F.Supp.3d 1208 (C.D. Cal. 2024) ... 13

*Rodriguez v. Delta T LLC*,
No. 223CV03717HDVAGR, 2023 WL 9419152 (C.D. Cal. Dec. 12, 2023) ... 20

*Rodriguez v. Google LLC*,
Case No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ... 14

*Rodriguez v. JP Boden Servs. Inc.*
2024 WL 559228 (S.D. Cal. Feb. 12, 2024) ... 19

*Roy v. Contra Costa Cty.*,
No. 15-cv-02672-TEH, 2015 WL 5698743 (N.D. Cal. Sept. 29, 2015) ... 13

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ... 9

*Salazar v. McDonald's Corp.*,
No. 14-CV-02096-RS, 2017 WL 950986 (N.D. Cal. Mar. 10, 2017), *aff'd*, 939 F.3d 1051 (9th Cir. 2019) ... 11

*Shah v. Capital One Fin. Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. Mar. 3, 2025) ... 12, 17, 18

*Smith v. Rack Room Shoes, Inc.*,
Case No. 24-cv-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ... 14

*Thomas v. Papa Johns Int'l, Inc.*,
Case No.: 22cv2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd* No. 24-3557, No. 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025) ... 12

*TransUnion LLC v. Ramirez*,
594 U.S. 412 (2021) ... 8

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ... 15

*United States v. Soberanes*,
318 F.3d 959 (9th Cir. 2003) ... 11

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 751 (N.D. Cal. 2023) ... 13, 14

**Statutes**

18 U.S.C. 3121 .......... 17

18 U.S.C. 3127(3)-(4) .......... 17

Cal. Penal Code § 502(a) .......... 10

Cal. Penal Code § 631(a) .......... 13, 14

Cal. Penal Code § 632.01 .......... 16

Cal. Penal Code § 632.7 .......... 16

Cal. Penal Code § 638.50(b)-(c) .......... 15

Cal. Penal Code § 638.52(c) .......... 16

Cal. Penal Code § 638.52(d)(1) .......... 16

Cal. Penal Code § 638.52(d)(3) .......... 16

Cal. Penal Code § 638.54(b)(1) .......... 16

Cal. Penal Code § 638.60(b)-(c) .......... 17

N.C. Gen. Stat. § 15A-261 .......... 11

Okla. Stat. tit. 13, § 176.3 .......... 11

**Other Authorities**

California Constitution .......... 8, 10, 12

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As confirmed by their Opposition, out-of-state Plaintiffs seek to hold Samba liable under a panoply of California claims based on Samba's alleged collection of unremarkable anonymous datapoints. This alleged anonymous collection, especially when coupled with Plaintiffs' consent, fails to support a common law privacy violation. Thus, Plaintiffs lack the requisite concrete injury needed for standing. Moreover, Plaintiffs forfeit their ability to invoke the California Constitution, and do not credibly establish why their claims under CIPA and CDAFA fare any better given that those statutes only protect California citizens. Further, Plaintiffs fail to demonstrate an offensive privacy intrusion absent the collection of any sensitive or intimate personal information. These shortcomings, coupled with Plaintiffs' inability to plausibly establish one or more requisite elements of their remaining claims, renders their Complaint ripe for dismissal.

## II. ARGUMENT

### A. Plaintiffs Lack Article III Standing Because They Have No Injury-in-Fact

Plaintiffs cite to *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 598 (9th Cir. 2020), for the proposition that alleged invasion of privacy claims necessarily establish existence of a concrete harm sufficient to confer Article III Standing. (Pls. Opp., Dkt. 40 at 4.) Plaintiffs oversimplify the relevant standing analysis. Both the U.S. Supreme Court and Ninth Circuit confirm that a more in-depth evaluation is required.

In *TransUnion LLC v. Ramirez,* 594 U.S. 412, 430-31 (2021) ("*Trans Union*"), the Supreme Court clarified that a plaintiff must demonstrate "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." The Ninth Circuit recently recognized that courts "should assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury.'" *Popa v. Microsoft*, No. 24-14, 2025 WL 2448824, at *7 (9th Cir. Aug. 26, 2025) ("*Popa*") (citing *Trans Union*, 594 U.S. at 424). In *Popa,* the Ninth Circuit found that the plaintiff did not explain how the tracking of her interactions with a pet supplies website "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 2025

WL 2448824, at *5. Similarly, here, Plaintiffs have not alleged any facts plausibly supporting a common law privacy violation.[1] (*See* Section II(B)(2); Chen Decl., Ex. 3, Dkt. 32-3 at 4.)

Further, contrary to Plaintiffs' assertion, under a factual jurisdictional attack, the court need not presume the truthfulness of Plaintiffs' allegations. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Instead of providing the requisite proof for their jurisdictional allegations,[2] Plaintiffs attack the sufficiency of Samba's declarations, claiming they fail to describe the "when, where, and how" regarding Samba's consent prompts. (Pls. Opp., Dkt. 40 at 6.) This claim is belied by Samba's evidence. (*See* Tseng Decl., Dkt. 33 at ¶¶ 5-6.)

Plaintiffs cite to *Calhoun v Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024), for the proposition that because consent is an affirmative defense on the merits, it has no impact on whether the Court has subject matter jurisdiction over the action. (Pls. Opp., Dkt. 40 at 5.) But *Calhoun* did not involve a 12(b)(1) Motion or the issue of subject matter jurisdiction. Plaintiffs also cite to *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019), for the proposition that because courts presume success on the merits when evaluating standing, consent is not a standing issue in a privacy case. (Pls. Opp., Dkt. 40 at 5.) But even the *In re Facebook, Inc.* Court acknowledged that if confronted with truly frivolous privacy claims, it might reasonably consider "intertwined issues as a matter of standing" when "the absence of a reasonable privacy expectation or the presence of consent were obviously and totally indisputable." *Id.* at n. 7.

Plaintiffs' contention that Samba's disclosures "omitted any mention of Samba's omnipresent cross-device tracking, individual profiling, or its sale of this information third-party advertisers" is also unfounded. (Pls. Opp., Dkt. 40 at 5.) Samba's privacy policies disclosed the potential for each of those possibilities: **(1) cross-device tracking:** "Our Services also include our

---

[1] In *Popa*, the Court specifically pointed out that *Facebook Tracking* was a pre-*Trans Union* decision. *Popa,* 2025 WL 244824, at *7. But even pre-*Trans Union*, it still "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Id.* at *8. Here, Plaintiffs do not attempt to explain the individual circumstances giving rise to Plaintiffs' alleged injuries; instead, they simply assume an invasion of privacy is always concrete harm. (Pls. Opp., Dkt. 40 at 4.) That is not enough to establish standing.

[2] *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (explaining that "plaintiff must support her jurisdictional allegations with 'competent proof'" in response to jurisdictional attack) (citation omitted).

products and services that may be integrated into third-party websites, mobile apps and Smart TV apps"; **(2) individual profiling:** "Create a profile based on your viewership interests to personalize our Services and deliver recommendations, advertisements, content and features that match your interests"[3]; **(3) sale of information to third party advertisers:** "With Advertising Partners: We engage other companies to serve advertisements on our behalf across the Internet and provide analytics services to us." [4] (Chen Decl., Dkt 32-3 at 2, 4-5.)[5]

The Samba technology only deploys when a consumer "opts-in." Other than unsupported, conclusory allegations, Plaintiffs have provided no facts to the contrary. Accordingly, Plaintiffs have no concrete injury and, thus, no standing.

**B. <u>Plaintiffs' Claims Should Be Dismissed</u>**

**1. <u>Plaintiffs Do Not Dispel That They Cannot Maintain CA Claims</u>**

Plaintiffs concede they cannot avail themselves of the California Constitution. (Pls. Opp., Dkt. 40 at 8 n. 5.) Plaintiffs also concede that any alleged data interception occurred via their devices in North Carolina and Oklahoma. (*Id.* at 7-8; Compl., Dkt. 1 at ¶¶ 19, 26, 33.) Despite these realities and explicit statutory language affording protection to California citizens only, Plaintiffs contend they have better luck invoking CIPA and CDAFA. (*Id.* at 7-8.) They do not.

Plaintiffs attempt to elude the California Legislature's clearly expressed intent to cabin CIPA and CDAFA to the protection of California residents. (Pls. Opp., Dkt. 1 at 8.) In so doing, they ignore the unambiguous legislative declaration that CIPA and CDAFA protect the privacy rights of California citizens. *See* Cal. Penal Code § 502(a) (explaining intent and declaration to "protect[] the privacy of individuals as well as [] the well-being of financial institutions, business

---

[3] The policy further provides: "When you opt-in to our Smart TV Services, we may recognize the content played through your TV (including content played through external players connected to your TV [. . .] We may also receive Content Viewing Information if you enable a Smart TV App that integrates our Services [. . .] We collect information when you visit or use third-party websites and apps that use our Integrated Services, including through cookies and other technologies described above." (*Id.* at 3.)

[4] The policy discloses that Samba may "[p]rovide third-party apps, websites, and advertisers measurement services so they better understand the usage of their services, the success of their ad campaigns, and are able to plan and deliver future ads based on interests" and that it may disclose or sell "IP addresses, device IDs, advertising IDs, and content and ad exposure data, as described in this Privacy Policy, to our advertising, media, and content recommendation partners, for the purposes of delivering digital advertisements and measuring content and advertising effectiveness." (*Id.* at 4, 10-11.)

[5] These disclosures are in all of Samba's relevant privacy policies. (*See* Chen Decl., Dkt. 32-1, 32-2, 32-3.)

concerns, governmental agencies, and others within this state….”), § 630 (“The Legislature by this chapter intends to protect the right of privacy of the people of this state.”); *see also Doe v. Kaiser Foundation Health Plan Inc.*, Case No. 23-cv-02865-EMC, 2024 WL 1589982, at *12 (N.D. Cal. Apr. 11, 2024) (highlighting that “CIPA does contain express geographical limitations”). Given well-settled rules of statutory construction, Plaintiffs cannot ignore these specific statutory provisions. *See United States v. Soberanes*, 318 F.3d 959, 963 (9th Cir. 2003) (noting the “fundamental canon of statutory interpretation [which] holds that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs”); *Salazar v. McDonald's Corp.*, No. 14-CV-02096-RS, 2017 WL 950986, at *3 (N.D. Cal. Mar. 10, 2017), *aff'd*, 939 F.3d 1051 (9th Cir. 2019), and *aff'd*, 944 F.3d 1024 (9th Cir. 2019).

Plaintiffs also ignore that their home states’ interests outweigh California’s interest in having its own law applied. *Kaiser Foundation Health Plan Inc.*, 2024 WL 1589982, at *12 (“Because wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer”.) California has diminished interest in applying its own wiretapping laws to allegedly aggrieved citizens of other states. *Id.*; *Jonczyk v. First Nat. Capital Corp.*, No. SACV 13-959-JLS AGRX, 2014 WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014). This interest is reduced particularly given “the[] [] material differences between CIPA and the wiretapping statutes of the other 49 states.”[6] *James v. Walt Disney Co.*, 701 F.Supp.3d 942, 964 (N.D. Cal. Nov. 8, 2023) (quoting *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 606 (N.D. Cal. 2015)).

Plaintiffs’ conclusory assertion that a large portion of events giving rise to their claims occurred in California is belied by their own allegations that any alleged interception occurred through their own devices located outside of California. (*See, e.g.*, Compl., Dkt. 1 at ¶¶ 19-21, 24-28, 31-35, 41.) And Samba’s alleged mere presence in California does not dictate CIPA’s application to non-California Plaintiffs. *See Kaiser Foundation Health Plan Inc.*, 2024 WL 1589982, at 13 (dismissing CIPA claim and holding that “California does not have a predominant

[6] *See* Okla. Stat. tit. 13, §§ 176.3 (wiretapping), 177.2 (pen register/trap and trace); N.C. Gen. Stat. §§ 15A-261 (pen register/trap and trace), 15A-287 (wiretapping).

interest simply because Kaiser is based in California" because "only a California Plaintiff can bring a CIPA claim"); *Jonczyk*, 2014 WL 1689281, at *4 (applying Missouri law to wiretapping claims brought by Missouri resident against California corporation). For the above reasons, the non-California Plaintiffs cannot invoke the protections of CIPA and CDAFA.

**2. Plaintiffs' Constitutional and Common Law Privacy Claims Fail**

Because the out-of-state Plaintiffs concede that "claims under the California Constitution can only be brought by California residents" (Pls. Opp., Dkt. 40 at 8 n. 5; Compl., Dkt. 1 at ¶¶ 19, 26, 33), Plaintiffs' second cause of action must be dismissed.

Plaintiffs' intrusion upon seclusion claim meets a similar fate. "Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality, especially if those communications can be easily shared by the recipients of the communications." *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025); *see also Thomas v. Papa Johns Int'l, Inc.*, Case No.: 22cv2012 DMS (MSB), 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024) ("Generally, the internet is not a place where users have a reasonable expectation of privacy."), *aff'd* No. 24-3557, No. 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025). As Plaintiffs do not dispute that the allegedly actionable conduct occurred while Plaintiffs used internet-based platforms (Pls. Opp., Dkt. 40 at 2; Compl., Dkt. 1 at ¶¶ 25, 32, 39, 188), there was no intrusion upon Plaintiffs' reasonable expectation of privacy.

Further, Plaintiffs do not allege a highly offensive intrusion. *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary interest browsing involves the collection of users' data, including by tracking across the internet, <u>and a reasonable user should expect as much</u>.") (emphasis in original); *Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1048 (N.D. Cal. Mar. 3, 2025) (defendant's alleged disclosure of "employment information" and "bank account information" did "not rise to the level of an 'egregious breach of social norms'"); *Harrill v. Emanuel Med. Ctr.*, No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *7 (E.D. Cal. June 9, 2025) (highlighting that disclosure of user's browser history was not highly offensive); *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022).

**3. Plaintiffs' CIPA Claims Fail**

**a. Plaintiffs Cannot State a Claim Under Penal Code Section 631**

Plaintiffs retreat from seeking to hold Samba liable under Section 631(a)'s first clause. (Pls. Opp, Dkt. 40 at 12.) This is with good reason, as the first clause applies only to telephone or telegraphic lines, which have no bearing on Plaintiffs' alleged internet-based claims. (*Compare* Cal. Penal Code § 631(a), *with* Compl., Dkt. 1 at ¶¶ 25, 32, 39, 165; *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755-56 (N.D. Cal. 2023).) Plaintiffs' silence amounts to a waiver of any purported claims under clause one. *See, e.g.*, *Roy v. Contra Costa Cty.*, No. 15-cv-02672-TEH, 2015 WL 5698743, at *3 n. 7 (N.D. Cal. Sept. 29, 2015).

With respect to Section 631(a)'s second clause, while Plaintiffs contend they sufficiently allege Samba learned the contents of their communications while "in transit," their conclusory allegations do not plausibly establish real time interception. (Pls. Opp., Dkt. 40 at 13.) Instead, they merely mimic CIPA's boilerplate "in transit" language. (*Id.* (citing to Compl. ¶¶ 23 (conclusory allegation that Samba "intercepted Plaintiff['s] [] private video-viewing data in real time"), 30 (same), 69 (presuming without factual support that "Samba TV intercepts and processes the content in real-time"), 166 (parroting Section 631(a)'s second clause).)) Plaintiffs' reliance on distinguishable cases involving detailed allegations setting forth plausible theories as to real-time interception, which are absent here, do not move the needle. (Pls. Opp. at 12-13 (citing to *Riganian v. LiveRamp Holdings, Inc.*, Case No. 25-cv-00824-JST, 2025 WL 2021802, at *10 (N.D. Cal. July 18, 2025); *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095, 2024 WL 519955 (S.D. Cal. Dec. 18, 2024); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F.Supp.3d 1208 (C.D. Cal. 2024).)

Because statutory restatements or conclusory allegations invoking "in transit" and "real-time" buzzwords do not suffice, Plaintiffs' claim under Section 631(a)'s second clause must be dismissed. *See Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F.Supp.3d 1112, 1125-26 (C.D. Cal. 2024) (dismissing claim under second clause of Section 631 because "allegations merely restate the statutory language, which is insufficient under the plausibility standard"); *Hernandez-Silva v. Instructure, Inc.*, Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) (dismissing CIPA claim where plaintiff's allegations "fail[ed] to indicate *when* the

interception occurs") (emphasis in original) (internal quotation marks omitted).[7] Finally, because Plaintiffs fail to establish a predicate violation under clauses one and two, their derivative claims under the third and fourth clauses are precluded. (*See* Def. Mot., Dkt. 31 at 22.)

**b. Plaintiffs Cannot State a Claim Under Penal Code Section 632**

Under Section 632, a communication is confidential only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 776-77 (2002). This analysis depends on the context of the circumstances of the "actual conversation, not its content." *Id.* at 774. As set forth above, there is no blanket expectation of privacy in online activity. (*See* Section II(B)(2).) As Plaintiffs do not dispute that the alleged interception occurred through internet-services and devices Pls. Opp., Dkt. 40 at 14; Compl., Dkt. 1 at ¶¶ 25, 32, 39, 188), Plaintiffs lack an expectation of privacy here.

Plaintiffs' reliance on *Smith v. Rack Room Shoes, Inc.*, Case No. 24-cv-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025), is misplaced. In *Rack Room*, the alleged Meta Pixel collected a host of data corresponding "to the visitor's name, address, phone number, and email" and that linked to a website visitor's Facebook profile. 2025 WL 1085169, at *1. In other words, the contact information captured could be used to recognize a particular visitor with precision. *Id.* at *5. Samba's alleged recording of Plaintiffs' anonymized Samba IDs and IP addresses do not enable personal identification. Similarly, *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1212 (C.D. Cal. Mar. 2, 2017), also involved the alleged collection of "information [that] can readily identify a person…." Plaintiffs do not plausibly explain how Samba-generated Samba IDs and IP addresses conceivably enable personal identification. Plaintiffs' Complaint is replete with references to the alleged recording of their vaguely identified "other information." (*See, e.g.*, Compl., Dkt. 1 at ¶¶ 21, 28, 35, 47.) Plaintiffs do not hold an

---

[7] *See also Hammerling v. Google LLC*, 2022 WL 17365265, at *10 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (confirming that "in transit" requirement necessitates plausible allegations about "in real time" interception); *Valenzuela*, 674 F.Supp.3d at 758-59 (dismissing Section 631(a) "simultaneity" claim as conclusory); *Rodriguez v. Google LLC*, Case No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.").

expectation of privacy in this nebulously described data.[8]

**c. Plaintiffs' Trap and Trace Claims Fail**

Plaintiffs confirm that their trap and trace claim purportedly seeks to hold Samba liable for their alleged recording of both "identifying information" and the contents of their online-based communications. (Pls. Opp, Dkt. 40 at 15, 17.) But this contradicts the unambiguous statutory language of Section 638.50, which specifies that a "pen register" and "trap and trace device" record only "dialing, routing, addressing or signaling information" of a communication, "but not the contents of a communication." Cal. Penal Code Sections 638.50(b)-(c).

To the extent Plaintiffs' trap and trace claim rests on the purported collection of IP addresses and other unspecified "device identifiers," Plaintiffs' claim cannot stand because they have no expectation of privacy in that data. *See, e.g.*, *Mitchener v. CuriosityStream, Inc.*, Case No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) ("If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location."); *Kishnani v. Royal Carribean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) (same); *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1189 (N.D. Cal. 2020) (dismissing CIPA claim because "there is no legally protected privacy interest in IP addresses"); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). Moreover, Plaintiffs confirm that their trap and trace claim is predicated on the alleged intercept of their "household ID" and "SambaID." (Pls. Opp., Dkt. 40 at 15.) But Plaintiffs fail to address how these anonymous datapoints—generated by Samba—constitute "dialing, routing, addressing, or signaling information" or how Plaintiffs otherwise maintain an expectation of privacy in this data.

On the other side of the coin, to the extent Plaintiffs' trap and trace claim is predicated on

[8] *Brown v. Google LLC*, 685 F.Supp.3d 909, 936-39 (N.D. Cal. 2023), is also distinguishable. Unlike here, *Brown* addressed web browsing where plaintiffs used "Incognito mode," a special setting enabling individuals to "browse privately." The expectation of privacy found in *Brown* turned on plaintiff's alleged use of "Incognito model," and not general online activity. *See id.* While there are unique instances where particular online activity can give rise to a privacy intrusion (*e.g.,* browsing the internet using "private" or "incognito" mode, misappropriation of data from online data breach, collection and disclosure of personalized medical information), this isn't that case.

the alleged collection of the contents of Plaintiffs' communications, Plaintiffs plead their way out of a trap and trace claim. *See Mitchener*, 2025 WL 2272413, at *5 ("If Defendant instead collects content information from communication between the parties … then the TikTok software is not a trap and trace device and § 638.50 does not apply."); *Kishnani v. Royal Carribean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (same).

Further, Plaintiffs seek to shield the Court's eyes from CIPA's provisions in their entirety in an effort to expand the trap and trace statute's reach. (Pls. Opp., Dkt. 40 at 15-16.) But the trap and trace statute's provisions must be read in harmony with one another. *Ciganek v. Portfolio Recovery Associates, LLC*, 190 F.Supp.3d 908, 914 (N.D. Cal. 2016) ("the Court must read every statute with reference to the entire scheme of law which it is part so that the whole may be harmonized and retain effectiveness") (internal quotation marks and citation omitted); *Mejia v. Reed*, 31 Cal.4th 657, 663 (2003) When construing these provisions in harmony, it is clear that the trap and trace statute does not apply beyond telephone lines.[9] *See* Cal. Penal Code §§ 638.52(c), 638.52(d)(1), 638.52(d)(3), 638.54(b)(1).

CIPA's legislative history reinforces the limited nature of trap and trace claims. (*See, e.g.*, RJN, Dkt. 35-1 at 94 ("any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from *the telephone number*.") (emphasis added).) While Plaintiffs cherry-pick language from the California Senate Committee on Public Safety's Analysis regarding "th[e] age of rapidly changing technology" in support of expanding the trap and trace statute (Pls. Opp., Dkt. 40 at 16), the language immediately following that excerpted text confirms the statute is limited to telephone lines. (RJN, Dkt. 35-2 at 10

[9] Plaintiffs also ignore Samba's argument that, with the advent of certain new technologies, including since the ubiquity of the internet, the California Legislature has amended CIPA's provisions to account for such innovation. *See, e.g.*, Cal. Penal Code § 632.7 (addressing prevalence of cordless telephones); Cal. Penal Code § 632.01 ("A person who violates subdivision (a) of Section 631 shall be punished pursuant to subdivision (b), if the person intentionally discloses or distributes, in any manner, in any forum, *including, but not limited to, Internet Web sites and social media*….") (emphasis added). These amendments reveal that the California Legislature knew how to expand CIPA's reach to internet activity. It clearly elected not to do so with the trap and trace statute. *See Licea v. Cinmar, LLC*, 659 F.Supp.3d 1106, 1112 (C.D. Cal. 2023) ("[T]he inclusion of a broad definition of communication (which 'includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile') does not support Plaintiffs' conclusion that the Legislature meant to include new and emerging technologies, but rather that it meant to protect a broad range of information transmitted over telephone technology.").

(describing pen registers as "record[ing] all outgoing numbers *from a particular telephone line*" and trap and trace devices as "record[ing] what numbers *have called a specific telephone line*….") (emphasis added).)

Plaintiffs also ignore that, as revealed by both the trap and trace statute's legislative history and text, the statute was precipitated by and relies heavily on a federal analogue trap and trace law. (*See* RJN, Dkt 35-2 at 1-4 (referencing existing federal trap and trace law under 18 U.S.C. 3121, *et seq.*).) Notably, the definitions of "pen register" and "trap and trace device" under CIPA identically mirror those under its federal companion. *Compare* Cal. Penal Code § 638.60(b)-(c), *with* 18 U.S.C. 3127(3)-(4). And, notably, at the time the California Legislature plucked those definitions, trap and trace devices under federal law were exclusively tied to telephone lines. *See, e.g.*, *In re Application of U.S. for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*, 885 F.Supp. 197, 200 (C.D. Cal. 1995) ("it appears from the construction of related sections of the statutes governing trap and trace devices that they include only devices that are attached to a telephone line"). CIPA's trap and trace statute has no application here.

**4. <u>Plaintiffs Fail to Establish "Damage or Loss" Under CDAFA</u>**

While Plaintiffs nakedly allege they've suffered "damage and loss" under CDAFA by virtue of being deprived of control of, and the ability to be compensated for, their personal data (Compl., Dkt. 1 at ¶ 204), Plaintiffs abandon this theory in their Opposition. (*See* Pls. Opp., Dkt. 40 at 18-20.) Plaintiffs do not suggest they ever intended to sell their personal data but were deprived of the opportunity or otherwise financially harmed in doing so. (*See generally* Compl., Dkt. 1.) Plaintiffs cannot rely on the alleged generalized loss of control or value of their data to piece together their CDAFA claims. *Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1047-48 (dismissing CDAFA claim because, among other reasons, plaintiffs failed to plead "that they ever attempted or intended to participate in the market for that information [d]efendant disclosed or that they derived economic value from that information"); *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 487-88 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data … is 'damage or loss' within the meaning of the CDAFA.") Nor do

Plaintiffs explain how they have suffered an economic loss each time their data is allegedly collected and shared. As such, Plaintiffs fail to plausibly establish "damage or loss".

Plaintiffs are left attempting to prop up their CDAFA claim based on Samba's alleged monetization of their data. (Pls. Opp, Dkt. 40 at 18-19). However, Samba's supposed profit is insufficient to establish that Plaintiffs suffered a loss as contemplated under CDAFA. *Shah*, *supra*¸ 768 F.Supp.3d at 1048 (holding that plaintiffs could not establish "loss" under CDAFA based on "the profit Defendant made as a result of disclosing Plaintiffs' data"). Because "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on [a] computer, as opposed to data generated by a plaintiff" through internet engagement with a third-party, Plaintiffs' CDAFA should be dismissed. *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F.Supp.3d 1007, 1021 (C.D. Cal. 2023) (collecting cases); *Hernandez-Silva*, *supra*, 2025 WL 2233210, at *6; *Lineberry v. Addshopper, Inc.*, 2025 WL 551864, at *2-3 (N.D. Cal. Feb. 19, 2025)[10]; *Shah*, *supra*, 768 F.Supp.3d at 1048.

**5. <u>Plaintiffs' VPPA Claims Fail</u>**

**i. <u>Samba Is Not a "Video Tape Service Provider"</u>**

Plaintiffs concede that a "video tape service provider" must be "'engaged in the business' of 'deliver[ing] audiovisual material.'" (Pls. Opp., Dtk. 40 at 20.) But Samba is a software provider, and does not offer or deliver video content. (Compl., Dkt. 1 at ¶¶ 2, 62.) Accordingly, Samba is not a "video tape service provider" under VPPA. *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025) (affirming dismissal of VPPA claim for failing to plead that defendant was a "video tape service provider").

Contrary to Plaintiffs' arguments, VPPA cases involving movie theaters are instructive. Just as movie theaters do not "transfer" or "convey" a movie to patrons, Samba does not transfer or convey videos to users. *Osheske*, 132 F.4th 1110, 1113 (defendant was not a "video tape service provider" because "'rental, sale, or delivery' characterizes the exchange of a video product" not

[10] While Plaintiffs view *Lineberry* as inapposite because they have alleged the existence of a general market for website visitor data, *Lineberry* reinforces that Plaintiffs' lack of allegations about "how or why" they "suffer an economic loss every time their data is used and shared" and "whether [they] can still sell their data if [Defendants] already ha[ve] it" is fatal to their CDAFA claim. *Lineberry*, 2025 WL 551864, at *2.

"the provision of shared access to film screenings"); *Garza v. Alamo Intermediate II Holdings, LLC*, No. 23-CV-05849-VC, 2024 WL 1171737, at *1 (N.D. Cal. Mar. 19, 2024) (holding that defendant was not a video tape service provider because "movie theaters do not 'bring' movies to any person or place" sufficient to constitute "delivery").

Plaintiffs rely on several distinguishable cases that involve textbook delivery of audiovisual material to consumers, which is absent here. In *In re Vizio, Inc. Consumer Privacy Litigation,* 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017), the court found that Vizio was a "video tape service provider" because "Vizio's Internet Apps and Internet Apps Plus are designed to enable consumers to seamlessly access Netflix, Hulu, YouTube, and Amazon Instant Video content in their homes."[11] Similarly, in *Mata v. Zillow Group, Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024), the court found that Zillow's ability to display videos of for-sale properties on its website was "'significantly tailored' to its business purpose of facilitating retail transactions," as it made them a better platform than its competitors. 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024). Unlike in *Vizio* and *Zillow*, Plaintiffs do not allege that Samba displays or transmits video content. For this reason, alone, Plaintiffs' VPPA claim fails.

**ii. <u>Plaintiffs Are Not "Consumers"</u>**

Plaintiffs swing and miss in attempting to demonstrate that they are "subscribers" of Samba and, thus, Plaintiffs are not "consumers" under VPPA.[12] As set forth in Samba's Motion, in order to establish "subscriber" status, Plaintiffs must show a "commitment, relationship, or association" between themselves and Samba. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). "Factors that courts have considered in making this determination include: payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2024 WL 4149219, at

---

[11] *Cantu v. Tapestry, Inc.,* 697 F. Supp. 3d 989 (S.D. Cal. 2023), misconstrued the basis for *Vizio*'s holding. *Vizio* did not find that the defendant was a video tape service provider because of its "automatic content recognition software [used] to collect and report consumers' content viewing histories on Vizio's Smart TVs." *Cantu*, 697 F. Supp. 3d at 994. Rather, as set forth above, *Vizio*'s holding was based on the fact that "Vizio's Internet Apps and Internet Apps Plus are designed to enable consumers to seamlessly access Netflix, Hulu, YouTube, and Amazon Instant Video content in their homes." 238 F. Supp. 3d at 1222.

[12] Plaintiffs also fail to meet the definition of "consumer" because Samba is not a "video tape service provider." *See supra* at Section II(B)(5)(i); *Rodriguez v. JP Boden Servs. Inc.,* No. 23-CV-00534-L-VET, 2024 WL 559228, at *4 (S.D. Cal. Feb. 12, 2024).

*5 (S.D.N.Y. Sept. 11, 2024). Plaintiffs have not made this showing.

Because Plaintiffs do not claim to have purchased Samba's technology, set up an account with Samba, or registered with Samba, they do not constitute "subscribers."[13] *Carroll v. Chick-fil-A, Inc.*, No. 23-CV-00314-RFL, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024) (plaintiffs were not subscribers where they did not "provide[] Chick-fil-A with their information or payment, register[] for or created a profile on the app, commit[] to receiving future videos, or use[] the app to access any videos that were not freely available on Chick-fil-A's websites"); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) (plaintiffs were not subscribers where they "[did] not allege that they needed to provide their information or payment to access AARP's videos")

Plaintiffs erroneously rely on *Vizio* to argue that the bare purchase of their Smart TVs qualifies them as "subscribers." (Pls. Opp., Dkt. 40 at 22.) In *Vizio,* the plaintiffs alleged that they paid a premium for their Smart TVs for the internet applications which delivered video content, and that Vizio continued to provide services to plaintiffs by pushing software updates to them. 238 F. Supp. 3d at 1223. Here, Plaintiffs do not allege they paid a premium for the inclusion of Samba technology on their Smart TVs, or that they have a continuing, much less any, relationship with Samba. (Compl., Dkt. 1 at ¶¶ 14, 21, 28.) Absent that relationship, Plaintiffs' claim fails. *See Hernandez v. Chewy, Inc.,* No. 223CV05620HDVRAO, 2023 WL 9319236, at *4 (C.D. Cal. Dec. 13, 2023) (plaintiff was not a subscriber where she did not allege "an association with the defendant that is sufficiently substantial and ongoing"); *Rodriguez v. Delta T LLC*, No. 223CV03717HDVAGR, 2023 WL 9419152, at *5 (C.D. Cal. Dec. 12, 2023) (plaintiff alleged "no facts whatsoever to establish a 'substantial and ongoing' relationship with Defendant or its app, such as whether Plaintiff paid to download the app, how often she uses it, or what information she provided in order to download or use it").[14]

Plaintiffs also claim they are subscribers because "Samba obtained their PII and assigned

[13] Plaintiffs claim that they underwent a "registration process" in relation to their purchase of their respective Smart TVs. (Pls. Opp., Dkt. 40 at 22.) This reference to "registration" is absent from Plaintiffs' Complaint, and should therefore be disregarded. *In re Turbodyne Techs., Inc. Sec. Litig.*, No. CV9900697MMMBQRX, 2000 WL 33961193, at *10 (C.D. Cal. Mar. 15, 2000).

[14] *Cf. Hunthausen v. Spine Media, LLC,* 678 F. Supp. 3d 1228, 1233 (S.D. Cal. 2023) ("Similarly, just because a video tape service provider indirectly receives a monetary benefit by virtue of a person's direct payments to a cable television provider does not make that person a "consumer" under the VPPA.").

them unique identifiers." (Pls. Opp., Dkt. 40 at 22.) Again, the cases on which Plaintiffs rely do not support their stretched interpretation of a "subscriber." (*Id.* (citing to *In re Hulu Privacy Litigation* No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012); *Lee v. Springer Nature America, Inc.,*769 F.Supp.3d 234, 254 (S.D.N.Y. 2025)).) In *Hulu* and *Lee*, the plaintiffs affirmatively provided their personal information to the defendants in the context of creating a profile or account. *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *7; *Lee v. Springer Nature Am., Inc.*, 769 F.Supp.3d at 254. Plaintiffs have not alleged they took similar steps to establish a continuing relationship with Samba. Rather, Plaintiffs suggest they were apparently entirely unaware of Samba's presence in their Smart TVs. (*See, e.g.*, Compl., Dkt. 40 at ¶¶ 2, 10, 106.) Accordingly, Plaintiffs do not constitute "subscribers" under VPPA.

**iii. <u>The Data at Issue is not PII</u>**

Finally, because Plaintiffs fail to establish that their PII was implicated, Plaintiffs strike out on their VPPA claim. The data that Plaintiffs allege Samba captured would not "readily permit *an ordinary person* to identify a [particular individual as having watched certain videos]," and therefore does not constitute PII under VPPA. *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 985 (9th Cir. 2017) (alterations in original). Plaintiffs do not credibly argue that an "ordinary person" could use the "identity graphs" Samba allegedly generated to identify them. This makes sense, as Plaintiffs' IP addresses, anonymous device identifiers, and Samba IDs are untethered from and do not reveal their names, addresses, emails, phone numbers, and the like that an ordinary person would use to identify an individual. Under these circumstances, no PII is exchanged.

*Eichenberger* does not run counter to Samba's position that PII is lacking here. The device serial number and names of video content that the *Eichenberger* Court found insufficient to enable an "ordinary person" to identify an individual closely resemble the "video viewing information," "IP address," and "Samba ID" at issue here. (*Compare Eichenberger*, 876 F.3d at 986, *with* Compl., Dkt. 40 at ¶ 214.) While *Eichenberger* muses that an email address or an individual's name and birthday may qualify under the "ordinary person" standard, none of this specific, identity-revealing data is at issue here. The cases that Plaintiffs cite, which predate *Eichenberger* and do not apply the "ordinary person" test, do not alter this conclusion. (Pls. Opp., Dkt. 40 at 23

(citing *Vizio,* 238 F. Supp. 3d at 1225; *In re Hulu Priv. Litig.,* No. C 11-03764 LB, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014)).)

**6. Plaintiffs' Equitable Relief Claims Fail**

At bottom, Plaintiffs' equitable claims rise and fall on Plaintiffs proving an actionable wrong, namely an invasion of privacy. As set forth above, because the alleged collection of anonymized data here does not support the existence of such claims (Sections II(B)(2)-(5), Plaintiffs' unjust enrichment and injunctive relief claim fails. To support their equitable claims, Plaintiffs invoke several cases that, unlike here, implicated the interception and sharing of personally identifiable, invasive personal information that gave rise to alleged privacy violations. (*See* Pls Opp., Dkt. 40 at 24 (citing to *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *16 (N.D. Cal. July 22, 2025) (alleged unlawful interception of "sensitive health data"); *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1008 (N.D. Cal. 2024) (involving alleged use of confidential tax and financial information"); *In re Google Location History Litig.*, 514 F.Supp.3d 1147, 1151-52 (N.D. Cal. 2021) (involving specific user location and movement data. Absent any privacy violations here, equitable relief is unwarranted.

## III. CONCLUSION

For the foregoing reasons, and those set forth in Samba's moving papers, Samba respectfully requests that the Court dismiss this action in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: September 12, 2025

COZEN O'CONNOR

By: */s/ Matthew E. Lewitz*
Matthew E. Lewitz
Brett N. Taylor
Gianna Puccinelli
Attorneys for Defendant
Samba TV, Inc.