Matthew E. Lewitz (SBN: 325379)
Email: mlewitz@cozen.com
Brett N. Taylor (SBN: 274400)
btaylor@cozen.com
Gianna Puccinelli (SBN: 311313)
gpuccinelli@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394-4700

Attorneys for Defendant
Samba TV, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE DELLASALLA, BOB WARDEN, VINCE TOPHONEY, DAVID GOODRICH, KENNETH HARRIS, DUANE LEDWARD, DEREK SCHUETTE, and DEREK SCHUETTE, as guardian of K.S., a minor, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMBA TV, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03470-JSC<br><br>**DEFENDANT SAMBA TV, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 19, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. Jacqueline Scott Corley<br><br>Complaint Filed: April 18, 2025<br>SAC Filed: December 4, 2025<br><br>[Served and Filed Concurrently with Request for Judicial Notice and [Proposed] Order] |

1

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 11

I.      INTRODUCTION.................................................................................................... 11

II.     RELEVANT FACTUAL BACKGROUND ............................................................. 13

III.    ARGUMENT ........................................................................................................... 13

        A.    Applicable Legal Standard .......................................................................... 13

        B.    Plaintiffs Lack Article III Standing Because They Have No Injury in Fact ........... 14

        C.    Plaintiffs Have No Actionable Claims Against Samba............................................ 17

              1.    Plaintiffs' Common Law Claims Untethered to Any State's Law Must Be Dismissed ................................................................................ 17

              2.    The Complaint Fails to State a Common Law Claim for Intrusion Upon Seclusion or a Constitutional Claim for Invasion of Privacy ...................... 17

                    a.    Plaintiffs Had No Reasonable Expectation of Privacy in the Alleged Information at Issue.......................................................... 18

                    b.    Samba's Alleged Conduct was Not "Highly Offensive" ............... 20

              3.    Plaintiffs Fail to Adequately Plead Their CIPA Claims ........................... 22

                    a.    Plaintiffs Fail to State a Claim Under Penal Code Section 631 ...... 22

                    b.    Plaintiffs Fail to State a Claim Under Penal Code Section 632 ...... 24

                    c.    Plaintiffs Fail to State a Trap and Trace Claim Under Penal Code Section 638.50 and 638.51 ............................................................ 25

              4.    The Complaint Fails to State a CDAFA Claim.......................................... 26

              5.    Plaintiffs Fail to State a Federal Wiretap Act Claim................................. 28

              6.    Plaintiffs Fail to State a Claim Under the UCL ........................................ 30

                    a.    Plaintiffs Lack Statutory Standing to Support Their UCL Claim ... 30

                    b.    Plaintiffs UCL Claim Fails Under the Unlawful and Unfair Prongs ...................................................................................................... 31

                          i.    Plaintiffs Cannot Establish Unlawful Conduct ............................. 31

DEFENDANT SAMBA TV, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO.: 3:25-CV-03470

ii. Plaintiffs Cannot Establish Unfair Conduct ................................... 33

7. Plaintiffs Equitable Relief Claims Fail......................................................... 33

IV. CONCLUSION ........................................................................................................ 35

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Processor Litig.*,
No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) .................................................... 35

*In re Application of U.S. for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*
(C.D. Cal. 1995) 885 F.Supp. 197................................................................................................ 26

*Argueta v. J.P. Morgan Chase*,
787 F. Supp. 2d 1099 (E.D. Cal. 2011)................................................................................ 32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 14

*Basile v. LA Film Sch., LLC*,
No. 19-56293, 827 Fed.App'x 649 (9th Cir. 2020)............................................................. 14

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007)............................................................................................ 14

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021)............................................................................... 33

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) .............................................................................. 32

*Bibiano v. Lynch*,
834 F.3d 966 (9th Cir. 2016)............................................................................................ 13

*Brewer v. Superior Ct. of California, Cty. of Los Angeles*,
Case No. 2:25-04362-TJH (ADS), 2025 WL 3070482 (C.D. Cal. Sept. 29, 2025)............................................................................................................................ 34

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600-JSC, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025).............................. 24

*Doe v. Cty. of Santa Clara*,
No. 23-CV-04411-WHO, 2024 WL 3346257 (N.D. Cal. July 8, 2024) ................................ 27

*Doe v. Eating Recovery Center LLC*,
Case No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025).......................... 22

*Doe v. Talkiatry Mgmt. Servs., LLC*,
Case No. 5:25-cv-00781-SSS-DTBx, 2025 WL 3190813 (C.D. Cal. Oct. 1, 2025)............................................................................................................................ 29

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024)............................................................................... 20

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................................................... 30

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) ......................................................................................... 27

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)............................................................................................... 21, 28

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)................................................................................................................ 24

*Goddard v. Slickdeals, LLC*,
2025 WL 2969722 (N.D. Cal. Oct. 21, 2025).............................................................................. 33

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................................ 20, 21, 24

*In re Google, Inc. Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .............................................................................. 32

*Graham v. Noom, Inc.*,
533 F.Supp.3d 823 (N.D. Cal. 2021) ......................................................................................... 23

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
250 F. Supp. 3d 438 (N.D. Cal. 2017) ....................................................................................... 33

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100 (N.D. Cal. 2013) ...................................................................................... 14

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ............................................................................. 27

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (Bybee, J., concurring)........................................................... 23

*Hahn v. Select Portfolio Servicing, Inc.*,
424 F. Supp. 3d 614 (N.D. Cal. 2020) ................................................................................. 30, 31

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933074 (N.D. Cal. June 9, 2023)................................... 28

*Heeger v. Facebook, Inc.*,
No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ................................. 18

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023)..................................................................... 23, 27, 28

5

*Hernandez-Silva v. Infrastructure, Inc.*,
   Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4,
   2025)..............................................................................................................................27

*HomeLight, Inc. v. Shkipin*,
   721 F.Supp.3d 1019 (N.D. Cal. Mar. 5, 2024)..............................................................33

*Hubbard v. Google LLC*,
   No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024)
   ..........................................................................................................20, 21, 34, 35

*I.C. v. Zynga, Inc.*,
   600 F.Supp.3d 1034 (N.D. Cal. 2022) .............................................................................20

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................................21

*Khamooshi v. Politico LLC*,
   Case No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. October 2, 2025) ........................16

*King v. Hard Rock Café Int'l (USA), Inc.*,
   2025 WL 1635419 (E.D. Cal. June 9, 2025)............................................................. 19, 24

*Kishnani v. Royal Carribean Cruises Ltd.*,
   Case No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ...........................26

*L.B. v. LinkedIn Corp.*,
   No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ...........................24

*Lair v. Bank of Am., N.A.*,
   No. 23-cv-01345-WLH, 2024 WL 943945 (C.D. Cal. Jan. 26, 2024)...................................34

*Lakes v. Ubisoft*,
   777 F.Supp.3d 1047 (N.D. Cal. 2025) .............................................................................29

*Libman v. Apple, Inc.*,
   No. 22-CV-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .........................30, 31

*Lineberry v. AddShopper, Inc.*,
   Case No. 23-cv-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025)...........................27

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..........................................................................18

*Mastel v. Miniclip SA*,
   549 F.Supp.3d 1129 (E.D. Cal. 2021) .............................................................................23

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ................................................................................ 17

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019) ................................................ 18

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................. 24

*Mitchener v. CuriosityStream, Inc.*,
  Case No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........................... 26

*Morilha v. Alphabet Inc.*,
  Case No. 24-cv-02793-JST, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ..................... 16, 21

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ........................................................................ 14

*Pac. Shores Hos. v. EMCOR Group Inc.*,
  No. CV-10-07480, 2011 13217541 (E.D. Cal. Feb. 4, 2011) ................................. 14

*Pena v. GameStop, Inc.*,
  670 F. Supp. 3d 1112 (S.D. Cal. 2023) ................................................. 29

*Perez v. Romantix Online, Inc.*,
  Case No. 25-cv-02465-NW, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ............... 30, 31, 34

*Peter Dawidzik v. Tesla, Inc.*,
  Case No. EDCV 25-01982-KK-SPx, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ................ 19, 20, 21

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. Aug. 26, 2025) ........................................... *passim*

*Posadas v. Goodyear Tire & Rubber Co.*,
  No. 23-CV-0402-L-DDL, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ..................... 18, 20

*Price v. Converse, Inc.*,
  Case No. 2:24-cv-080891-FLA (Ex), 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ............ 16

*Pruchnicki v. Envision Healthcare Corp.*,
  No. 20-15460, 845 Fed. App'x 613 (9th Cir. 2021) ..................................... 27

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................. 28

7

*Rodriguez v. Brushfire Records*,
  Case No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15,
  2025)......................................................................................................................... 15, 19

*Rodriguez v. Culligan Int'l Co.*,
  Case No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)...... 15, 19, 20

*Roe v. Amgen Inc.*,
  Case No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5,
  2024).............................................................................................................................. 29

*Romero v. Flowers Bakeries, LLC*,
  Case No. 14-cv-05189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016)...................................... 17

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  Case No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ................ 29

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)......................................................................................... 13

*Shah v. Capital One Fin. Corp.*,
  768 F.Supp.3d 1033 (N.D. Cal. Mar. 3, 2025).................................................................. 27

*Smith v. Maryland*,
  442 U.S. 735...................................................................................................................... 25

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .......................................................................................................... 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................................... 17

*Tavernetti v. Superior Court*,
  22 Cal.3d 187 (1978)......................................................................................................... 22

*Thomas v. Papa Johns Int'l, Inc.*,
  No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024),
  *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025)................................................................ 18

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 ...................................................................................................................... 14

*United States v. New York Tel. Co.*,
  434 U.S. 159 (1977) .......................................................................................................... 25

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F.Supp.3d 751 (N.D. Cal. 2023) ................................................................................. 23

*Wendover Productions, LLC v. PayPal Inc.*,
  2025 WL 3251667 (N.D. Cal. Nov. 21, 2025)................................................................... 34

8

*Williams v. Facebook*,
384 F.Supp.3d 1043 (N.D. Cal. 2018) ........................................................................... 27

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ........................................................................................ 19

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ................................................................................ 23, 28

**Statutes**

15 U.S.C. § 6502(a)(1) ............................................................................................. 32, 33

18 U.S.C. § 2511(2)(d) .................................................................................................... 28

18 U.S.C. § 3121, *et seq.* ............................................................................................... 26

18 U.S.C. § 3127(3)-(4) .................................................................................................. 26

Cal. Bus. & Prof. Code § 17200 ............................................................................... 17, 31

Cal. Civ. Code § 1798.120(c) .......................................................................................... 32

Cal. Civ. Code § 1798.150 .............................................................................................. 32

Cal. Penal Code § 502(e)(1) ............................................................................................ 27

Cal. Penal Code § 631 ............................................................................................... 17, 22

Cal. Penal Code § 631(a) .......................................................................... 22, 23, 24, 28

Cal. Penal Code § 632 ......................................................................................... 17, 22, 24

Cal. Penal Code § 632(a) ................................................................................................. 24

Cal. Penal Code § 638 ..................................................................................................... 22

Cal. Penal Code §§ 638.32(c) ......................................................................................... 25

Cal. Penal Code §§ 638.50 and 638.51 ................................................................ 17, 25, 26

Cal. Penal Code §§ 638.50(b)-(c) ................................................................................... 26

California Consumer Privacy Act ..................................................................................... 31

CDAFA ...................................................................................................................*passim*

COPPA .................................................................................................................. 31, 32, 33

Electronic Communications Privacy Act of 1986 ........................................................... 28

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

Federal Wiretap Act ........................................................................................ 12, 17, 28

**Other Authorities**

2015-2016 Regular Session (June 16, 2015) .................................................. 25

California Assembly Bill 929 .......................................................................... 25

California Constitution .............................................................................. 17, 20

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 13

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 13

**TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026, at 10:00 a.m. or as soon thereafter as the matter may be heard, in the above-entitled Court located at 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, Defendant Samba TV, Inc. ("Samba") will move, and hereby does move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing the Second Amended Complaint ("SAC") of Plaintiffs Steve DellaSalla, Bob Warden, Vince Tophoney, David Goodrich, Kenneth Harris, Duane Ledward, Derek Schuette, and Derek Schuette as guardian of K.S. (collectively, "Plaintiffs") in its entirety without leave to amend. This motion is made on the ground that Plaintiffs fail to allege the necessary facts to establish that they suffered an injury in fact to confer them with Article III standing. Accordingly, this Court lacks subject matter jurisdiction. This motion is also made on the ground that Plaintiffs fail to state any plausible claims for relief.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all pleadings and papers on file, and such other further matters and argument as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' SAC suffers from the same fundamental flaws that plagued its initial pleading, and more. Plaintiffs' second "bite at the apple" doubles-down on provocative buzzwords and intensified invective against Samba for its alleged collection of unremarkable data points and Plaintiffs' video viewing habits. Neither Plaintiffs' heightened rhetoric, nor their supplemental factual allegations, nor their newly-added claims move the needle.

As a threshold matter, the SAC—like its predecessor—fails to establish that Plaintiffs have suffered an injury in fact sufficient to demonstrate Article III standing. The Ninth Circuit's decision in *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. Aug. 26, 2025), and its recent progeny reject broad-based theories of "free-roaming privacy rights" absent allegations of concrete harm. The routine collection of IP addresses, device identifiers, and other device markers—the conduct alleged here, does not amount to a concrete and redressable privacy injury.

11

The fact that Plaintiffs have now identified several of these identifiers by name, the alleged collection of which does not give rise to a highly offensive invasion of privacy, does not meaningfully change the calculus. Because Plaintiffs have not established an injury in fact to confer them with standing, the SAC should be dismissed.

Moreover, Plaintiffs' renewed statutory and common law claims are ripe for dismissal. Out of the gate, Plaintiffs' common law claims fail because Plaintiffs do not allege under which states' laws they intend to assert those claims. Given the extensive variance among state law, Plaintiffs' failure to allege which states' laws govern supports dismissal of their intrusion upon seclusion, unjust enrichment, and injunctive relief claims.[1]

Beyond this foot fault, Plaintiffs' common law and constitutional invasion of privacy claims fail, once again, because Plaintiffs do not maintain a reasonable expectation of privacy in their IP addresses and enumerated device identifiers, the alleged recording and disclosure of which do not rise to the level of a highly offensive intrusion. Plaintiffs' claims under the maligned California Invasion of Privacy Act ("CIPA") fail because Samba did not intercept any communications while "in transit" or monitor any confidential communications, and because Plaintiffs do not otherwise plead the necessary elements for such claims. Plaintiffs' claim under the Comprehensive Computer Data Access and Fraud Act ("CDAFA") fails because Plaintiffs have not suffered harm as contemplated under the statute. Plaintiffs' equitable relief claims do not give rise to independent causes of action and fail given available adequate remedies at law. Plaintiffs' newfound claims under the Federal Wiretap Act and California's Unfair Competition Law ("UCL") fare no better. As a party to all of the alleged communications at issue, Samba is exempt from liability under the Federal Wiretap Act. Finally, Plaintiffs fail to allege the requisite injury to establish statutory standing under the UCL, and do not assert plausible allegations that Samba has engaged in unlawful or unfair conduct to trigger the UCL. For the foregoing reasons, set forth in further detail below, Plaintiffs' SAC should be dismissed in its entirety with prejudice.

---

[1] The material divergence among state law with respect to Plaintiffs' alleged common law claims is discussed in detail in Samba's concurrently filed Motion to Strike.

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

## II.    RELEVANT FACTUAL BACKGROUND

Samba is a television technology company whose proprietary Automatic Content Recognition ("ACR") software is utilized in Sony Smart TVs.  (SAC ¶¶ 2, 98.)  The ACR software and Samba's corresponding "Identity Graph" compile and process video viewing activity in connection with the applicable Sony Smart TV, only after the television's owner enables the software and consents.  (SAC ¶¶ 95, 98, 167.)  To facilitate this process, the Samba technology assigns each Smart TV device a unique identifier known as a "Samba ID" to compile and process viewer activity.  (SAC ¶¶ 5-6.)

Plaintiffs allege that they each own Sony Smart TVs that contain Samba's ACR software.  (SAC ¶¶ 13-14, 21-22, 29-30, 37-38, 45-46, 53-54, 61-62, 69-70.)  Plaintiffs contend that, at some unspecified time, they watched/streamed video content on their respective televisions.  (*Id.*)  According to Plaintiffs, the ACR Software captured their IP addresses and "unique identifiers" including their GUID, Android ID/UUID, AAID, Session ID, SDADID, SMID, and their Samba-generated SambaID, to identify their viewing habits.  (SAC ¶¶ 14-15, 22-23, 30-31, 38-39, 46-47, 54-55, 62-63, 70-71.)  Once again, Plaintiffs do not allege that the ACR Software captured any sensitive, personal information.  (*See generally*, Compl.)  Plaintiffs contend that Samba has unlawfully tracked their video viewing activity across "internet-enabled" devices without their consent to use for Samba's and third-party advertisers' commercial purposes.  (SAC ¶¶ 18-19, 26-27, 34-35, 42-43, 50-51, 58-59, 66-67, 74-75.)

## III.    ARGUMENT

### A.    Applicable Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires the Court to assess subject matter jurisdiction "before moving on to other, non-merits threshold issues."  *Bibiano v. Lynch*, 834 F.3d 966, 971 n.4 (9th Cir. 2016).  A jurisdictional attack "may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  On a facial attack, a defendant contends that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*

13

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint and scrutinizes whether a plaintiff adequately states a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a court generally must deem a complaint's allegations as true and draw all reasonable inferences in plaintiff's favor, "pleadings that contain 'no more than conclusions are not entitled to the assumption of truth.'" *Basile v. LA Film Sch., LLC*, No. 19-56293, 827 Fed.App'x 649, 652 (9th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679).  This plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, "[f]actual allegations must be enough to 'raise a right to relief above the speculative level.'" *Pac. Shores Hos. v. EMCOR Group Inc.,* No. CV-10-07480, 2011 13217541, at *1 (E.D. Cal. Feb. 4, 2011) (quoting *Twombly*, 550 U.S. at 555).  "[A] court may take judicial notice of documents referenced in the complaint, as well as matters in the public record" in deciding a motion to dismiss.  *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).

## B.     Plaintiffs Lack Article III Standing Because They Have No Injury in Fact

"[S]tanding is a threshold matter central to subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see also Murthy v. Missouri*, 603 U.S. 43, 56 (2024).  Standing requires that Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).  To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 ("*TransUnion*") (internal quotation marks and citation omitted).

In *TransUnion*, the Supreme Court clarified that a plaintiff must demonstrate "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Id.* at

430-31.  In the privacy context, the Ninth Circuit recently recognized that courts "should assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury.'"  *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. Aug. 26, 2025) ("*Popa*") (citing *Trans Union*, 594 U.S. at 424).

*Popa* included allegations that the session-replay technology "organizes the information it captures into over 30 different categories including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Id.* at 786.  The plaintiff in *Popa* further alleged that the user's mailing address with the street number and zip code omitted was collected, as well as the pet supplies products in which the user was interested.  *Id.* at 786-787.  Nonetheless, the Ninth Circuit found that the plaintiff did not explain how the tracking of her interactions with a pet supplies website "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791.

Similarly, here, Plaintiffs' SAC does not contain any facts plausibly supporting a common law privacy violation. (*See infra* Section III(C)(1).)  Plaintiffs allege that Samba collected personally identifiable information such as IP addresses, device identifiers (including GUID, Android ID/UUID, AAID, SessionID, SDADID, and SMID)[2], and email addresses.  (*See* SAC ¶¶ 195, 198).  However, this type of alleged "personal information" is routinely found insufficient to support standing.  *See Rodriguez v. Brushfire Records*, Case No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) ("Defendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website 'does not cause the kind of harm that be vindicated in federal court.") (quoting *Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-

---

[2] Plaintiffs allege the GUID is a unique long-term identifier for that specific TV; the Android ID/UUID is a unique device identifier set by Android; AAID is a device's Android Advertising ID (an additional unique identifier for the TV that is set by Android specifically for advertising); the SessionID are TV sessions; the SDADID is the Samba Advertising ID; and SMID is a Samba Measurement ID.  (SAC ¶¶ 112-114.)

VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025)); *Rodriguez v. Culligan Int'l Co.*, Case No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4-5 (S.D. Cal. Nov. 3, 2025) (dismissing trap and trace claim because plaintiff lacked a privacy interest in IP address, device identifiers, and related metadata and, thus, lacked standing); *Khamooshi v. Politico LLC*, Case No. 24-cv-07836-SK, 2025 WL 2822879, at *2-4 (N.D. Cal. October 2, 2025) (where the operative complaint alleged disclosure of IP addresses, browser and device data, "other identifying information", browsing activity, geolocation data, device type, browser type, and "device fingerprints", the Court found: "[a]bsent specific allegations about the type of browsing and geolocation information disclosed, these categories of information are insufficient to support a concrete privacy injury"); *Price v. Converse, Inc.*, Case No. 2:24-cv-080891-FLA (Ex), 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025) (allegations about "gather[ing] data including device and browser information, geographic information, and referral tracking … to fingerprint the data and deanonymize Plaintiff" were "insufficient to establish a 'concrete injury' to establish standing).

Further, Plaintiffs' assertion that Samba could conceivably disclose the allegedly collected data at issue (SAC ¶¶ 177-78), "is too speculative to satisfy the injury-in-fact requirement." *Morilha v. Alphabet Inc.*, Case No. 24-cv-02793-JST, 2024 WL 5205542, at *2 (N.D. Cal. Dec. 23, 2024) (finding allegations that "Google *may* have disclosed private information [a]s too speculative to satisfy the injury-in-fact requirement") (emphasis in original) (citing to *TransUnion*, 594 U.S. 413, 433-39 (2021)). The SAC does not allege disclosure of information that could support a concrete privacy injury. Consequently, Plaintiffs have no injury in fact, and therefore, have no standing.[3]

---

[3] Plaintiffs' allegations concerning Samba's purported receipt of "other identifying information" allegedly received from unspecified third-party "advertisers and partners" is of no moment. (*See* SAC ¶¶ 14, 22, 30, 38, 46, 54, 62, 70.) Plaintiffs' vague and imprecise allegations do not reveal the identities of these supposed advertisers and partners or when or how this "identifying information" was allegedly furnished to Samba. (*See id.*) Crucially, it is unclear whether Plaintiffs independently consented to the collection and disclosure of this "identifying information" vis-à-vis the unnamed third-parties who apparently possessed and distributed it to Samba. To compound matters, for the reasons set forth herein, the collection of the sparse "identifying information" that is described (i.e., hashed email addresses, mobile advertising IDs, and additional IP addresses) does not give rise to a highly offensive privacy intrusion to confer Plaintiffs with standing.

**C.**     **Plaintiffs Have No Actionable Claims Against Samba**

Plaintiffs' Complaint asserts ten causes of action against Samba for (i) intrusion upon seclusion; (ii) invasion of privacy under the California Constitution; (iii) CIPA violations under Cal. Penal Code § 631; (iv) CIPA violations under Cal. Penal Code § 632; (v) CIPA violations under Cal. Penal Code §§ 638.50 and 638.51; (vi) violation of CDAFA; (vii) violation of the Federal Wiretap Act under 18 U.S.C. § 2510, *et seq.*; (viii) violation of the California Unfair Competition Law under Cal. Business & Professions Code § 17200, *et seq.*; (ix) unjust enrichment; and (x) injunctive relief.  Plaintiffs failed to remedy the defects that plagued their pre-existing claims, and their novel claims are equally defective. As such, each claim should be dismissed.

**1.**     **Plaintiffs' Common Law Claims Untethered to Any State's Law Must Be Dismissed**

Plaintiffs seek to represent a nationwide class in connection with their alleged common law claims for intrusion upon seclusion, unjust enrichment, and injunctive relief.  (SAC ¶¶ 193-205, 185, 295-304.)  However, Plaintiffs' SAC does not specify which state's laws should apply to these claims.  "[C]ourts in this district have held that, due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal."  *Romero v. Flowers Bakeries, LLC*, Case No. 14-cv-05189, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("the elements necessary to establish a claim for unjust enrichment [] vary materially from state to state."), *overruled in part on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008).  For this reason alone, Plaintiffs' common law claims should be dismissed.

**2.**     **The Complaint Fails to State a Common Law Claim for Intrusion Upon Seclusion or a Constitutional Claim for Invasion of Privacy**

Plaintiffs assert companion claims for intrusion upon seclusion and purported privacy

violations under the California Constitution. (SAC ¶¶ 193-218.)  Plaintiffs' SAC fails to allege that Plaintiffs maintained a reasonable expectation of privacy in their IP addresses and device identifiers to establish invasion of privacy claims.

To state an intrusion upon seclusion claim, a plaintiff must allege "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019).  To allege a violation of California's constitutional right to privacy, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citation omitted). When brought together, "it is appropriate to assess the two claims together and examine 'the[ir] largely parallel elements' which call on the Court to consider '(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests.'" *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1031-37 (N.D. Cal. 2019).  "A plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved." *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (cleaned up).

### a.    Plaintiffs Had No Reasonable Expectation of Privacy in the Alleged Information at Issue

A reasonable expectation of privacy depends on whether a "defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402-L-DDL, 2024 WL 5114133, at *6 (S.D. Cal. Dec. 13, 2024). "This question depends on 'a variety of factors, including the customs, practices, and circumstances surrounding defendant's particular activities.'" *Id.* (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020)).  As relevant here, "[g]iven the inherent nature of the internet, a number of courts have found that consumers do not

have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) ("internet communications do not have an objectively reasonable expectation of confidentiality").

Against this framework, Plaintiffs allege that Samba purportedly intercepted their IP addresses, unique device identifiers, and "other identifying information." (SAC ¶¶ 14-15, 22-23, 30-31, 38-39, 46-47, 54-55, 62-63, 70-71, 112-18.) While Plaintiffs' SAC attempts to put more "meat on the bone" by identifying certain purportedly collected device identifiers by name, these allegations do not help them establish colorable claims. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.").

Once again, because Plaintiffs do not maintain a reasonable expectation of privacy in technical information like IP addresses and device and advertising IDs, Plaintiffs' intrusion upon seclusion and constitutional privacy claims fail. *Popa*, *supra*, 153 F.4th at 786 (finding that "over 30 different categories" of information were not "otherwise private," including fingerprinting details like "the device the user accessed the website on, the type of browser the user accessed the website on, [and] the operating system of the device used to access the website"); *Peter Dawidzik v. Tesla, Inc.*, Case No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (holding no reasonable expectation of privacy in IP addresses, browser and device type, and unique identifiers); *Brushfire Records*, *supra*, 2025 WL 3692144, at *7 ("Defendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website does not cause the kind of harm that can be vindicated in federal court.") (internal quotation marks and citation omitted); *Culligan Int'l Co.*, *supra*, 2025 WL 3064113, at *4-5 (holding no expectation of privacy in IP address, operating system version number, operating system name, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media entities, and customer and/or loyalty IDs). As before, Plaintiffs' claims should be dismissed to the extent they are

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

premised on a theory of injury based on the purported collection of IP addresses or user/device identifiers. (*Compare* Compl., Dkt. No. 1 at ¶¶ 14, 18, 21, 25, 28, 32, 35, 39, *with* SAC ¶¶ 14-15, 22-23, 30-31, 38-39, 46-47, 54-55, 62-63, 70-71.)

Further, to the extent Plaintiffs contend their contact information was collected (SAC ¶ 14, 22, 30, 38, 46, 54, 62, 70, 99), they lack an expectation of privacy in such information. *Culligan Int'l Co., supra*, 2025 WL 3064113, at *5 ("[C]ourts have rejected the idea that an internet user's contact information that is designed to be exchanged to facilitate communication—such as their email address or webpage username-constitutes private information.") (internal quotation marks and citation omitted); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1049 (N.D. Cal. 2022) (collection of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" did not establish intrusion upon seclusion). Similarly, the alleged interception of Samba-created identifiers (SAC ¶¶ 181, 201), does not give rise to a privacy violation. And any suggestion that Plaintiffs' privacy rights have been invaded by the purported collection of their television's volume percentage, width and height, and other unremarkable characteristics (SAC ¶¶ 105), strains credulity.

In sum, Samba is not alleged to have collected any sensitive data in which Plaintiffs held a reasonable expectation of privacy. *See, e.g*, *Posadas*, *supra*, 2024 WL 5114133, at *7 (dismissing intrusion upon seclusion claim where pleading "contain[ed] no factual allegations that Plaintiff disclosed intimate or sensitive personally identifiable information the capture and use of which can be considered 'highly offensive'") (citation omitted); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024) (dismissing invasion of privacy claim because plaintiff did not allege facts suggesting defendant collected intimate or sensitive personally identifiable information); *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*.") (emphasis in original).

**b.    Samba's Alleged Conduct was Not "Highly Offensive"**

To compound matters, "'[t]he California Constitution and the common law set a high bar'

for an intrusion to be actionable." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (citation omitted); *Dawidzik*, *supra*, 2025 WL 3786963, at *5. "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.*

The alleged collection of Plaintiffs' IP addresses, device/advertising IDs, SambaID (that is not personally sensitive, but is naturally generated by Samba), and "other identifying information" (SAC ¶¶ 14-15, 22-23, 30-31, 38-39, 46-47, 54-55, 62-63, 70-71), is not a "highly offensive invasion of privacy" or an afront to modern social norms. *Popa*, 153 F.4th at 791 ("Popa does not explain how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."); *Dawidzik*, *supra*, 2025 WL 3786963, at *5 (disclosure of IP addresses, browser and device type, and unique identifiers was not "highly offensive"); *Morilha*, *supra*, 2024 WL 5205542, at *4 (dismissing invasion of privacy claim because "disclosure of IP addresses and geolocation data is not sufficiently 'egregious' to support an invasion of privacy claim") (citation omitted).

Indeed, "[m]any courts have found that the collection—and even disclosure to certain third parties—of personal information about the user's use of a technology may not constitute a sufficiently "egregious breach of social norms" to make out a common law or constitutional privacy claim." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 830. "'[D]ata collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy.'" *Hubbard*, *supra*, 2024 WL 3302066, at *7; *see also*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even assuming [unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices] w[ere]

transmitted without Plaintiffs' knowledge and consent … such disclosure does not constitute an egregious breach of social norms."). In sum, Plaintiffs have not cured their pleading defect identified by the Court, namely "Plaintiffs have not plausibly alleged a highly offensive violation of a privacy interest." (10/30/25 Order, Dkt. No. 49 at 8.)

### 3. Plaintiffs Fail to Adequately Plead Their CIPA Claims

"The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies." *Doe v. Eating Recovery Center LLC*, Case No. 23-cv-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Through this prism, Plaintiffs assert four CIPA claims for (i) alleged "wiretapping" and "aiding and abetting" under Cal. Penal Code § 631; (ii) alleged "eavesdropping" under Cal. Penal Code § 632; and (iii) alleged misuse of a "pen register" or "trap and trace device" under Cal. Penal Code § 638. The SAC fails to establish the requisite elements for each cause of action.[4]

### a. Plaintiffs Fail to State a Claim Under Penal Code Section 631

Plaintiffs seek to hold Samba liable under all four clauses of Section 631(a). (SAC ¶¶ 220-30.) Section 631(a) prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978). Further, Section 631(a)'s fourth clause imposes aiding and abetting liability for conduct violative of one of the first two clauses. Plaintiffs' SAC fails to establish a violation under any clause of Section 631(a).

---

[4] It cannot be lost that CIPA is a criminal statute permitting the imposition of criminal liability and punitive civil penalties. *See* Penal Code §§ 631(a), 638.51(c). Accordingly, "there is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated" involving the alleged internet activity. *Eating Recovery Center LLC*, 2025 WL 2971090, at *6. To the extent any ambiguities permeate CIPA, including as to whether it governs internet-based communications, such ambiguities must be resolved in Samba's favor in light of the rule of lenity. *Id.* at *1 ("When courts are called upon to interpret ambiguous criminal statutes in California, the rule of lenity applies—even when the statute is being invoked in a civil action. Courts are also supposed to narrowly construe civil statutes that impose civil penalties.") (internal citations omitted).

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

*First*, Section 631(a)'s first clause prohibits "any person who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any *telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal *telephonic* communication system[.]"  Cal. Penal Code § 631(a) (emphasis added).  In other words, Section 631(a) applies to unauthorized connections through telephone or telegraph communications only.  *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1, *3 (Bybee, J., concurring) ("…§ 631(a)'s text, legislative history, subsequent augmentation, and relative ambiguity … compel the conclusion that § 631(a)'s first clause does not apply to the internet"); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755-56 (N.D. Cal. 2023); *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135-36 (E.D. Cal. 2021).  Here, Plaintiffs allege that any purported interception was confined to "internet-enabled" devices, but make no mention of the alleged wiretapping of telephonic communications.  (SAC ¶¶ 35, 43, 51, 59, 67, 75, 182.)  Accordingly, Section 631(a)'s first clause does not apply.

*Second*, to establish a claim under the second clause of Section 631(a), Plaintiffs must allege that Samba "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable…."  Cal. Penal Code § 631(a).  The term "contents" is not intended to include record information, such as the name, address, or subscriber information of a website user.  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021).  However, to the extent Plaintiffs' Section 631(a) claim is based on the purported collection of IP addresses, unique device identifiers, email addresses, and other "identifying information" (SAC ¶¶ 14, 22, 30, 38, 46, 54, 62, 70), these data points constitute record information that is not covered under Section 631(a).  *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F.Supp.3d 1007, 1018 (C.D. Cal. 2023) (dismissing Section 631(a) claim because plaintiff failed to allege eavesdropping on "protected contents"); *Graham v.*

*Noon, Inc.*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021).

Further, Plaintiffs do not plausibly allege that Samba learns the contents of any "in-transit" communications, but instead acknowledge that any allegedly collected data is processed upon being stored and after transmission. (SAC ¶ 111.) The SAC's parroting of the language of Section 631(a)'s second clause (SAC ¶¶ 225, 274), and use of buzzwords suggesting real-time interception (SAC ¶¶ 17, 25, 33, 41, 49, 57, 65, 73, 106), are insufficient to state a claim. *See L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing Section 631(a) claim where allegations failed to specifically allege when or how defendant intercepted communication in transit); *Crano v. Sojern, Inc.*, No. 3:25-CV-02600-JSC, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (interception did not occur in transmission given alleged process of "redirect[ing] data" and "stor[ing] information in a centralized location").

*Third*, and finally, claims under Section 631(a)'s third and fourth clauses are derivative in nature, and presume a violation of Section 631(a)'s preceding two clauses. *See* Cal. Penal Code § 631(a). Because Plaintiffs' claims under Section 631(a)'s first and second clauses fail, Plaintiffs cannot maintain a claim under the third and fourth clauses. *Crano*, 2025 WL 2689267, at *7; *In re Google Assistant Privacy Litig*, 457 F.Supp.3d at 827.

### b. **Plaintiffs Fail to State a Claim Under Penal Code Section 632**

To establish a claim under Section 632, Plaintiffs must allege that Samba "intentionally and without the consent of all parties to a confidential communication, use[d] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a). A communication is confidential "if a party has an objectively reasonably expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002). As set forth above, the alleged internet activity at issue is not reasonably accompanied by an expectation of privacy. (*See supra* Section III(C)(1)(a).) Consequently, Plaintiffs must "show [ ] that there is something unique about these particular internet communications which justify departing from the presumption." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799

(N.D. Cal. 2022) (distinguishing communications made in context of patient-medical provider relationship from routine online communications).  Here, Plaintiffs do not plausibly allege that they maintain an expectation of privacy to uproot this presumption.  *King*, *surpa*, 2025 WL 1635419, at *6.

c.     **Plaintiffs Fail to State a Trap and Trace Claim Under Penal Code Section 638.50 and 638.51**

To establish their alleged CIPA claim, Plaintiffs must demonstrate that Samba used a pen register or trap and trace device without their consent in violation of Penal Code section 638.51. Because CIPA's trap and trace/pen register provisions regulate the recording of information through incoming or outgoing telephone calls only, Plaintiffs' SAC falls short.

A "pen register" is "a device or process that records or decodes dialing, routing, addressing or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Penal Code § 638.50(b); *see also Smith v. Maryland*, 442 U.S. 735, n. 1(1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed."); *United States v. New York Tel. Co.*, 434 U.S. 159, 167 (1977). A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Penal Code § 638.50(c).

CIPA's provisions confirm that a trap and trace device or pen register have been used to aid law enforcement in carrying out telephone surveillance for criminal investigations. Cal. Penal Code §§ 638.32(c) ("Information acquired solely pursuant to the authority for a pen register or trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined *from the telephone number*."); 638.32(d)(1) (an order authorizing installation and use of a trap and trace device should specify "[t]he identity, if known, of the person … in whose name is listed *the telephone line to which the*

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

*pen register or trap and trace device is to be attached*") (emphasis added).[5]

CIPA's legislative history reinforces that the trap and trace statute does not cover internet activity. (*See* RJN, Ex. 1 at 7 (explaining that the bill "provides that an order [authorizing use of a trap and trace device] shall *specify … [t]he number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached….")*, at 11 (explaining that *a pen register allows law enforcement to record all outgoing numbers from a telephone line, and that a trap and trace device allows the recording* of all incoming phone numbers) (emphasis added).

Here, Plaintiffs concede that any purported interception at issue occurred through Samba's alleged tracking of Plaintiffs across "internet-enabled services and devices." (*See, e.g.*, SAC ¶¶ 19, 27, 35, 43, 51, 59, 67, 75, 149.) Because the SAC lacks any allegations that Samba conducted any wiretapping, surveillance or interception via a telephone line, Plaintiffs' trap and trace claim should be dismissed. Further, to the extent Plaintiffs' trap and trace claim rests on the alleged collection of the contents of Plaintiffs' communications, it fails. *See Mitchener v. CuriosityStream, Inc.*, Case No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) ("If Defendant instead collects content information from communication between the parties … then the TikTok software is not a trap and trace device and § 638.50 does not apply."); *Kishnani v. Royal Carribean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (same).

#### 4.    The Complaint Fails to State a CDAFA Claim

Plaintiffs once again assert a CDAFA claim based on the alleged collection of Plaintiffs'

---

[5] CIPA's trap and trace statute was modeled after federal analog trap and trace statute—the Pen Register Act. (*See* Request for Judicial Notice ("RJN"), Ex. 1, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015), at 1-4 (referencing existing federal trap and trace law under 18 U.S.C. § 3121, *et seq.*).) The definitions of "pen register" and "trap and trace device" under CIPA mirror those under its federal counterpart. *Compare* Cal. Penal Code §§ 638.50(b)-(c), *with* 18 U.S.C. § 3127(3)-(4). Notably, at the time the California Legislature mimicked those federal definitions, trap and trace devices under federal law were tied, exclusively, to telephone lines. *See, e.g.*, *In re Application of U.S. for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer* (C.D. Cal. 1995) 885 F.Supp. 197, 200 ("it appears from the construction of related sections of the statutes governing trap and trace devices that they include only devices that are attached to a telephone line.").

DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT - CASE NO.: 3:25-CV-03470

device identifiers and personal data, contending that they have been damaged by virtue of their deprivation of control over such data, alleged loss of their ability to receive compensation for their data, and alleged inability to withhold such data for sale. (SAC ¶ 263.) However, to maintain a claim, Plaintiffs must "suffer damage or loss" in the form of either economic harm or actual injury. Cal. Penal Code § 502(e)(1); *Williams v. Facebook*, 384 F.Supp.3d 1043, 1050 (N.D. Cal. 2018). Plaintiffs do not meet this burden.

Plaintiffs do not plausibly allege how they've been deprived of control of their personal data. (*See generally* SAC.) Regardless, the loss of right to control one's data does not give rise to "damage or loss" under the CDAFA. *Lineberry v. AddShopper, Inc.*, Case No. 23-cv-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (dismissing CDAFA claim where complaint failed to explain whether individual could still sell her data if defendant already possessed it "nor how the value of a person's data decreases when their data is misappropriated"); *Hernandez-Silva v. Infrastructure, Inc.*, Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025); *Heiting*, *supra*, 709 F.Supp.3d at 1021; *Doe v. Cty. of Santa Clara*, No. 23-CV-04411-WHO, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024).

Moreover, Plaintiffs lack standing because they do no allege that they actually intended to sell their information. (*See generally* SAC.) Generalized allegations that the value of one's data is theoretically diminished do not pass muster. *Pruchnicki v. Envision Healthcare Corp.*, No. 20-15460, 845 Fed. App'x 613, 614-15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value.") (emphasis in original); *Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1047-48 (N.D. Cal. Mar. 3, 2025) (dismissing CDAFA claim in part because plaintiffs failed to plead "that they ever attempted or intended to participate in the market for" alleged intercepted data).

Generalized assertions that personal data may have value and that Defendants' allegedly profited through their alleged conduct (SAC ¶¶ 9, 175-78), do not establish that *Plaintiffs* suffered "damage or loss" as contemplated under the CDAFA. *See Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *5 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim because plaintiff failed to

27

plausibly alleged that she "suffered damage as a result of Defendant's alleged sharing of her communications"); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 804 (N.D. Cal. 2019) ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933074, at *6 (N.D. Cal. June 9, 2023) (explaining that even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property). Given the absence of any alleged "damage or loss" covered by the CDAFA, Plaintiffs' claim fails.

### 5.    Plaintiffs Fail to State a Federal Wiretap Act Claim

Faced with the lack of extraterritorial application of its California-based privacy claims, Plaintiffs resort to asserting a violation of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986 (the "ECPA").  (SAC ¶¶ 267-78.)  Like its companion CIPA claim, Plaintiffs' ECPA claim fails.

 The ECPA "prohibits the unauthorized 'interception' of an 'electronic communication.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020) (citing 18 U.S.C. § 2511(1)(a)-(e)). "An ECPA claim requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024) (citing 18 U.S.C. §§ 2510 *et seq.*).

First, like their Section 631(a) claim, Plaintiffs' ECPA claim fails because record information does not constitute protected "contents."  *In re Zynga*, *supra*, 750 F.3d at 1106 ("under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication").  Because "contents" does not include the alleged collection of Plaintiffs' IP addresses and device identifiers, Plaintiffs fail to allege that Samba eavesdropped on protected contents.  *Heiting*, *supra*, 709 F.Supp.3d at 1018;

Further, the ECPA exempts liability "where such person is a party to the communication." 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under

28

color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."). A party cannot be held liable under the ECPA when it "was the known and intended recipient of the communications." *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023).

Plaintiffs' ECPA claim fails because Samba was a party to the subject communications. The SAC alleges that Samba's ACR technology is "embedded in Smart TVs." (SAC ¶¶ 2, 14, 22, 30, 38, 46, 54, 62, 70, 104.) Plaintiffs' characterization of Samba as a "third-party interloper" (SAC ¶ 158), is belied by Plaintiffs' allegations that Samba is integrated into the Smart TV's communication process and is the intended recipient of those transmissions. (*See* SAC ¶¶ 104-11.) Where, like here, a defendant is the intended recipient of the communications from the user's device, the ECPA does not apply. *See Doe v. Talkiatry Mgmt. Servs., LLC*, Case No. 5:25-cv-00781-SSS-DTBx, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025) ("Because Defendant was the party that was meant to, and did, receive Plaintiff's communications on the Website, under the party exception, 'any alleged interception of the communications is not actionable.'" (quoting *Pena*, 670 F. Supp. 3d at 1118)).

Any argument by Plaintiffs that the crime-tort exception to the ECPA's party exemption applies should be given short shrift. "For the Crime-Tort Exception to apply, a plaintiff must plausibly allege that the interception at issue was undertaken for a criminal or tortious purpose, which is independent of the interception itself." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, Case No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025); *see also Doe*, *supra*, 2025 WL 3190813, at *4 (same). It is insufficient for a plaintiff to merely allege that a defendant has profited from someone's data or that the defendant intercepted communications in the course of its generalized business purposes. *See Lakes v. Ubisoft*, 777 F.Supp.3d 1047, 1058 (N.D. Cal. 2025) ("The Court finds that the complaint alleges that the purpose of the interception was not 'to perpetuate torts on millions of Internet users, but to make money … The Court finds that Plaintiffs have failed to meet their burden to show that the crime-tort exception applies."), *Roe*

*v. Amgen Inc.,* Case No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) ("the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally").

At most, Plaintiffs allege that their information was intercepted for profit as part of Samba's business operations, but not for any criminal or tortious purpose. (*See* SAC ¶¶ 119-32.) Accordingly, the crime-tort exception does not apply, and the party exemption forecloses Plaintiffs' ECPA claim.

### 6.    Plaintiffs Fail to State a Claim Under the UCL

#### a.    Plaintiffs Lack Statutory Standing to Support Their UCL Claim

As a threshold matter, Plaintiffs do not plead a cognizable injury under the UCL. A claim under California's UCL "must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.'" *Perez v. Romantix Online, Inc.*, Case No. 25-cv-02465-NW, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)). Such an economic injury may be demonstrated when the plaintiff: "(1) expended money due to defendant's unfair acts; (2) lost money or property; or (3) has been denied money to which he or she has a cognizable claim." *Hahn v. Select Portfolio Servicing, Inc.*, 424 F. Supp. 3d 614, 635 (N.D. Cal. 2020) (citation omitted).

Plaintiffs claim to have been injured under the UCL based on the purported "economic value" of their "personal information and private communications" (SAC ¶ 288), and the "diminution in the value of their personal information and private communications." (SAC ¶ 299.) However, "[a] plaintiff's 'personal information' does not constitute property under the UCL." *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) (citing *Thompson v. Home Depot, Inc.*, No. 07-cv-1058-IEG, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007)); *see also Libman v. Apple, Inc.*, No. 22-CV-07069-EJD, 2024 WL 4314791, at *18 (N.D. Cal. Sept. 26, 2024) ("Just because Plaintiffs' data is valuable in the abstract, and because [defendant] might have made money from it, does not mean that Plaintiffs have lost money or property as a result."

(quoting *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (cleaned up)). Where, as here, Plaintiffs simply "allege[d] that their personal information is valuable in the abstract and that they have suffered loss of value in their personally identifiable information[,]" they cannot maintain a UCL claim. *Libman*, 2024 WL 4314791, at *19.

Further, Plaintiffs' allegation that they would not have purchased their SmartTVs had they known about the alleged conduct at issue (SAC ¶ 292), does not salvage their UCL claim. *Perez, supra*, 2025 WL 3085786, at *3 (dismissing UCL claim for lack of standing and explaining that plaintiffs "must allege something beyond the untethered insistence that they would not have bought the products had they known the truth of Defendants' data collection policies"); *Libman*, 2024 WL 4314791, at *18. Because Plaintiffs have not alleged the existence of a cognizable injury under the UCL, they lack statutory standing to maintain that claim.

### b. Plaintiffs UCL Claim Fails Under the Unlawful and Unfair Prongs

California law defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Hahn, supra*, 424 F. Supp. 3d at 634 (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010)). Plaintiffs contend that Samba violated the UCL's "unlawful" and "unfair" prongs. (SAC ¶¶ 284-85.) Plaintiffs do not plausibly allege a UCL claim under either prong.

### i. Plaintiffs Cannot Establish Unlawful Conduct

"UCL claims under the unlawful prong borrow violations of the other laws and make those unlawful practices actionable under the UCL." *Hahn*, 424 F. Supp. 3d at 634 (cleaned up) (citation omitted). "[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong" and "UCL claims under the unlawful prong stand or fall depending on the fate of the antecedent substantive causes of action." *Id.* (citation omitted). Here, Plaintiffs predicate their "unlawful" claim on alleged violations of CIPA, CDAFA, the Children's Online Privacy Protection Rule ("COPPA"), and the California Consumer Privacy Act ("CCPA"). (SAC ¶ 284.)

As set forth above, Plaintiffs fail to state claims under CIPA and CDAFA and, consequently, Plaintiffs cannot invoke those statutes as a basis for UCL relief. (*See supra* Section III(C)(2)-(3).)

Plaintiffs' attempt to premise their UCL claim on the COPPA and the CCPA is equally unavailing. Plaintiffs are required "to set forth sufficient factual allegations to support the[ ] underlying charges." *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *15 (N.D. Cal. Dec. 3, 2013) (dismissing UCL unlawful conduct claim because plaintiffs failed to "plead any underlying unlawful conduct"). Here, Plaintiffs merely reference the alleged violations of these laws in passing, state that Samba "violated the spirit and letter of these laws," and provide threadbare recitals of the elements of those claims. (*See* SAC ¶¶ 146-47, 284.) These conclusory statements, without more, are insufficient. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 n.10 (N.D. Cal. 2013) (claims premised on the "unlawful" prong of the UCL "must state with reasonable particularity the facts supporting the statutory elements of the alleged violation") (citation omitted); *Argueta v. J.P. Morgan Chase*, 787 F. Supp. 2d 1099, 1106 (E.D. Cal. 2011) (dismissing plaintiff's UCL claim pursuant to the "unlawful prong" because the "allegations are conclusory and lacking in reasonable particularity").[6]

Further, COPPA prohibits "an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child in a manner that violates the regulations prescribed under subsection (b)" of the statute. 15 U.S.C. § 6502(a)(1). A child is defined under the act as "an individual under the age of 13." *Id.* § 6501(1).[7] Plaintiffs' SAC alleges that Plaintiff K.S. was under the age of 13 "at the time her household first purchased a Samba TV-enabled television" (SAC ¶ 145), but does not allege that any of K.S.'s personal information was transferred while she was under the age of 13, or even that she watched

___

[6] It should further be noted that the CCPA expressly states that "nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law." *See* Cal. Civ. Code § 1798.150.

[7] The CCPA has a similar requirement. *See* Cal. Civ. Code § 1798.120(c) ("[A] business shall not sell or share the personal information of consumer if the business has actual knowledge that the consumer is less than 16 years of age, unless the consumer, in the case of consumers at least 13 years of age and less than 16 years of age, or the consumer's parent or guardian, in the case of consumers wo are less than 13 years of age, has affirmatively authorized the sale or sharing of the consumer's personal information.")

32

television while under the age of 13.  (*See generally*, SAC.)  A purported violation of COPPA also requires that a defendant has "actual knowledge that it is collecting personal information from a child."  15 U.S.C. § 6502(a)(1).  Plaintiff does not plausibly allege that Samba had the requisite actual knowledge that information about minors was collected, but instead levies the conclusory allegation that Samba "identif[ies] every individual member of a household." (SAC ¶ 145.)

In the absence of establishing an underlying COPPA and CCPA violation, Plaintiff's UCL claim fails under the unlawful prong.  *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 451 (N.D. Cal. 2017) ("[C]laims raised under the UCL's unlawful prong rise or fall with the Court's determination of liability with respect to the underlying violation." (citation omitted).

###### ii.    **Plaintiffs Cannot Establish Unfair Conduct**

Plaintiffs' UCL claim under the unfair prong also fails.  At the outset, because Plaintiffs' attempt to invoke the UCL's unfair prong is based on the same alleged conduct underlying its unsuccessful "unlawful" theory, Plaintiff's UCL claim on this basis should be dismissed. *HomeLight, Inc. v. Shkipin*, 721 F.Supp.3d 1019, 1025 (N.D. Cal. Mar. 5, 2024) (dismissing UCL claim under unfair prong "because this claim is based on the same alleged conduct underlying the dismissed unlawful and fraudulent prongs claims") (citing *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104-05 (N.D. Cal. 2017)).

Further, Plaintiffs fail to tether their allegations of Samba's purported conduct to a violation of any specific public policy.  (*See* SAC ¶ 285.)  Plaintiffs' conclusory assertion that Samba's conduct "was immoral, unethical, oppressive, unscrupulous and substantially injurious" (SAC ¶ 287), does not pass muster.  *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 802 (C.D. Cal. 2021) (dismissing claim based on "unfair" prong of UCL because plaintiff "merely alleges, in conclusory fashion, that [defendant's] conduct is . . . immoral, unethical, oppressive, and unscrupulous."); *Goddard v. Slickdeals, LLC*, 2025 WL 2969722, at *7 (N.D. Cal. Oct. 21, 2025) (dismissing UCL claim where plaintiff failed to explain why defendant's actions were unfair).

###### 7.    **Plaintiffs Equitable Relief Claims Fail**

Finally, because unjust enrichment and injunctive relief are remedies, and not independent

causes of action, Plaintiffs' equitable relief claims must be dismissed.  "State and federal courts have consistently dismissed stand-alone claims for unjust enrichment."  *Perez, supra,* 2025 WL 3085786, at *4.  As this Court already highlighted in its October 30, 2025 Order dismissing Plaintiffs' initial Complaint, "California does not permit a standalone claim for injunctive relief." (10/30/25 Order, Dkt. No. 49 at 10 ("Plaintiffs' injunctive relief claim must be dismissed because 'California law does not permit a standalone claim for injunctive relief.'")) (quoting *Tashkian v. Invictus Residential Pooler – 2A*, No. 19-CV-01536-EJD, 2024 WL 780416, at *11 (N.D. Cal. Feb. 26, 2024)); *see also Brewer v. Superior Ct. of California, Cty. of Los Angeles*, Case No. 2:25-04362-TJH (ADS), 2025 WL 3070482, at *4 (C.D. Cal. Sept. 29, 2025), *report and recommendation adopted*, 2025 WL 3068167 (C.D Cal. Oct. 31, 2025) (injunctive relief is "not a standalone cause of action").

Moreover, Plaintiffs have not bolstered the factual allegations underlying their unjust enrichment claim.  Like in their initial defective pleading, Plaintiffs' unjust enrichment claim is predicated on vague and imprecise allegations regarding what information is allegedly acquired at Plaintiffs' expense.  (*Compare* Compl. ¶ 220, Dkt. No. 1, *with* SAC at ¶ 296.)  For this independent reason, Plaintiffs' unjust enrichment claim should be dismissed.  *Wendover Productions, LLC v. PayPal Inc.*, 2025 WL 3251667, at *5 (N.D. Cal. Nov. 21, 2025) (dismissing unjust enrichment claim because it was not "pleaded with sufficient factual particularity to invoke th[e] Court's equitable jurisdiction.").

Finally, Plaintiffs also fail to establish the absence of an adequate remedy at law.  "To obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law." *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Conclusory statements are insufficient to maintain equitable relief claims.  *Id.*; *see also Lair v. Bank of Am., N.A.*, No. 23-cv-01345-WLH, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024) ("a plaintiff facing dismissal 'must, at a minimum, *plead* [substantive allegations] that she lacks adequate remedies at law if she seeks equitable relief." (emphasis in original) (citations omitted)). Where the relief sought is fundamentally economic in nature, claims for equitable relief are

34

duplicative. *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal of equitable claims because plaintiffs "failed to explain how the money they seek through restitution is any different than the money they seek as damages") (internal brackets and citation omitted).

Plaintiffs' unjust enrichment and injunctive relief claims cannot stand absent allegations that Plaintiffs credibly lack an adequate remedy at law. Plaintiffs generally claim the absence of an adequate remedy at law, but seek compensatory damages on the very same underlying conduct. (*Compare* SAC ¶¶ 229, 240, 252, *with* SAC ¶¶ 203, 216, 230, 264.) Further, Plaintiffs' claim for equitable disgorgement of profits (SAC ¶¶ 203, 216, 291), does not render any available legal remedy as necessarily inadequate. *See Hubbard*, *supra*, 2024 WL 3302066, at *6 ("That Defendants earned profits in the process of [misappropriating Plaintiffs' information] renders neither damages for the harm a *per se* inadequate legal remedy nor the earning of those profits a distinct harm for which Plaintiffs may also recover.").

## IV.   CONCLUSION

For the foregoing reasons, Samba respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: January 14, 2026                          COZEN O'CONNOR

                                                 By:    */s/ Matthew E. Lewitz*
                                                        Matthew E. Lewitz
                                                        Brett N. Taylor
                                                        Gianna Puccinelli
                                                        Attorneys for Defendant
                                                        Samba TV, Inc.

35