Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
Yuanchen Lu (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

STEVE DELLASALA, BOB WARDEN, VINCE TOPHONEY, DAVID GOODRICH, KENNETH HARRIS, DUANE LEDWARD, DEREK SCHUETTE, and DEREK SCHUETTE, as guardian of K.S., a minor, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

SAMBA TV, INC.,

Defendant.

Case No. 3:25-cv-03470-JSC

**PLAINTIFFS' OPPOSITION TO DEFENDANT SAMBA TV, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Date: March 19, 2026
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. LEGAL STANDARD .......... 4
IV. ARGUMENT .......... 4
A. Plaintiffs Have Sufficiently Alleged Injury-in-Fact for Article III Standing .......... 4
B. Plaintiffs Can Bring California Common Law Claims .......... 7
C. Plaintiffs' Privacy Claims Should Be Sustained .......... 8
D. Plaintiffs' CIPA § 631 Claim Should Be Sustained .......... 10
E. Plaintiffs' CIPA § 632 Claim Should Be Sustained .......... 13
F. CIPA §§ 638.50 and 638.51 Apply to the Technology at Issue .......... 14
G. Plaintiffs' CDAFA Claim Should Be Sustained .......... 16
H. Plaintiffs' ECPA Claim Should Be Sustained .......... 18
I. Plaintiffs Plausibly Allege UCL Claims .......... 20
J. Plaintiffs Plausibly Allege Claims for Unjust Enrichment .......... 23
CONCLUSION .......... 24

## TABLE OF AUTHORITIES


**CASES** **PAGE(S)**

*Argueta v. J.P. Morgan Chase*,
787 F. Supp. 2d 1099 (E.D. Cal. 2011) ..... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 4

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021) ..... 23

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ..... 22

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ..... 24

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 19

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 5, 13, 16

*Brown v. Google LLC*,
No. 20-CV-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ..... 20, 21

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ..... 20

*Chen v. Bank of Am., N.A.*,
No. CV 19-6941-MWF-SK, 2019 WL 9633650 (C.D. Cal. Oct. 29, 2019) ..... 23

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ..... 15

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ..... 13

*Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ..... 20

*DellaSala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ..... 24

*Doe v. County of Santa Clara*,
Case No. 23-cv-04411-WHO, 2024 WL 3346257 (N.D. Cal. July 8, 2024)....................................... 17

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ..................................................... 10

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ............................................................................................. 12

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025)............................................ 18

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ............................................................................................. 18

*Doe v. Talkiatry Mgmt. Servs., LLC*,
Case No. 5:25-cv-00781, 2025 WL 3190813 (C.D. Cal. Oct. 1, 2025)......................................... 18, 19

*E.H. v. Meta Platforms, Inc.*,
No. 23-CV-04784, 2024 WL 557728 (N.D. Cal. Feb. 12, 2024) ........................................................ 23

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ............................................................................................................. 5, 9

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ............................................................................................................ 23

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) ....................................................................................... 9

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533, 2025 WL 1939957 (N.D. Cal. July 14, 2025)....................................... 7, 10, 15, 16

*Goddard v. Slickdeals, LLC*,
Case No. 25-cv-06187-JSC, 2025 WL 2969722 (N.D. Cal. Oct. 21, 2025)........................................ 23

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................................ 12

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
250 F. Supp. 3d 438 (N.D. Cal. 2017) ................................................................................................ 21

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ................................................................................................ 13

*Griffith v. TikTok, Inc.*,
No. 5:23-CV-00964-SB-E, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ........................................... 5

*Gutierrez v. Converse Inc.*,
Case No. 2:23-cv-06547, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023)............................................ 17

*Harris v. iHeartMedia, Inc.*,
No. 25-CV-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ....... 6, 10, 14

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ....... 17

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....... 12

*Hernandez-Silva v. Infrastructure, Inc.*,
2:25-cv-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ....... 17

*Hubbard v. Google LLC*,
No. 19-CV-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ....... 9, 10, 24

*In re Apple Processor Litig.*,
No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ....... 2, 4

*In re Facebook, Inc. Internet Tracking Litigation,*
956 F.3d 589 (9th Cir. 2020) ....... passim

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....... 20

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....... 10, 13

*In re Google Inc.*,
No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....... 10

*In re Google, Inc. Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ....... 21

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....... 10

*In re Meta Pixel Healthcare Litigation,*
647 F. Supp. 3d 788 (N.D. Cal. 2022) ....... 14

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....... 20, 23, 24

*In re Meta Pixel Tax Filing Cases*,
No. 22-CV-07557, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) ....... 14, 15

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
580 F. Supp. 2d 896 (N.D. Cal. 2008) ....... 7, 8

*In re U.S. for Ords. (1) Authorizing Use of Pen Regs. & Trap & Trace Devices*,
515 F. Supp. 2d 325 (E.D.N.Y. 2007) ....... 15

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 5, 13

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625 (C.D. Cal. 2022) ........ 21

*In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........ 21, 22

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........ 9, 12

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 5

*Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) ........ 8

*Khamooshi v. Politico LLC*, Case No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. October 2, 2025) ........ 6

*King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-CV-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ 9, 14

*Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) ........ 20

*Kishnani v. Royal Caribbean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) ........ 16

*Krzyzek v. OpenX Techs., Inc.*, No. 25-CV-05588, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ........ 11, 12, 19

*L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 12

*Lair v. Bank of Am., N.A.*, No. 23-cv-01345-WLH, 2024 WL 943945 (C.D. Cal. Jan. 26, 2024) ........ 24

*Lakes v. Ubisoft*, 777 F. Supp.3d 1047 (N.D. Cal. 2025) ........ 19

*Libman v. Apple, Inc.*, No. 22-CV-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 20, 21

*Lineberry v. AddShopper, Inc.*, Case No. 23-cv-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ........ 16

*Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 9

*Lowenberg v. Illinois Mut. Life Ins. Co.*,
No. 21-CV-09739, 2023 WL 4336693 (N.D. Cal. Apr. 27, 2023) ........ 7

*M.H. v. Done Glob. Inc.*,
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ........ 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 4

*Mata v. Zillow Grp., Inc.*,
No. 24-CV-01095, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 11

*Matera v. Google Inc.*,
No. 15-CV-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 6

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........ 7

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........ 10

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 14

*Mitchener v. Curiositystream, Inc.*,
Case No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 16

*Moody v. C2 Educational Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 14

*Morilha v. Alphabet Inc.*,
No. 24-cv-02793-JST, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ........ 7, 10

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 18

*Perez v. Romantix Online, Inc.*,
No. 25-CV-02465-NW, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 21, 23

*Peter Dawidzik v. Tesla, Inc.*,
Case No. EDCV 25-01982-KK-SPx, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ........ 9, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. Aug. 26, 2025) ........ 2, 6, 9

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-CV-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 9

*Price v. Converse, Inc.*,
Case No. 2:24-cv-080891-FLA (Ex), 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) .......... 6

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) .......... 17

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... passim

*Rodriguez v. Brushfire Records*,
Case No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 6, 9

*Rodriguez v. Culligan International Company,*
25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 6, 9

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 16

*Roe v. Amgen Inc.,*
No. 2:23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 19

*Romero v. Flowers Bakeries, LLC*,
Case No. 14-cv-05189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) .......... 8

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 19

*Scheibe v. ProSupps USA, LLC*,
141 F.4th 1094 (9th Cir. 2025) .......... 5

*Semien v. Pubmatic Inc.*,
No. 25-CV-03164, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 19, 20

*Shah v. Capital One Fin. Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. Mar. 3, 2025) .......... 17

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 14

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 13

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 15

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 13

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 16, 19

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ........ 21

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. 2025) ........ 19

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ........ 22

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 9

*Tovmasyan v. Target Corp.,*
No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020 (C.D. Cal. May 2, 2025) ........ 7, 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4

*Turner v. Apple, Inc.*,
No. 5:20-CV-07495, 2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ........ 24

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) ........ 15

*User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) ........ 18

*Wendover Productions, LLC v. PayPal Inc.*,
No. 5:24-CV-09470, 2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) ........ 24

*Yoon v. Meta Platforms, Inc.*,
No. 24-CV-02612, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 14, 20

**STATUTES**

Cal. Penal Code § 502(a) ........ 16

Cal. Penal Code § 631(a) ........ 11

Cal. Penal Code § 638.51(b) ........ 15

**OTHER AUTHORITIES**

S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess. (Cal. June 16, 2015) ........ 15, 16

## I. INTRODUCTION

The Second Amended Class Action Complaint ("SAC")[1] alleges something entirely different than the version of events Samba TV, Inc. ("Samba") describes in its Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion" or "Mot"). Samba is not merely collecting "unremarkable data points," but covertly intercepting consumers' private video-viewing activity from inside their homes. Samba links that viewing behavior to multiple persistent identifiers, many of which it also intercepts directly from individuals' devices, enriches it with additional data obtained from unknown "partners" and through its API, creates identifiable user profiles, and sells access to them and other downstream advertising products to third parties. Far from a mess of "free-roaming privacy rights" and "buzzwords," as Samba claims, these allegations clearly describe an unauthorized surveillance and profiling scheme that fits squarely within settled Ninth Circuit precedent recognizing the privacy harm caused by the surreptitious aggregation and disclosure of private information.

Samba's Motion depends on misleadingly depicting the SAC to concern only the collection of IP addresses and device identifiers. But that is plainly not what is alleged. While the SAC does identify the precise identifiers Samba intercepts—including multiple unique and persistent identifiers (e.g., IP addresses, GUIDs, Android IDs/UUIDs, AAIDs, session IDs, and Samba-specific measurement and advertising IDs)—it alleges this data is intercepted *alongside* private video-viewing activity. The SAC also explains why the use of multiple identifiers is deliberate: it enables ongoing, unavoidable tracking and profiling of individuals across devices. The SAC further alleges that Samba combines these intercepted communications with additional identifiers and behavioral event data supplied by "partners" or captured directly through Samba APIs embedded on other web and mobile properties. The result is an identity graph and profile schema designed for one purpose: to sell access to consumers' private viewing behavior to third parties for profit. Samba cannot transform this into the mere collection of "IP addresses and enumerated device identifiers" no matter how many times it pretends that is what the SAC alleges.

Nor can Samba force SAC's allegations into this mold by relying on inapposite cases addressing the collection of device identifiers alone. If anything, these decisions require denying Samba's motion, as

[1] "¶" as used herein refers to the SAC (ECF No. 56) unless otherwise noted.

the profiling of individuals and aggregation of sensitive video history is a violation even under their standards. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 26, 2025) is equally off-point, as it involved the collection of user preferences from a pet store's own website through session replay technology not at issue in this case. Samba's covert interception of video-viewing activity on TVs it did not make or sell, and monetization of this private data through the sale of detailed profiles, is conduct Congress and courts have long recognized as invasive and actionable.

Samba's Motion, which seeks to dismiss a different set of claims premised on a different set of facts that are inconsistent with the SAC, must be denied.

## II. BACKGROUND

Samba's motion turns on an inaccurate restatement of the SAC. The summary of the SAC below corrects this by highlighting what the new allegations actually say about Samba's misconduct.

***Samba's Interception of Identifiable Video-Viewing Data.*** This case is not limited to the collection of identifiers. Rather, Plaintiffs allege that Samba collected multiple unique identifiers alongside their private video-viewing activity. ¶¶ 105-109 (explaining Samba intercepts each frame of video content requested by the consumer as well as over two dozens of metadata fields); ¶¶ 14-17, 22-25, 30-33, 38-41, 46-49, 54-57, 62-65, 70-73. These identifiers include IP addresses, GUID (a unique, persistent ID for the Samba Smart TV), Android ID/UUID (a unique, persistent identifier set by Android), AAID (a unique Android Advertising ID), Session IDs (an identifier assigned to each specific video-viewing session), SDADID (the Samba Advertising ID), and SMID (a Samba Measurement ID). ¶¶ 112-114. Samba paired multiple unique identifiers and device "fingerprints"[2] with this sensitive video data by design to track users across devices and prevent them from avoiding being profiled. ¶¶ 115-118.

Samba then combines the information it intercepts directly from Plaintiffs' and Class Members' home televisions with data it obtains from advertisers and "partners." ¶¶ 99-101. This includes additional unique identifiers, like SHA256 hashed email addresses, and mobile advertising IDs (AAID and IDFA), mobile device IDs (IDFV and Android ID), IP addresses, and CTV device IDs. ¶ 99. Samba uses this

---

[2] Samba used device information, like the make, model id, firmware version, device name, device language, brand, and model year to create a unique signature for each device it tracked. ¶ 115.

additional data to enhance its profiling capabilities by increasing its ability to associate data with a particular individual. ¶ 101. This also leverages information from identity service providers, like mParticle, who share identifiers and event-level data (i.e., data reflecting consumers' interactions on the internet) with Samba to augment its profiles. ¶ 99 n.6. These profiles are further enhanced by data collected through Samba's API, which third parties incorporate on their own web properties, so that they can target Plaintiffs and Class Members with ads through Samba's systems. ¶¶ 100-102.

***Samba's Creation & Sale of Identifiable User Profiles.*** All this data is used by Samba to create identifiable user profiles reflecting individuals' video-viewing activity, which are anchored by a unique SambaID. ¶¶ 104-111. The purpose of these identifiable profiles is so Samba can sell this information to third party advertisers. ¶¶ 119-132. The profiles are particularly valuable to advertisers, as Samba admits, because other companies have moved away from this type of invasive targeting. ¶¶ 4-7, 86-90, 93. Samba, by contrast, sought to capitalize on the privacy "gap" competitors left behind. ¶¶ 91-95.

Samba also sells specific solutions that leverage these profiles, including: (1) "custom audiences" based on individuals' specific video-viewing activity (e.g., groups of individuals who heavily watch conservative news or play specific types of video games) (¶¶ 121-129); (2) collection of more than 2,800 "attributes" it has learned about consumers (¶ 130); (3) a "[r]etarget[ing]" solution that enriches data too incomplete to target individuals (what Samba calls "[u]nreachables") by joining it with Samba's identifiable profiles (¶ 131); and (4) commingled datasets with other entities, such as HyphaMetrics, that are also sold to advertisers and publishers. ¶ 132.

***Samba's Targeting of Children.*** If this is not bad enough, Samba also profiles and targets children like Plaintiff K.S. and falsely represents that it complies with the Children's Online Privacy Protection Act ("COPPA"). Specifically, Samba claims that neither "Samba TV nor its third party business partners are able to individually identify your child with any data that [Samba] collect[s]." ¶¶ 141-146. But COPPA expressly prohibits the collection of IP addresses and unique identifiers (i.e., some of the data Samba intercepted here) as "Personal Information" because this information is identifiable. ¶ 146. Indeed, the whole purpose of Samba's identifiable user profiles, which necessarily include child-viewers like K.S., is to identify and target Plaintiffs' and Class Members. Samba's claim that it does not identify or knowingly

collect data from children is untenable in light of how its technology operates, the data it collects, and the purpose of its data collection activities.

Taken together, these new allegations confirm this case concerns much more than the mere collection of "IP addresses"—it is a privacy case against an unauthorized data aggregator who has unlawfully profiled millions of consumers for profit without their knowledge. These invasive "Big Brother" tactics, particularly those involving spying on what one watches in their own home (¶¶ 154-158), violate multiple state and federal laws.

## III. LEGAL STANDARD

In evaluating a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pled facts as true, and draw all reasonable inferences in the plaintiff's favor. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court must deny a motion to dismiss where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## IV. ARGUMENT

### A. Plaintiffs Have Sufficiently Alleged Injury-in-Fact for Article III Standing

"Intrusion upon seclusion" is one of the quintessential harms sufficient to confer Article III standing. *See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Ninth Circuit has repeatedly held that the covert collection and exploitation of individuals' private data is a concrete privacy harm that conveys standing. For instance, in *In re Facebook Internet Tracking Litig.*, the Ninth Circuit found plaintiffs had Article III standing based on allegations that Meta surreptitiously collected browsing data from third party websites to compile "highly personalized profiles." 956 F.3d 589, at 601-04 (9th Cir. 2020). The court found that "[p]laintiffs have adequately alleged an invasion of a legally protected interest that is concrete and particularized." *Id.* at 598. Furthermore, in focusing on the injuries arising from Plaintiffs' common law privacy claims (which the Ninth Circuit has clearly found to also confer standing, *see, e.g.*, *id.*), Samba overlooks that "statutory provisions [of the Wiretap Act and CIPA] codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer

standing." *Id.* And in *Eichenberger v. ESPN, Inc.*, it found that "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history" constitutes a "[v]iolation[] of the right to privacy" sufficient for standing. 876 F.3d 979, 983 (9th Cir. 2017).

Samba's conduct here—involving both the *collection* of identifiable video-viewing data from consumers and further *disclosure* of that data to other third party advertisers for profit—falls squarely within this binding precedent, as well as countless district court decisions in accord. *See Griffith v. TikTok, Inc.*, No. 5:23-CV-00964-SB-E, 2023 WL 9019035, at *2-4 (C.D. Cal. Dec. 13, 2023) (plaintiffs had Article III standing where they alleged "[d]efendants have collected without authorization their private browsing data," including video-viewing history); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017) (same); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (allegations that defendants tracked plaintiffs' activity to create profiles for targeted advertising "sufficiently allege harm to the [p]laintiffs for Article III standing"); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087-88 (N.D. Cal. 2025) (recognizing "the tracking of individuals' activity across thousands of websites" to "generate uniquely identifying profiles" is a highly offensive invasion of privacy); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 920 (N.D. Cal. 2023) (standing established where the defendant "associates [users' browsing data] with their preexisting user profiles" to deliver "better, more targeted, advertisements to users").

Samba cannot defeat Plaintiffs' standing by falsely claiming that this case involves only the "collection of IP addresses, device identifiers, and other device markers." Mot. at 11. Plaintiffs clearly allege that Samba does more than that, aggregating private video-viewing information, identifiers, and additional behavioral data from purported "partners"[3] into identifiable user profiles that it sells to third

---

[3] Samba's footnote argument that these allegations are "vague and imprecise" because Plaintiffs do not identify every one of these partners by name is a red herring. Mot. at 16 n.3. Plaintiffs have identified specific partners by name (i.e., mParticle, Databricks, and HyphaMetrics) and have also explained "when [and] how" Samba gets this information (e.g., through direct "bridg[ing]" of datasets and Samba's own API embedded in mobile and web-based applications). *See* ¶ 99 n. 6; ¶¶ 100, 132. These allegations are plausible and supported by public documentation. *See id.*; *see also Samba TV and HyphaMetrics Announce Exclusive Integration*, https://www.samba.tv/press-releases/samba-tv-and-hyphametrics-announce-exclusive-integration-of-viewership-data-and-cross-media-panel-to-form-the-most-unified-dataset-in-the-market (last visited Feb. 9, 2026). Any further details on Samba's partnerships are

parties for profit. This dooms Samba's Motion, which seeks to dismiss claims based on a different set of conduct that is not what Plaintiffs alleged.

Stripped of this false narrative, the cases Samba relies on—which involve the collection of device identifiers alone or other unspecified data—support denying its Motion. Mot. at 16 (citing *Rodriguez v. Brushfire Records*, Case No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (finding collection of "IP address and other device identifiers" by themselves is insufficient to allege a privacy injury); *Rodriguez v. Culligan Int'l Co.*, Case No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4-5 (S.D. Cal. Nov. 3, 2025) (same); *Price v. Converse, Inc.*, Case No. 2:24-cv-080891-FLA (Ex), 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025) (finding use of device identifiers to "deanonymize" users by itself does not give rise to a privacy injury); *Khamooshi v. Politico LLC*, Case No. 24-cv-07836-SK, 2025 WL 2822879, at *2-4 (N.D. Cal. October 2, 2025) (acknowledging the collection of some "browsing activity" can implicate a "privacy interest" but dismissing claims where plaintiff failed to include "specific allegations" about the "type of" data allegedly intercepted)). None of these cases address disclosure of inherently private video-viewing history data protected by statute, or its use in the ongoing profiling of millions of individuals that Plaintiffs allege here.

Samba's reliance on the Ninth Circuit's decision *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. Aug. 26, 2025) is also misplaced. Mot. at 15. There, the Ninth Circuit reaffirmed its holdings in both *Eichenberger* and *Facebook Tracking*, that the unauthorized collection and disclosure of private data are privacy harms. However, it found the plaintiffs' allegations regarding the data collected by the specific session replay technology installed on the pet store defendant's website failed to meet that standard. *Id*. at 791. By contrast, Samba's collection of data for the development of user profiles here falls squarely within *Facebook Tracking* and its disclosure of identifiable video-viewing data is identical to *Eichenberger*. *See Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026) (distinguishing *Popa* on similar grounds where profiling was more akin to *Facebook Tracking*).

Finally, Samba's suggestion that the Court disregard Plaintiffs' allegations that it creates and sells

---

information solely in its control that must be disclosed in discovery. *See Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1100 (9th Cir. 2025) (refusing to dismiss claims "before discovery opens" where "defendants may have exclusive control and possession of critical facts").

access to user profiles must be rejected as inconsistent with the pleading standard. *See Matera v. Google Inc.*, No. 15-CV-04062, 2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016) (accepting similar "factual allegations" of user profiling "as true" at the pleading stage). Nothing about these allegations is "speculative" (Mot. at 16) or theoretical—they are supported by actual evidence, including Samba's own data sale listings and public documentation. *Morilha v. Alphabet Inc.*, No. 24-cv-02793-JST, 2024 WL 5205542, at *2 (N.D. Cal. Dec. 23, 2024), which Samba cites, involved a pro se plaintiff who merely believed Google "might" have "s[old] [his data] to others" without elaboration, and is not comparable to Plaintiffs' robust allegations here.[4]

### B. Plaintiffs Can Bring California Common Law Claims

Samba's contention that Plaintiffs' claims must be dismissed because the SAC does not specify which state's law should apply to their privacy and unjust enrichment claims is meritless. Mot. at 17. What law applies to these claims is a choice of law issue for class certification, not grounds for dismissal on a Rule 12 motion. *See Lowenberg v. Illinois Mut. Life Ins. Co.*, No. 21-CV-09739, 2023 WL 4336693, at *1 (N.D. Cal. Apr. 27, 2023) ("Courts rarely undertake choice-of-law analysis . . . at this early stage in litigation."); *Tovmasyan v. Target Corp.,* No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020, at *4 (C.D. Cal. May 2, 2025) ("Courts in the Ninth Circuit have consistently held that such choice-of-law analysis should occur at the class certification stage."). *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012), relied on by Samba, does not compel a different result because there, the court considered an appeal that evaluated potential differences in choice of law at class certification. *See* Mot. at 17.

The cases Samba cites that addressed choice of law issues at the pleading stage did so because the failure to specify which state's law plaintiffs were pursuing made it impossible to "assess[] whether the claim ha[d] been adequately pled" given material differences in the laws. *See* Mot. at 17. For instance, *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) was an antitrust case where the plaintiffs alleged that defendants were unjustly enriched by selling SRAM at

---

[4] Regardless, Plaintiffs would still have standing even if Samba did not (and it did) sell and monetize this data. *See Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (explaining that "depriving [the plaintiff] control of personal information regarding his digital activity and profile" is itself "sufficient to establish a concrete injury").

artificially inflated prices in violation of various states' antitrust laws. Because defendants would only be unjustly enriched if these overcharges were collected in violation of such states' laws, the plaintiffs' omission of allegations regarding which states' laws applied failed to provide defendants "adequate notice" of those claims. *Id*. Similarly, in *Romero v. Flowers Bakeries, LLC*, Case No. 14-cv-05189, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016), plaintiffs broadly asserted common law claims without identifying any specific state, making it impossible for the court to determine if state-specific elements, like reliance, were required or adequately alleged. Samba's failure to identify an analogous material variation or conflict in Plaintiffs' claims disposes of this argument. *See Tovmasyan v. Target Corp.,* No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020, at *5 (C.D. Cal. May 2, 2025) (rejecting failure to "allege which state's law applies to [plaintiff's] common law claims" as grounds for dismissal where defendant "falls short of identifying any conflict of law that would materially impact the Court's assessment of plausibility"); *see also Keilholtz v. Lennox Hearth Prods. Inc.,* 268 F.R.D. 330, 341 (N.D. Cal. 2010) (rejecting claim of material variations in unjust enrichment laws at class certification).[5]

### C. Plaintiffs' Privacy Claims Should Be Sustained

Courts evaluating common law intrusion upon seclusion claims and invasion of privacy claims under the California Constitution consider whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See Facebook Tracking*, 956 F.3d at 601. This analysis is holistic, with courts considering the nature of the data, the breadth of the collection, and whether and how the defendant gained access to it. *Id.* at 602-03.

***Reasonable Expectation of Privacy***. Here, there is no question that individuals have a right—codified by statute (e.g., VPPA)—to watch videos in their own homes without an interloper secretly spying on them. *See* ¶¶ 153-163 (recognizing a right to privacy in this context as early as the 1980's). And they

[5] Even if the Court is inclined to evaluate choice of law now, California law should apply to Plaintiffs' common law claims. Samba (1) is headquartered in San Francisco, California (¶ 76); (2) represents itself as complying with California laws, including the CCPA (¶¶ 139-140); (3) its aggregation, receipt, use, and disclosure of Plaintiffs' and the Class Members' private data occurred in this forum (¶ 222) (4) and Samba has not carried its burden to identify a competing state with a superior interest to support dismissal of these claims. *See also* Plaintiffs' Opposition to Samba's Motion to Strike SAC.

certainly have an expectation that this identifiable video-viewing data will not be collected, used to profile them, and disclosed to advertisers for profit. *See Eichenberger,* 876 F.3d at 983 (recognizing disclosure of identifiable video-viewing data is a "[v]iolation[] of the right to privacy"); *Facebook Tracking*, 956 F.3d at 604 (finding reasonable expectation of privacy over "highly personalized profiles" compiled from "internet browsing histories"); *Riganian*, 791 F. Supp. 3d at 1083, 1085-87 (holding a company that "generate[s] uniquely identifying profiles" from users' activity on third party sites commits an intrusion upon seclusion).

Samba (again) tries to avoid this conclusion by attacking a counterfactual narrative in which Plaintiffs only alleged the interception of IP addresses and user identifiers. Mot. at 19. But Samba cannot cast off Plaintiffs' allegations that it intercepted their private video-viewing data, profiled them, and sold these profiles to third parties simply because it knows these facts doom its Motion.

Samba's citation to cases involving the situation it wishes it was confronted with does not magically transform Plaintiffs' allegations either. Samba's invasive profiling scheme is simply not analogous to the collection of pet store preferences (*Popa*, 153 F.4th at 791), pizza orders (*Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024)), tire purchases (*Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024)), hotel bookings (*King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-CV-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025)), retail purchases (*Esparza v. Kohl's, Inc.,* 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024)), or LinkedIn profile URLs (*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)) from a singular website. Nor is this a case about only the collection of user and device identifiers. *See* Mot. at 19-20 (citing *Peter Dawidzik v. Tesla, Inc.*, Case No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (involving only IP address and user identifiers); *Brushfire Records*, 2025 WL 3692144, at *7 (same)*; Culligan Int'l Co.*, Case No. 25-cv-00225, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) (same); *In re Zynga Privacy Litig.*, 750 F.3d 1098 at 1106 (9th Cir. 2014) (data breach involving only "identification and address information")). And it also is not a case about commingling data lawfully collected through its own services. *See* Mot. at 20 (citing *Hubbard v. Google LLC*, No. 19-CV-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024)). Samba's widespread

collection of unsuspecting consumers' private video-viewing habits—and its creation and disclosure of identifiable user profiles containing this private data—stands in stark contrast to these examples. *See also Harris*, 2026 WL 247875, at *2 (distinguishing single website session replay cases from those involving "tracking" and "dissemination" of data).

***Highly Offensive.*** As Samba's own authority notes, there is no "sky-high standard of egregiousness." *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019). Courts routinely find the secret collection, harvesting, and profiling of individuals based on their private data sufficiently offensive to defeat a motion to dismiss. *Id.* at 1031-37 (finding the collection and harvesting of children's behavioral data from online games through embedded technology sufficient to allege privacy claims); *see also Facebook Tracking*, 956 F.3d at 604-06 (finding user profiling highly offensive); *Gabrielli*, 2025 WL 1939957, at *10 (refusing to conclude as a matter of law that the collection of IP addresses and browsing history is not highly offensive); *Riganian*, 791 F. Supp. 3d at 1087-88 (recognizing "the tracking of individuals' activity" on third party sites to "generate uniquely identifying profiles" is a highly offensive invasion of privacy).

Samba's reliance on cases involving only addressing information (Mot. at 21 citing *Dawidzik*, 2025 WL 3786963, at *5 (IP addresses and identifiers); *Morilha,* 2024 WL 5205542, at *4 (IP addresses and geolocation data)), or entities' collection or commingling of data from their own services (Mot. at 21 (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020); *Hubbard*, 2024 WL 3302066, at *7)) says nothing about whether Samba's conduct here is highly offensive. Nor does *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), a decade-old decision, in which plaintiffs sought to hold Apple liable for third party software embedded in non-Apple apps.

**D. Plaintiffs' CIPA § 631 Claim Should Be Sustained[6]**

A company violates California Invasion of Privacy Act ("CIPA") Section 631(a) when it: (1)

[6] Samba attempts to paint a picture of CIPA as a "total mess" when applied to "new technologies," by citing to *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) (Chabria, J.). But this single case stands in stark contrast to over a decade of well-established case law applying CIPA to internet communications. *See In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (finding "the plain language of [CIPA] is broad enough to

wiretaps "any telegraph or telephone wire, line, cable, or instrument;" (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication;" (3) "uses, or attempts to use . . . any information so obtained;" or (4) "aids, agrees with, employs, or conspires" to do any of the above. *See* Cal. Penal Code § 631(a). Plaintiffs allege that Samba violated clauses (2)-(4) of Section 631(a) by intercepting their video-viewing history and identifying information (¶¶ 94-118) and packaging that data into uniquely identifiable user profiles for sale. ¶¶ 119-132. Several courts have found this conduct violates these provisions. *See Riganian*, 791 F. Supp. 3d at 1091-92 (violation of second clause of Section 631(a) sufficiently alleged based on similar identity profiling practice); *Krzyzek v. OpenX Techs., Inc.*, No. 25-CV-05588, 2026 WL 206855, at *6 (N.D. Cal. Jan. 27, 2026) (violations of second, third, and fourth clauses sufficiently alleged based on detailed tracking and user profiling without users' consent); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1228 (C.D. Cal. 2024) (finding violation of third clause established where defendant provides the data to third party "for 'profit'"); *M.H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (finding violation of fourth clause established where defendant "transmit[s] a user's website communications to third-party companies to facilitate ad retargeting").

Samba's contention that Plaintiffs cannot satisfy CIPA's "contents" requirement because they only allege it intercepted their "identifying information" such as "IP addresses" and "unique device identifiers" ignores Plaintiffs' well-pled allegations as described above. Mot. at 23. The Complaint clearly alleges that Samba intercepts—not just identifying information—but video-viewing activity that courts routinely find constitutes "contents" under CIPA. *See* Section II; *see also, e.g., Mata v. Zillow Grp., Inc.*, No. 24-CV-01095, 2024 WL 5161955, at *5 (S.D. Cal. Dec. 18, 2024) (finding "names of the videos [] watched" constitute "contents"); *Riganian*, 791 F. Supp. 3d at 1092 (sustaining Section 631 claim where the identifying information and behavioral data together constitute "intercepted content"). The cases Samba cites—solely involving addressing data that was not accompanied by any content (e.g., video data)—are clearly inapposite. *See* Mot. at 23-24 (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir.

---

encompass email" as early as 2013); *see also* Sections IV.D-F. Nor does the rule of lenity apply here (Mot. at 22 n.4), where CIPA's "express language" contains no "egregious ambiguity and uncertainty." *See Riganian*, 791 F. Supp. 3d at 1094.

2014) (involving "basic identification and address information"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (plaintiffs conceded "IP addresses, locations, browser types, and operating systems" at issue were not "content[s]"); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (identifiers, browser information, and OS information alone were not contents)).

Samba also mischaracterizes Plaintiffs' allegations for the "in-transit" element as "parroting" "buzzwords" from the statute. Mot. at 24. This argument ignores the concrete facts alleged by Plaintiffs. *See* ¶¶ 102, 105, 106, 168, 225 (alleging specifically that Samba intercepted this data "in real time," "in just a few seconds," "prior to or at the same time" it reaches the "intended recipient"); ¶¶ 17, 25, 33, 41, 49, 57, 65, 73 (alleging Samba intercepted each Plaintiff's data in real time); *see also Krzyzek*, 2026 WL 206855, at *7 (similar allegations that pixel intercepted data "in transit" and "within seconds" of a user's "browsing activities" sufficient to establish the element); *Riganian*, 791 F. Supp. 3d at 1092 (plaintiffs plausibly alleged interception took place "before the communications are received" and "completely loaded" by the intended recipient). It is unclear what else Samba thinks is required. *See Riganian*, 791 F. Supp. 3d at 1092 (explaining "how the challenged technology and processes actually work" is more appropriately addressed "at summary judgment"); *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (denying request for specifics on how the technology "actually work[s]" "in the absence of discovery").

Samba's rewriting of Plaintiffs' allegations does not save its interception argument either. Contrary to its assertion that Plaintiffs allege data is only "processed upon being stored and after transmission" (Mot. at 24 (citing ¶ 111)), the SAC alleges Samba's technology intercepts and operates on Plaintiffs' data ***immediately*** and funnels this into its existing Identity Graph and user profiles. ¶¶ 105-106, 111. Paragraph 111 merely describes that Samba ***later*** stores this data on its own server to create additional data products, including audiences and data panels. ¶ 111. These follow-on bad acts do not change that the initial interception and use happen while the communications are in transit. Samba's reliance on the two cases it cites is accordingly misplaced, as they involved plaintiffs who actually failed to plead the in-transit requirement. *See* Mot. at 24 (citing *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (plaintiffs presented their "in transit" theory in briefing but not "in their

complaints"); *Crano v. Sojern, Inc.*, No. 3:25-CV-02600, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (plaintiff pled communications were "re-direct[ed]" from "different sources" and processed only after storage)).

Finally, Samba's argument that Plaintiffs' claims under Section 631's third and fourth clauses fail because they have not alleged a predicate interception fails for the same reasons. Plaintiffs allege an interception of the contents of their electronic communications while in transit, as well as that Samba uses this data, and aids and abets third parties' use of this data. *See* Section IV.D.[7] This is more than sufficient.

**E. Plaintiffs' CIPA § 632 Claim Should Be Sustained**

Samba's only challenge to Plaintiffs' CIPA Section 632 claim is that it did not intercept "confidential" communications for which Plaintiffs maintain a reasonable expectation of privacy. Mot. 24-25. This is false, as already explained in Section IV.C. Numerous courts have specifically held in the context of Section 632 that individuals have an expectation not to have their private online communications—including identifying information and video-viewing activity—intercepted and compiled into "comprehensive profile[s]." *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023) (sustaining Section 632 claim against TikTok based on similar technology that collects users' identifying information and video-viewing data to create user profiles); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (finding "personally identifiable browsing history" is sufficiently confidential under Section 632); *see also Vizio*, 238 F. Supp. 3d at 1232 (recognizing a reasonable expectation of privacy in "video viewing history").

Samba's attempt to bolster its argument by relying on a non-existent "presumption" that internet communications are not private fails. Mot. at 24-25. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Griffith*, 697 F. Supp. 3d at 971 (same); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (same). Even if the Court were to consider this presumption, Plaintiffs have rebutted it by alleging that Samba intercepted objectively private video-

[7] Samba's cases are therefore distinguishable because they only dismissed the claim after finding there was no interception. *See* Mot. at 24 (citing *In re Google Assistant Privacy Litig*, 457 F. Supp. 3d at 827 (dismissing claim for failing to allege an interception); *Crano*, 2025 WL 2689267, at *7 (same)).

viewing history data. *See Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024) (finding presumption rebutted where defendant intercepts video-viewing history).

The authority Samba relies on does not compel dismissal of this claim. *See* Mot. at 24-25. *In re Meta Pixel Healthcare Litig.* did not limit "confidential" communications to only certain types of internet communications but merely noted that the medical information at issue in that case was confidential. 647 F. Supp. 3d 788 at 799 (N.D. Cal. 2022). *King v. Hard Rock Cafe Int'l (USA), Inc.* is inapposite as, unlike here, it involved only "vague[]" allegations about non-descript data collected from a single hotel-booking website. 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025).

**F. CIPA §§ 638.50 and 638.51 Apply to the Technology at Issue**

Samba's argument that Sections 638.50 and 638.51 do not apply to the interception of internet communications has been repeatedly rejected by courts in this circuit. Mot. at 25; *Harris*, 2026 WL 247875, at *3 ("The overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA."); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding software that intercepts users' IP addresses is a pen register); *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557, 2025 WL 2243615, at *6 (N.D. Cal. Aug. 6, 2025) (holding Meta Pixel, which operates similarly to Samba's technology, constitutes a pen register); *Riganian*, 791 F. Supp. 3d at 1092-94 (finding JavaScript code that tracks users' name, email, and phone number is a pen register).

Samba's invocation of Section 638.52(c) and 638.52(d)(1)[8] (Mot. at 25-26) is irrelevant, because those are separate sections that "merely list[] requirements relating to a particular type of pen register: one that is installed on a telephone line," which is not at issue here. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024). That the legislature found it appropriate to limit one type of pen register in Section 638.52 cannot—and does not—"alter the statutory definition of a pen register stated in § 638.50(b)." *Id.*; *see also Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (rejecting the same argument based on Section 638.52 because the definitions in Section 638.50 refer to "device[s] or process[es]" which are intentionally broader); *Conohan v. Rad Power Bikes Inc.*, No. CV

[8] Samba refers to them as Section 638.32(c) and 638.32(d)(1), respectively.

25-0106, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (rejecting reliance on Section 629.51 to limit Section 638.51 to just telephone lines). Indeed, Samba's position finds no support in case law, and it could only dig up two 40-year-old cases that merely explain what "pen register" includes, not what it *excludes*, in non-CIPA contexts. *See* Mot. at 25 (citing *Smith v. Maryland*, 442 U.S. 735 (1979); *United States v. New York Tel. Co.*, 434 U.S. 159 (1977)).

Samba's legislative history argument proves Plaintiffs' point. *See* Mot. at 26. The legislature's adoption of a broader language—i.e. to capture any "device or process" that records addressing information from an "electronic communication"—while knowing that pen registers for "telephone line[s]" exist, confirms that it intended to include more than that one use case. *See* S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess. (Cal. June 16, 2015) at 10 (choosing to define terms more broadly in recognition of the "age of rapidly changing technology"); *id*. at 16 (explaining pen registers and trap or trace devices "track which people . . . are communicating with one another and at what times"); *see also Gabrielli*, 2025 WL 1939957, at *11-12 (rejecting the same legislative history argument as here).[9]

Samba's passing suggestion that its interception of "contents" covered by Section 631 absolves its Section 638 violations makes no sense. This is in essence advocating for a loophole where violating both provisions is a way out of CIPA liability. Mot. at 26. Courts do not accept this reading. *Meta Pixel Tax Filing*, 2025 WL 2243615, at *5 (rejecting the same "loophole" argument as "troubling" given it would permit "unauthorized pen register" and noting courts have "unsurprising[ly]" permitted both claims at the same time); *see also Riganian*, 791 F. Supp. 3d at 1092-94 (allowing Section 631(a) and Section 638.51 claims to proceed concurrently); *Gabrielli*, 2025 WL 1939957, at *11-12 (same). Indeed, if Samba were correct, this exception would be on the enumerated list that is part of the statute. *See* Cal. Penal Code § 638.51(b) (listing exceptions). Its omission confirms the exact opposite. The legislative history further reflects this, showing that CIPA § 638.51's use of the phrase "but not the contents" was only intended to

[9] Samba's footnote reference to the federal Pen Register Act has no merit. Mot. at 26 n.5. To the extent Section 638.50 was modeled after the Pen Register Act, it did so after the "modernized" version that expressly removed the limitation to transmissions over "telephone line." *See In re U.S. for Ords. (1) Authorizing Use of Pen Regs. & Trap & Trace Devices*, 515 F. Supp. 2d 325, 330 (E.D.N.Y. 2007).

make clear that a court order granting permission to use a pen register does *not* also include the *right* to intercept "content[s]" because the interception of contents is subject to a "much higher standard of scrutiny" and "higher standard of probable cause." *See* S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess. (Cal. June 16, 2015) at 11. In other words, the legislature did not intend to convey immunity to a defendant who is intercepting *both* addressing information and contents. *See id*.

While Samba cites two decisions by a single federal judge that held otherwise (*Kishnani v. Royal Caribbean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. Jun. 24, 2025) and *Mitchener v. Curiositystream, Inc.*, Case No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025)), these decisions, respectfully, incorrectly adopt a defendant-created escape-valve without appreciating what such an exception does to allow conduct *worse* than what their own holdings say the statute prohibits.

**G. Plaintiffs' CDAFA Claim Should Be Sustained**

CDAFA is a comprehensive statute designed to prevent "tampering, interference, damage, and unauthorized access" to "computer data and computer systems." *See* Cal. Penal Code § 502(a). Samba challenges only whether Plaintiffs have adequately alleged damage of loss, i.e., CDAFA standing.

CDAFA does not define "damage" or "loss," nor does it set a monetary threshold. Courts in the Ninth Circuit have recognized a plaintiff meets this requirement whenever an entity obtains "unjust profits" from data it misappropriated. *See, e.g., Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (finding that a "disgorgement theory" can satisfy CDAFA standing); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109-10 (N.D. Cal. 2025) (same); *Brown*, 685 F.Supp.3d at 940 (recognizing plaintiffs have a "stake in the value of their misappropriated data"); *Facebook Tracking*, 956 F.3d at 600 (under California law an individual has a "stake in unjustly earned profits" from their misappropriated data); Mot. at 27 (citing *Lineberry v. AddShopper, Inc.*, Case No. 23-cv-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (noting "the plaintiffs may allege damage or loss from the misappropriation of their data" as a theory for CDAFA standing)).[10] Here, Plaintiffs allege

---

[10] The court in *Lineberry* found CDAFA standing lacking because the plaintiff failed to show "how or why" their data was misappropriated, such as by alleging a "market" for the data. *Id*. at *2. The SAC here

that Samba misappropriated their identifiable video-viewing history and sold access to this data to other third parties. *See* Section II. Accordingly, Plaintiffs maintain a "stake in [these] unjustly earned profits" and have CDAFA standing.

While Samba asserts that Plaintiffs must separately show they were "deprived of control" over their personal data and "intended to sell their information" (Mot. at 27), the cases it cites for these requirements were evaluating *separate* theories of damage or loss (e.g., diminution in value or invasion of privacy), not whether unjust profits that rightfully belong to Plaintiffs satisfy CDAFA standing. *See* Mot. at 27 (citing *Hernandez-Silva v. Infrastructure, Inc.*, Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025) (considering diminution in value theory); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) (same); *Doe v. County of Santa Clara*, Case No. 23-cv-04411-WHO, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (same); *Heiting*, 709 F. Supp. 3d at 1020 (evaluating whether "privacy invasions" themselves can support CDAFA standing, not unjust profits)).[11] Although Plaintiffs would meet this requirement because they were deprived of control over their data by Samba's unauthorized collection and sale, the Court does not need to even reach this question because Plaintiffs have sufficiently alleged standing under a disgorgement theory of liability. *See Facebook Tracking*, 956 F.3d at 600 (holding an individual has a "stake in unjustly earned profits []regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable").

Samba's separate claim that its ill-gotten profits are not a basis for CDAFA standing is unsupported. No case it cites stands for this proposition. *See* Mot. at 27-28 (citing *Gutierrez v. Converse Inc.,* Case No. 2:23-cv-06547, 2023 WL 8939221, at *5 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim where plaintiff argued they were "not required" to plead damages at all); *Hazel v. Prudential Fin., Inc.,* No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (evaluating UCL's separate loss of "money or property" requirement which is "narrower" than CDAFA standing); *In re*

---

is replete with allegations confirming Samba packaged and sold Plaintiffs data and, not only that a market exists, but that Samba is the largest participant in this market. *See* Section II.

[11] *Shah v. Capital One Fin. Corp.* is also distinguishable as the plaintiffs in that case, unlike Plaintiffs here, did not show a stake in the unjust profits. 768 F.Supp.3d 1033, 1048 (N.D. Cal. Mar. 3, 2025).

*Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 804 (N.D. Cal. 2019) (same)). And its related suggestion that unjust profits are not enough unless Plaintiffs also themselves "lost money" is inconsistent with Ninth Circuit precedent. *See Facebook Tracking*, 956 F.3d at 600 (rejecting suggestion that disgorgement of unjust profits requires plaintiff to have "directly expend his or her own financial resources").

**H. Plaintiffs' ECPA Claim Should Be Sustained**

To establish their Electronic Communications Privacy Act ("ECPA") claim, Plaintiffs need to show Samba (1) intentionally (2) intercepted (3) the contents of (4) Plaintiffs' electronic communications (5) using a device. *See Doe v. Meta Platforms*, Inc., 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023).

**Party Exemption.** Samba is not a party to the communications at issue. Mot. at 28-29. Plaintiffs allege that Samba is a third party interloper who surreptitiously intercepts Plaintiffs' communications with online service providers (e.g., Hulu and Amazon) through its ACR technology embedded in their Smart TVs. ¶¶ 1-2, 152, 201, 271, 275. It is absurd to suggest Samba could have been the "intended recipient of those transmissions" (Mot. at 29) where Plaintiffs did not even know of its existence. *See Facebook Tracking*, 956 F.3d 589, 607 (9th Cir. 2020) ("[E]ntities that surreptitiously duplicate transmissions between two parties are not parties to communications within the meaning of the [Wiretap] Act."); *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *15 (N.D. Cal. July 22, 2025) (rejecting a similar third party tracker owner's "attempt to invoke the party-exception").[12]

The cases Samba cites prove this exact point—they find the party exemption applies to the owner and operator of the single website where data is intercepted, not to a secret eavesdropper who listens in communications with numerous online services. *Doe v. Talkiatry Mgmt. Servs., LLC*, Case No. 5:25-cv-00781, 2025 WL 3190813, at *1, 4 (C.D. Cal. Oct. 1, 2025) (defendant was the owner and operator of the website at issue); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1115, 1118 (S.D. Cal. 2023) (same).

In any event, Plaintiffs have sufficiently established the crime-tort exception which defeats any

[12] To be clear, nothing in Plaintiffs' Complaint even remotely suggests Samba is the "intended recipient." *See* Mot. at 29 (citing ¶¶ 104-111). Plaintiffs clearly alleged that Samba "intercepts" data by "listening and recognizing content being viewed on the Smart TV" (¶¶ 104-111) and by eavesdropping communications that Plaintiffs intended for their video-content providers. ¶¶ 237, 271, 275.

application of the party exemption. *See Smith*, 2025 WL 2210002, at *4.

**Crime-Tort Exception.** While the ECPA is a one-party consent statute, this rule does not apply where "the purpose for the interception" was "criminal or tortious." *See Smith*, 2025 WL 2210002, at *4. This exception applies where, as here, the defendant had "'an independent prohibited purpose' beyond the act of interception itself," such as to disclose the intercepted data to third parties, use it "for advertising," or compile comprehensive user files. *See id*. at *4-5; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (allegations that "Google intercepted [plaintiffs'] communications for the purpose of associating their data with preexisting user profiles" sufficient to invoke crime-tort exception); *Riganian*, 791 F. Supp. 3d at 1090-91 (same); *Krzyzek*, 2026 WL 206855, at *8 (same); *see also* Section II.

Contrary to Samba's suggestion, the existence of a financial motivation for breaking the law is not "a get-out-of-liability free card," as it "does not mean that the act lacked a criminal or a tortious purpose." *See Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *6 (N.D. Ill. 2025) ("That's like saying that a bank robber's purpose was not to commit a crime—it was to make money."). Indeed, "the majority" of courts have "held a monetary purpose does not insulate a party from liability under the Wiretap Act." *Smith*, 2025 WL 2210002, at *5; *see also Riganian*, 791 F. Supp. 3d at 1090 ("[C]ommitting a tort and seeking a profit are not mutually exclusive[.]"); *Krzyzek*, 2026 WL 206855, at *8 ("[B]eing primarily motivated by profit does not render the crime-tort exception inapplicable."); *Semien v. Pubmatic Inc.*, No. 25-CV-03164, 2026 WL 216333, at *10 (N.D. Cal. Jan. 27, 2026) (same).[13]

The cases Samba cites involve a failure to allege an independent tortious purpose separate from the alleged interception. *See* Mot. at 29 (citing *Doe v. Talkiatry Mgmt. Servs., LLC*, No. 5:25-CV-00781, 2025 WL 3190813, at *5 (C.D. Cal. Oct. 1, 2025) (plaintiff relied on the "illegal interception" itself as the basis for the exception, but it was not an "independent[]" tortious purpose); *Lakes v. Ubisoft*, 777 F. Supp.3d 1047, 1057-58 (N.D. Cal. 2025) (no allegation of independent tortious purpose other than the interception itself)). The remaining case found no tortious purpose where the website owner collected data from its own website, as it is the intended recipient. Mot. at 29 (citing *Saedi v. SPD Swiss Precision*

[13] *Roe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) should be disregarded because even if Samba's "primary motivation is to make money," that cannot be separated from its criminal or tortious purpose because the only way for it to "make money" is by harming people.

*Diagnostics GmbH*, No. 2:24-cv-06525, 2025 WL 1141168, at *6, 12 (C.D. Cal. Feb. 27, 2025) (no criminal or tortious purpose where the defendant was the "intended" recipient of the data)).

**Contents.** For the same reasons set forth in Section IV.D, Samba's challenge to the "contents" element of Plaintiffs' ECPA claim fails. Mot. at 28; *see also Semien v. Pubmatic Inc.*, No. 25-CV-03164, 2026 WL 216333, at *8 n.7 (N.D. Cal. Jan. 27, 2026) ("Courts have found that the 'contents' of a communication under the ECPA and CIPA § 631(a) are the same."); *see also Yoon*, 2024 WL 5264041, at *5 (N.D. Cal. Dec. 30, 2024) ("[I]ntercepted URLs and the title of the video watched are contents because they provide 'significant information regarding the user's browsing history' and divulge 'a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform.").

**I. Plaintiffs Plausibly Allege UCL Claims**

***UCL Standing***. Recent authority confirms that Plaintiffs' "loss of [] personal information" or the diminution in its value constitute economic injury. *See Calhoun v. Google LLC*, 526 F.Supp.3d 605, 635-36 (N.D. Cal. 2021) ("California courts have also acknowledged that users have a property interest in their personal information."); *Brown v. Google LLC*, No. 20-CV-03664, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (citing *id.* at 636 ([T]he Ninth Circuit and a number of district courts. . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing.")); *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *7 (N.D. Cal. Aug. 23, 2024) (same) (citing cases)); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024-25 (N.D. Cal. 2024) ("If [personal] information is stolen or disseminated without their permission, its value may be diminished."); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information.").

While Samba cites a decade-and-a-half old decision to reach the opposite conclusion (*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011)), it fails to explain how this outdated case applies here, particularly where it is indisputable the data Samba collects has objective monetary value given that Samba's entire business model is to sell access to it. Indeed, in the sole other case it cites, *Libman v. Apple, Inc.*, No. 22-CV-07069-EJD, 2024 WL 4314791, at *18-19 (N.D. Cal. Sept. 26, 2024),

the court declined to find the value of data sufficient for UCL standing precisely because plaintiffs failed to "allege that someone else would have bought the data" that they alleged was wrongfully collected. The same is not true here, where Plaintiffs have alleged (and provided examples of) Samba's data sales. "[B]y obtaining Plaintiffs' data and selling it to advertisers," Samba has "'diminished' Plaintiffs' 'future property interest.'" *See Brown*, 2021 WL 6064009, at *15.

Separately, Plaintiffs have UCL standing because they allege they would not have purchased their Samba TV-enabled televisions had they known Samba would secretly monitor, collect, and disclose their identifiable video-viewing data. ¶ 292; *see also Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854-55 (N.D. Cal. 2022) (finding the court need not address whether data has value because plaintiffs' allegation that they would not have "paid . . . subscription fees" if they had known of the unlawful data sharing was sufficient for UCL standing); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,* 601 F. Supp. 3d 625, 764 (C.D. Cal. 2022) ("[T]he Ninth Circuit has repeatedly held that when a consumer alleges that she would not have purchased property, or would have paid less for it . . . the consumer has plausibly alleged an injury-in-fact" under the UCL) (internal citation omitted).

Samba's reliance on *Perez* and *Libman* as purportedly rejecting this theory of standing is misplaced. *See* Mot. at 31 (citing *Perez v. Romantix Online, Inc.*, No. 25-CV-02465-NW, 2025 WL 3085786, at *2-3 (N.D. Cal. Oct. 27, 2025); *Libman*, 2024 WL 4314791, at *18)). Those cases involved the purchase of physical products, where the allegedly wrongful data collection only occurred through separate apps or websites *after* the transactions, making the plaintiffs' "would not have purchased" allegations implausible. Here, by contrast, Samba's technology is embedded in the physical device itself, never disclosed, and as alleged in the SAC, can never be fully disabled. *See* Section II.

***Unlawful Conduct.*** Samba's conduct is unlawful because it violates each of the laws described herein, as well as the CCPA and COPPA. *See In re Zoom Video Commc'ns Inc. Priv. Litig*., 525 F. Supp. 3d 1017, 1047 (N.D. Cal. 2021) (sustaining UCL claim based on violations of COPPA and other laws).[14]

---

[14] Samba cites *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 451 (N.D. Cal. 2017) and *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *15 (N.D. Cal. Dec. 3, 2013), which dismissed UCL claims for failure to allege unlawful conduct. *See* Mot. at 32-33. Because Plaintiffs allege several forms of unlawful conduct here, these cases are distinguishable.

Samba's claim that Plaintiffs rely on "threadbare recitals" of the CCPA[15] and COPPA is inconsistent with the SAC's allegations of Samba's representations that it and its "partners" do not identify children, and its collection of children's data without adequate disclosures and parental consent violates each of these laws. ¶¶ 141-148. These factual allegations are pled with "reasonable particularity" (Mot. at 32 (citing *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 n.10 (N.D. Cal. 2013)) and are not comparable to the allegations in *Argueta v. J.P. Morgan Chase*, 787 F. Supp. 2d 1099, 1107 (E.D. Cal. 2011) where plaintiffs failed to even identify the "predicate federal or state law."

Samba's separate claim that it did not violate COPPA because Plaintiffs fail to show it had actual knowledge it collected children's data is also baseless. *See* Mot. at 32. Under COPPA, Samba is "deemed to have actual knowledge" of consumers' ages because it "willfully disregard[ed]" their age in collecting and monetizing data from every member of the household no matter what. ¶ 147. And even if COPPA did not have this provision, the suggestion that Samba did not actually know it collected children's data cannot be reconciled with the fact it used COPPA seals of approval and made promises about what it allegedly did not do with the children's data it collected. ¶¶ 141-143. Both things simply cannot be true.

Finally, its claim that Plaintiffs do not expressly allege Plaintiff K.S.'s private data was collected while she was under 13 is a red herring. The SAC alleges that Samba "identif[ies] every individual member of a household—including children under the age of 13, like Plaintiff K.S. at the time her household first purchased a Samba TV-enabled television." ¶ 145. The only plausible reading of this allegation, combined with the allegations that Plaintiff K.S. "watches video-viewing content" on this device (¶¶ 69-74), is that Samba first began spying on her video-viewing behavior when she was under 13 years old.

***Unfair Conduct.*** Samba's collection, profiling, and disclosure of Plaintiffs' identifiable video-viewing data is "unfair" under either California's "tethering" test or "balancing" test because it violates California's public policy of protecting fundamental privacy rights and provides no utility or benefit to consumers whatsoever. *See Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2015 WL 1503429, at *9 (N.D. Cal. Apr. 1, 2015) (holding the misuse of plaintiffs' data violates the UCL unfair prong under the

[15] That the CCPA does not have a private right of action is irrelevant. See *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d at 1047 (sustaining unfair UCL claims based on laws lacking a private right of action).

tethering test); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1025 (same); *Chen v. Bank of Am., N.A.*, No. CV 19-6941-MWF-SK, 2019 WL 9633650, at *5 (C.D. Cal. Oct. 29, 2019) (balancing test satisfied where benefits are "de minimis or nonexistent"). Indeed, Samba's conduct is particularly unfair in light of Samba's repeated claims that it complies with COPPA and CCPA, uses only "opt-in" and "anonymized" data, and attempts to "maxim[ize] privacy." *See E.H. v. Meta Platforms, Inc.*, No. 23-CV-04784, 2024 WL 557728, at *6 (N.D. Cal. Feb. 12, 2024) (finding the defendant's interception of data "unfair" under UCL as it was inconsistent with "its own" stated policies); *see also* ¶¶ 133-135.

Samba can try to pretend that Plaintiffs' allegations are conclusory and that it is unclear what conduct is allegedly unfair, but this crumbles upon a plain reading of the SAC. ¶ 285 (describing each of the "unfair" practices described above); ¶ 148 (explaining Samba's representations about privacy compliance consistent with California law are unfair). Merely citing cases that actually failed to allege any unfair conduct does not make the same true here. *See* Mot. at 33 (citing *Goddard v. Slickdeals, LLC*, Case No. 25-cv-06187-JSC, 2025 WL 2969722, at *7 (N.D. Cal. Oct. 21, 2025) (no identification of what "actions were unfair"); *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 802 (C.D. Cal. 2021) (same)).

### J. Plaintiffs Plausibly Allege Claims for Unjust Enrichment

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).[16] Here, Plaintiffs allege Samba obtained their identifiable video-viewing data without authorization and packaged that data as identifiable user profiles that it offered to third parties for profit. These ill-gotten profits rightfully belong to Plaintiffs and the Classes. *See Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1009 (N.D. Cal. 2024) (sustaining unjust enrichment claim premised on defendants receipt and/or sale of plaintiffs' data); *Riganian*, 791 F. Supp. 3d at 1095 (finding unjust enrichment claim sufficiently alleged where defendant collected plaintiffs' "internet activity" and identifying information to create a "surveillance ecosystem" "at the heart of its revenue generation").

Samba's contention that these allegations remain vague ignores the changes to the SAC to clarify

[16] Samba's reliance on a singular case that held otherwise is inconsistent with this Ninth Circuit precedent. Mot. at 34 (citing *Perez,* 2025 WL 3085786, at *4). Plaintiffs agree injunctive relief is a remedy.

"what information Samba actually obtains about Plaintiffs." *DellaSala v. Samba TV, Inc.,* No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *6 (N.D. Cal. Oct. 30, 2025); *see* also Section II.

Its separate argument that plaintiffs fail to establish an inadequate legal remedy also fails. Plaintiffs *do allege* an inadequate remedy at law. *See* ¶¶ 229, 240, 252, 265, 293; *see also Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1023 (finding an allegation that "legal remedies are insufficient" is "generally enough"). This is consistent with several decisions that recognize legal damages are not sufficient to remedy privacy violations or continued misappropriation of one's data. *See Turner v. Apple, Inc.*, No. 5:20-CV-07495, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (allowing equitable claims based on "misappropriated data" because "legal damages do not cover the full value of the harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (sustaining unjust enrichment claim where "the injury [] is an invasion of privacy that can never be fully remedied through damages").

The cases Samba cites do not change this outcome. *See* Mot. at 34-35. *Wendover Productions, LLC v. PayPal Inc.*, No. 5:24-CV-09470, 2025 WL 3251667, at *5 (N.D. Cal. Nov. 21, 2025) dismissed unjust enrichment claims because the plaintiff had an express contract claim, which Plaintiffs have not alleged here. *Lair v. Bank of Am., N.A.*, No. 23-cv-01345-WLH, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024) and *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023)—two consumer protection cases—dismissed unjust enrichment claims because contract damages for overcharged fees, and actual damages for defective devices, respectively, would indisputably make the plaintiffs whole. The only case Samba cites actually involving privacy harms is also distinguishable because, there, the defendant could not misappropriate the data (which would warrant equitable relief) because it was already enjoined by an FTC order. *See Hubbard*, 2024 WL 3302066, at *5. No similar FTC order exists here and there is nothing prohibiting Samba's continued misappropriation and monetization of Plaintiffs' private, identifiable data.

## **CONCLUSION**

Samba's Motion should be denied for each of the reasons described herein. Alternatively, given the strength of the allegations, the Court should grant Plaintiffs leave to amend should it identify any deficiency.

Dated: February 13, 2026

/s/ Christian Levis

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
Yuanchen Lu (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

*Attorneys for Plaintiffs and the Proposed Class*