Matthew E. Lewitz (SBN: 325379)
mlewitz@cozen.com
Brett N. Taylor (SBN: 274400)
btaylor@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394.4700

*Attorneys for Defendant*
*Samba TV, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE DELLASALLA, BOB WARDEN, VINCE TOPHONEY, DAVID GOODRICH, KENNETH HARRIS, DUANE LEDWARD, DEREK SCHUETTE, and DEREK SCHUETTE, as guardian of K.S., a minor, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

SAMBA TV, INC.,

Defendant.

Case No.: 3:25-cv-03470-JSC

**DEFENDANT SAMBA TV, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Date: March 19, 2026
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Jacqueline Scott Corley

Complaint Filed: April 18, 2025
SAC Filed: December 4, 2025

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 7

II. ARGUMENT ........ 7

A. Plaintiffs Lack Article III Standing Because They Have No Injury in Fact ........ 7

B. Plaintiffs Have No Actionable Claims Against Samba ........ 9

1. The Complaint Fails to State a Common Law Claim for Intrusion Upon Seclusion or a Constitutional Claim for Invasion of Privacy ........ 9

2. Plaintiffs Fail to Adequately Plead Their CIPA Claims ........ 12

i. Plaintiffs Fail to State a Claim Under Penal Code Section 631 ........ 12

ii. Plaintiffs Fail to State a Claim Under Penal Code Section 632 ........ 14

iii. Plaintiffs Fail to State a Trap and Trace Claim Under Penal Code Section 638.50 and 638.51 ........ 14

3. The Complaint Fails to State a CDAFA Claim ........ 16

4. Plaintiffs Fail to State a Federal Wiretap Act Claim ........ 17

5. Plaintiffs Fail to State a Claim Under the UCL ........ 18

6. Plaintiffs Equitable Relief Claims Fail ........ 20

III. CONCLUSION ........ 21

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274 (C.D. Cal. 2024) ..... 9

*Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023) ..... 12, 16, 18

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 12, 18

*Cody v. Ring LLC*, 718 F.Supp.3d 993 (N.D. Cal. 2024) ..... 15

*Crano v. Sojern, Inc.*, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ..... 13, 17, 20

*Dawidzik v. Tesla, Inc.*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ..... 7, 8

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ..... 7, 8

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp.3d 767 (N.D. Cal. 2019) ..... 16

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ..... *passim*

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ..... 12

*Gonzales v. Uber Tech., Inc.*, 305 F.Supp.3d 1078 (N.D. Cal. 2018) ..... *passim*

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) ..... 11

*Graham v. Noom, Inc.*, 533 F.Supp.3d 823 (N.D. Cal. 2021) ..... 13, 17

*Griffith v. TikTok, Inc.*, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ..... 10, 14

*Gutierrez v. Converse Inc.*, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ..... 16

*Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ..... 16

*Heiting v. Taro Pharm., Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) .......... 13

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 18

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 20, 21

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 10

*Krzyzek v. OpenX Tech., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 12

*Lair v. Bank of Am., N.A.*,
No. 23-cv-01345-WLH, 2024 WL 943945 (C.D. Cal. Jan. 26, 2024) .......... 20

*Lakes v. Ubisoft*,
777 F.Supp.3d 1047 (N.D. Cal. 2025) .......... 18

*Lakin v. Watkins Associated Indus.*,
863 P.2d 179 (Cal. 1993) .......... 14

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .......... 19

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F.Supp.3d 1072 (C.D. Cal. 2023) .......... 15

*Lineberry v. Addshoppers, Inc.*,
2025 WL 1533136 (N.D. Cal. May 29, 2025) .......... 18

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 7, 8, 9

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 18

*Mata v. Zillow Group, Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 12, 13

*McDonald v. Kiloo ApS*,
385 F.Supp.3d 1022 (N.D. Cal. 2019) .......... 11

*Mejia v. Reed*,
74 P.3d 166 (Cal. 2003) .......... 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp.3d 778 (N.D. Cal. 2022) .......... 14

*In re Meta Tax Filings Cases*,
724 F.Supp.3d 987 (N.D. Cal. 2024) .......... 18

*Miller v. Ford Motor Co.*,
620 F.Supp.3d 1045 (E.D. Cal. 2022) ........................................ 12

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........................................ 16

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........................................ 19

*Popa v. Microsoft*,
153 F.4th 784 (9th Cir. 2025) ........................................ 7, 8, 10, 11

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........................................ 10, 11

*Pruchnicki v. Envision Healthcare Corp.*,
845 F.App'x 613 (9th Cir. 2021) ........................................ 19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F.Supp.3d 1075 (N.D. Cal. 2025) ........................................ 10, 13

*Rodriguez v. Aquatic Sales Solutions*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........................................ 13

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........................................ 8, 11, 16

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ........................................ 18

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ........................................ 17

*Schallert v. Orkin LLC*,
2025 WL 4332757 (L.A. Super. Ct. Dec. 15, 2025) ........................................ 15

*Scharon v. Paramount Global*,
2025 WL 2996812 (L.A. Super. Ct. Oct. 3, 2025) ........................................ 15

*Seldin v. HSN, Inc.*,
2018 WL 3570308 (S.D. Cal. July 25, 2018) ........................................ 19

*Stark v. Patreon*,
635 F.Supp.3d 841 (N.D. Cal. 2022) ........................................ 20

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437 (9th Cir. June 18, 2025) ........................................ 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ 7, 8

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........................................ 11, 16

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .......... 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 7512 (N.D. Cal. 2023) .......... 12

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .......... 7, 8

*Wendover Prods., LLC v. PayPal Inc.*,
2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) .......... 20

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
601 F.Supp.3d 625 (C.D. Cal. 2022) .......... 19

**Statutes**

Cal. Penal Code § 631(a) .......... 12, 13, 15, 17

Cal. Penal Code § 632.01 .......... 15

COPPA .......... 20

Federal Wiretap Act .......... 7, 17

Penal Code Section 631 .......... 12

Penal Code Section 638.50 and 638.51 .......... 14, 16

Penal Code § 638.52(c)-(d) .......... 15

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

Plaintiffs' Opposition underscores the SAC's fundamental defects. Plaintiffs fail to meaningfully dispute their lack of standing and cannot sustain their claims because they do not allege any concrete injury, invasion, or harm connected to the alleged data collection. Their reliance on broad-based categories of private information that are not protected as a matter of law fails to push their claims out of the starting gate. Further, Plaintiffs' Opposition does not breathe life into their deficiently pled statutory and common law claims. As set forth below, Plaintiffs' SAC should be dismissed in its entirety.

# II. ARGUMENT

## A. Plaintiffs Lack Article III Standing Because They Have No Injury in Fact

Plaintiffs do not establish a "'concrete' harm sufficient to confer Article III standing" in the absence of any actionable privacy intrusion. (*See infra* § II.B.2.) Nor do Plaintiffs' references to the Federal Wiretap Act and CIPA manufacture the existence of an injury-in-fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021). The Ninth Circuit rejected this "'broad theory' of 'free-roaming privacy right[s,]'" particularly where there are no accompanying factual allegations specific to the plaintiff. *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29, 2025) (quoting *Popa v. Microsoft*, 153 F.4th 784, 792 (9th Cir. 2025)); *infra* § II.B.3; *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) ("[T]o say that a privacy injury *can* be concrete is not to say that the alleged privacy injury here *is* concrete.").

Plaintiffs' reliance on pre-*TransUnion* cases—*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), and *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204 (C.D. Cal. 2017) (Opp. at 4-5)—is misplaced not only because those cases present factually distinct allegations, but also because they have waned in significance after *Popa* and *TransUnion*. *See Popa*, 153 F.4th at 794 ("Despite the broad statements made [in *Eichenberger* and *In re Facebook*], those decisions accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries[.]"); *Dawidzik*, 2025 WL 3786963 at *3-4 (collecting cases in support of *Popa*'s caution that *In re*

*Facebook* did not "greenlight a per se rule for privacy statutes"). The *Popa* court expressly stated that "even though our analysis in *Eichenberger* and *In re Facebook* might have arguably offered at the time some support for the position that Popa [and Plaintiffs] now advance[], that analysis finds no support in *TransUnion*" where "the Court identified discrete privacy torts (not a general right to privacy) and evaluated plaintiffs' claims based on their similarity to the harm protected by the [privacy] tort." 153 F.4th at 794.[1]

Plaintiffs' allegations regarding undefined "video-viewing data" and routine electronic information collected fall far short of "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 786, 791. "To survive a motion to dismiss, a plaintiff must identify the specific personal information [she] disclosed that implicates a protectable privacy interest." *Maghoney*, 2026 WL 497402 at *5 (internal quotation marks and citation omitted); *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *1, *3 (N.D. Cal. Oct. 10, 2023) ("Because Plaintiff has failed to allege *any* information about the contents . . . Plaintiff has failed to establish any sort of privacy injury.") (emphasis in original). Plaintiff has not (and cannot) establish this generic alleged collection rises to a comparable level of "embarrassing, invasive, or otherwise private information," sufficient to demonstrate a concrete injury, as further evidenced by many district courts refusing to extend *In re Facebook*'s factual standing analysis to similarly situated cases. *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *2, *7 (C.D. Cal. Dec. 15, 2025) (finding *In re Facebook* inapplicable to alleged collection of plaintiff's "name, contact information, location data, browsing behavior, device fingerprints, and interests"); *Dawidzik*, 2025 WL

---

[1] The allegations in *In re Facebook* make clear why "the individual circumstances giving rise to the plaintiffs' alleged injuries," were sufficient to satisfy standing there, but are not present here. (Opp. at 4, 6.) In *In re Facebook*, the plaintiffs alleged the continuous collection of users' online and offline data, notwithstanding Facebook's representation it would not collect the latter, by tracking their "browsing histories when they visit third-party websites" and "by correlating users' browsing history with users' personal Facebook profiles[,]" which profiles could include a user's employment history and political and religious affiliations. 956 F.3d at 598-99; *accord Vizio*, 238 F.Supp.3d at 1212 (allegations that software collected "up to 11 billion content 'viewing data points' along with detailed information about a consumer's digital identity" including "an individual's name" and "zip codes"); *infra* § II.B.2. The alleged collection of IP addresses, device identifiers, and "video viewing data" pales in comparison to the invasive and misleading collection of personal information at issue in *In re Facebook* and *Vizio*.

3786963 at *4; *Maghoney*, 2026 WL 497402 at *5 (finding intercepted "personal health-related search queries" insufficient to establish an intrusion sufficient for standing).

## B. Plaintiffs Have No Actionable Claims Against Samba

### 1. The Complaint Fails to State a Common Law Claim for Intrusion Upon Seclusion or a Constitutional Claim for Invasion of Privacy[2]

Instead of demonstrating that the allegedly tracked data constitutes sensitive, protectable information under California law, Plaintiffs rely on generalized analogies that fail upon closer examination. First, Plaintiffs rely on the existence of a statutory scheme that has already been found inapplicable to Samba, and that the Ninth Circuit has found insufficient to establish an injury where there is no personally identifiable information involved, as is the case here. Plaintiffs' citation to "VPPA's codified right to watch video in their homes without spying" has no bearing on whether there is a reasonable expectation of privacy, particularly where, as here, the Court has already ruled that the VPPA does not apply to Samba. (Opp. at 8-9; 10/30/25 Order, Dkt. No. 49.)

Next, Plaintiffs rely on cases where the information at issue was both highly sensitive in nature and collected in a manner extending "beyond the routine commercial behavior of collecting contact information for sending ads," but instead alleged a wholesale collection of information such that the company was able to create "a cradle-to-grave profile" notwithstanding specific representations to the plaintiffs it would not collect or disseminate such information. (Opp. at 9-10 (citing *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1088 (N.D. Cal. 2025); *In re Facebook*, 956 F.3d at 598-99).) Plaintiffs indiscriminately label their "video-viewing data," IP addresses, and user identifiers as sensitive "highly personalized profiles" that are "uniquely identifying" without addressing why these materials support a reasonable expectation of privacy. (Opp. at 9-10 (citing *Riganian*, 791 F.Supp.3d at 1083, 1085-87; *In re Facebook*, 956 F.3d at

---

[2] As further detailed in Samba's concurrently filed Reply in support of its Motion to Strike, Plaintiffs' common law claims (*i.e.*, intrusion upon seclusion, unjust enrichment, injunctive relief) based purportedly on California law only, and that are not predicated on the laws of the home states of putative class members, must be dismissed. *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024); *see also* Dkt No. 57.

604).) However, the alleged conduct at issue here doesn't measure up to the "cradle-to-grave profiles" created by collection of users' online and offline activity. (*See* Mot. at 18-20.)

In *Riganian*, the plaintiffs alleged that the defendants accumulated highly sensitive information, including their ***social security numbers***, driver license records, health diagnoses, financial vulnerabilities, and religious affiliation by tracking both their online and offline behavior. 791 F.Supp.3d at 1081-82. By contrast, the unremarkable nature of the information allegedly collected here is a far cry from rising to the level of those intimate details. *Compare Id.*, *with* SAC ¶¶ 6, 8, 14.

Plaintiffs' conclusory allegation of an "invasive profiling scheme," cannot bolster their innocuous allegations regarding collection of mere technical data in order to fabricate a reasonable expectation of privacy. (Opp. at 9.) When considering "the individual circumstances giving rise" to the plaintiffs' allegations, *Popa*, 153 F.4th at 794, Plaintiffs cannot establish "the amount and sensitivity of the data the defendants were allegedly collecting" is more akin to health and financial information rather than product purchases and preferences collected through a single vehicle. (SAC ¶¶ 17, 105; Opp. at 9); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1-2, *5 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) (collection from communications on one website was a "limited amount of data [that] stands in stark contrast to the 'significant' amounts of data collected in other cases") (collecting cases); *Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024) (allegations including "the collection of 'personally identifiable information, credit card information, and other sensitive data entered into text and/or search fields on the Goodyear website" found insufficient); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *1 (E.D. Cal. June 9, 2025) ("data intercepted . . . consists of guest records identifying . . . name, address, telephone number, credit card number, email address, ZIP code, and user-specific values contained in [the cookies]" was insufficient) (cleaned up); *contra Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *2-4 (C.D. Cal. Dec. 13, 2023) (sufficient allegations for intrusion upon seclusion claim based on purported collection from numerous websites such as those "related to personal health, sites involving sensitive financial information, religious websites . . . and even some government websites").

Because Plaintiffs do not maintain a reasonable expectation of privacy in this technical information, Plaintiffs' common law privacy claims cannot stand.[3]

Similarly, Plaintiffs cannot meet the "high bar" to make their intrusion claim actionable because they cannot establish the alleged collection was "highly offensive to a reasonable person." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (citation omitted); *In re Facebook*, 956 F.3d at 606. Plaintiffs cannot establish that collection of routine technical device identifiers—even if opportunistically characterized as a "profiling" scheme—is "highly offensive" or an afront to modern social norms sufficient to support these claims. *McDonald v. Kiloo ApS*, 385 F.Supp.3d 1022, 1027-28, 1035 (N.D. Cal. 2019) (noting "the context-specific nature of the privacy inquiry" in finding allegations sufficient in part due to the "detailed and specific allegations about why these intrusions . . . would have been highly offensive to the reasonable person" based on "multiple sources, including sports, studies, surveys, case law and secondary legal materials"); *Gonzales v. Uber Tech., Inc.*, 305 F.Supp.3d 1078, 1092 (N.D. Cal. 2018); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026).

Other than its reliance on VPPA, which the Court has already dismissed, Plaintiffs fail to establish why their unspecified "video-viewing data" is distinctly "embarrassing, invasive or otherwise private," such that it rises to the level of "the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791, 794. Here, Plaintiffs conclusorily state that the "invasive profiling scheme" of their video-viewing data and technical identifiers is entirely distinct from "pet store preferences, pizza orders, tire purchases, hotel bookings, retail purchases, or LinkedIn profile URLs from a singular website." (Opp. at 9-10.) However, like *Posadas*, Plaintiffs have not "provide[d] any facts demonstrating that [their] information was tracked across various websites," such that other data collected was sufficiently "invasive" to qualify as "highly offensive." 2024 WL 5114133 at *6. Moreover, Plaintiffs do not allege they expressly opted-out of any routine collection or that Samba directly misrepresented to

[3] Notwithstanding Plaintiffs' attempt to bolster their allegations in their SAC by including descriptors for these device identifiers (SAC ¶¶ 112-14, 195, 198), courts remain clear that there is no reasonable expectation of privacy in this type of device information. (Mot. at 19); *Brushfire Records*, 2025 WL 3692144 at *7; *Culligan Int'l Co.*, 2025 WL 3064113 at *4-5.

them that their routine technical information would not be collected. *Cf. In re Facebook*, 956 F.3d at 602 (data tracking practices misrepresented collection of online/offline data); *Brown v. Google LLC*, 685 F.Supp.3d 909, 920-21 (N.D. Cal. 2023) (allegations about defendant's data collection practices presented in policies to plaintiffs contravened alleged collection); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 614 (N.D. Cal. 2021) (detailing allegations about defendant's representations to plaintiffs regarding data collection practices)); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *1 (N.D. Cal. July 14, 2025). Because Plaintiffs cannot establish a reasonable expectation of privacy or a highly offensive intrusion, their privacy claims cannot stand.

**2. <u>Plaintiffs Fail to Adequately Plead Their CIPA Claims</u>**

**i. <u>Plaintiffs Fail to State a Claim Under Penal Code Section 631</u>**

Plaintiffs concede that they cannot establish a CIPA section 631(a) claim under the first clause. (Opp. at 10-11); *Miller v. Ford Motor Co.*, 620 F.Supp.3d 1045, 1059 (E.D. Cal. 2022).

As to the second clause, Plaintiffs' allegations that Samba intercepted "video-viewing activity" are insufficient to establish "contents" under CIPA particularly where, as here, the information allegedly revealed is generic and nonspecific. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 7512, 758-59 (N.D. Cal. 2023). "The Ninth Circuit has explained that 'record information regarding the characteristics of the message that is generated in the course of the communication' is not 'content'" for purposes of CIPA. *Krzyzek v. OpenX Tech., Inc.*, 2026 WL 206855, at *6 (N.D. Cal. Jan. 27, 2026). Specifically, allegations regarding the collection of "full-string URLs and button click events" are "deficient where a plaintiff does not identify with specificity what searches they conducted or what webpages they viewed." *Id.* at *6; *Gonzales*, 305 F.Supp.3d at 1084-85.

Plaintiffs' reliance on the collection of vague "video-viewing data" without any specificity does not establish the "contents" element required for their CIPA claim. Plaintiffs' reliance on *Mata v. Zillow Group, Inc.*, 2024 WL 5161955, at *3-4 (S.D. Cal. Dec. 18, 2024), confirms that the paucity of detail surrounding Plaintiffs' alleged data collected is insufficient. In *Mata*, the court found that "contents" was sufficiently alleged in light of plaintiff's detailed allegations

regarding their data tracked on the real estate marketplace website and mobile application, including "records of ***which specific videos*** Plaintiffs requested ***as well as Plaintiff's PII*** in the form of his ***email address*** (which includes his last name), and ***Facebook ID***." 2024 WL 5161955, at *3-4 (S.D. Cal. Dec. 18, 2024) (emphasis added). This level of specificity stands in stark contrast to Plaintiffs' bare assertion of technical identifying information, such as "IP addresses," and barebones allegation of "video-viewing content." (SAC ¶¶ 14, 21-22, 30, 38, 46, 54, 62, 70.) Plaintiffs' allegations do not establish the collection of "content" information under Section 631(a). *Heiting v. Taro Pharm., Inc.*, 709 F.Supp.3d 1007, 1018 (C.D. Cal. 2023); *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021); *Gonzales*, 305 F.Supp.3d at 1084-85.

Plaintiffs also do not plausibly allege that Samba learns the contents of any "in-transit" communications. Instead, their allegations merely parrot CIPA's statutory language, but are bereft of any well-pled facts to establish real-time interception as required under the statute. (SAC ¶¶ 17, 25, 33, 41, 49, 57, 65, 73, 106, 111, 225, 274.) *Rodriguez v. Aquatic Sales Solutions*, 735 F. Supp. 3d 1208, 1228 (C.D. Cal. 2024), on which Plaintiffs rely, is inapposite. In *Aquatic Sales*, the court found "in transit" interception based on specific allegations: communications were first "route[d to] Zendesk's own computer servers that it owns, controls, and maintains," based on code that "enables and allows Zendesk to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications.' These allegations, particularly the allegation that the chat communications are routed through Zendesk's servers after visitors send their communications, are sufficient to suggest that the alleged interception occurs while the communications are still in transit." *Id.* at 1228. Plaintiffs' allegations pale in comparison, "merely restat[ing] the pleading requirement of real time interception' without providing any 'specific facts as to how or when the interception takes place." *Riganian*, 791 F.Supp.3d at 1092 (cleaned up).

Because Plaintiffs have failed to allege a predicate interception of the contents of their communications while in transit, Plaintiffs' derivative claims under the third and fourth clauses also fail. Cal. Penal Code § 631(a); *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025).

**ii. Plaintiffs Fail to State a Claim Under Penal Code Section 632**

Plaintiffs' "private online communications" are not confidential nor does their alleged compilation into "comprehensive profiles" establish them as "something unique . . . which justify departing from the presumption" that internet activity is not private. (Opp. at 13-14); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp.3d 778, 788 (N.D. Cal. 2022) (distinguishing communications made in context of patient-medical provider relationship from routine online communications); *supra* § II.B.1. Plaintiffs attempt to conflate compiled profiles of "identifying information and video-viewing activity" with prototypically protected "confidential" information such as medical and financial information fails. *See, e.g.*, *Griffith*, 2023 WL 9019035 at *2-4 (collection from "potentially sensitive websites including sites related to personal health . . . sensitive financial information, religious websites, . . . and even some government websites"); *Meta Pixel Healthcare*, 647 F.Supp.3d at 798-99.[4] Without establishing Samba recorded a "confidential communication," Plaintiffs' Section 632 claim cannot stand.

**iii. Plaintiffs Fail to State a Trap and Trace Claim Under Penal Code Section 638.50 and 638.51**

Plaintiffs cannot sequester CIPA's interlocking trap and trace provisions from one another and ignore the California Legislature's intent to cabin the trap and trace law to telephone lines. (Opp. at 14.) CIPA's provisions "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed*, 74 P.3d 166, 170 (Cal. 2003); *Lakin v. Watkins Associated Indus.*, 863 P.2d 179, 188 (Cal. 1993) ("[E]ach sentence must be read not in

---

[4] Plaintiffs invoke cases in which the "confidential communication" requirement is satisfied because a defendant expressly represented that certain specific communications would be kept private. (Opp. at 13-14 (citing *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *1, *5 (N.D. Cal. Apr. 4, 2025) (collection of specific search queries, "the 'name of the button clicked and the name of the webpage;' items viewed and placed in cart;" "the visitor's name, address, phone number, and email"; "the visitor's Facebook ID"; "the full URL string visited, the product purchased, and the unencrypted phone number and email" were confidential communications under 632(a) "as a result of the disclosures and promises in Rack Room's privacy policy"); *Vizio*, 238 F.Supp.3d at 1212-13, 1226-27 (privacy policy indicating data would not be collected, studies regarding how the majority of people were identifiable based on the data collected, and 100 billion content points allegedly collected); *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *1-2, *5 (N.D. Cal. Dec. 30, 2024) (allegations of online and offline tracking in violation of privacy policy representations).) These cases are not on point given the absence of any similar allegations here.

isolation but in the light of the statutory scheme" such that "[a]n interpretation that renders related provisions nugatory must be avoided."). In light of Section 638.52's myriad references to trap and trace devices applied to telephone lines only, application of the trap and trace statute to internet communications would contravene these principles. *See* Penal Code § 638.52(c)-(d).[5] Plaintiffs' assertion that "Samba's position finds no support in case law" (Opp. at 15) is false, as both California federal and state courts have held that trap and trace claims do not apply when Plaintiffs fail to allege use of a telephone line.[6] Additionally, Plaintiffs' reading of the statute otherwise would cause the application of the CCPA (which specifically applies to collection of data from websites) to be a nullity. *See Scharon*, 2025 WL 2996812 at *2.

Further, Plaintiffs base their pen register and/or trap and trace device claims on a single paragraph in their SAC: "These processes captured 'routing, addressing, or signaling information' because they intercept, at least (1) the Samba TV domain being contacted (e.g., events.cid.samba.tv, manager.tvp.samba.tv, etc.); (2) the IP address of both the sender and receiver; (3) the time the connection was made; and (4) other identifiers, like SambaID." (SAC ¶ 248.) These allegations are distinct from those presented in cases to which Plaintiffs cite where the

---

[5] When the legislature has intended for CIPA to apply to the internet, it has expressly stated as much. Cal. Penal Code § 632.01(emphasis added) (penalizing the intentional "disclos[ure] or distribut[ion], in any manner, in any forum, including, but not limited to, *Internet Web sites and social media*, or for any purpose, the contents of a confidential communication with a health care provider that is obtained by" the offending person). If the legislature intended CIPA's trap and trace provisions to apply to the alleged online activity at issue, it would have amended the statute accordingly. The California Legislature has amended CIPA during the internet's undisputed ubiquity for the last two decades, yet *has declined* to expand CIPA's reach to the transmission of internet data. *See Cody v. Ring LLC*, 718 F.Supp.3d 993, 999 (N.D. Cal. 2024) (rejecting argument that "CIPA should be interpreted to apply to new technologies" given that "CIPA's multiple amendments, including in 2011 and 2022 . . . [did] not update[] [clause one of Section 631] to include internet technologies"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1080 (C.D. Cal. 2023) ("[t]he fact that the Legislature has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections").

[6] *Scharon v. Paramount Global*, 2025 WL 2996812, at *2 (L.A. Super. Ct. Oct. 3, 2025) (emphasis added) (In granting the Defendant's demurrer, the Court held that the "proper reading is that section 638.51 prohibits installation of pen registers and trap and trace device on ***telephone lines***. Because Plaintiffs do not allege a telephone line was involved in this case, they have not stated a claim under CIPA."); *Schallert v. Orkin LLC,* 2025 WL 4332757, at *1 (L.A. Super. Ct. Dec. 15, 2025) ("Does California's legal prohibition on using 'trap and trace devices' without a court order—a prohibition enacted by Legislature after ubiquitous use of the internet, but without any reference to the internet—impose civil liability on websites that collect 'tracking' information about website visitors? This Court concludes that the answer is 'no.' . . . Rather, a 'trap and trace device' tracks incoming telephonic communications.").

alleged technology is "'at least a process' because [it is] 'software that identifies consumers, gathers data, and correlates that data." *See, e.g.*, *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024). Nor do Plaintiffs' allegations indicate that "the information collected was 'dialing, routing, addressing, or signaling' information." *Tsering*, 2026 WL 89320 at *6 (dismissing pen register claim). Accordingly, even if Sections 638.50 and 638.51 were to apply to internet technologies (they do not), Plaintiffs have not satisfied the trap and trace's remaining technical requirements.

### 3. **The Complaint Fails to State a CDAFA Claim**

Plaintiffs seek to establish statutory standing under CDAFA based on the unjust profits allegedly earned by Samba from Plaintiffs' data. (Opp. at 16-17.) However, Plaintiffs do not allege anything more than generalized assertions that their personal data has value and there is a market for it. (*See id.*) To successfully demonstrate that a plaintiff's data has actual (and not hypothetical) value requires specificity to demonstrate why it is unjust for a defendant to retain it, particularly in the absence of a showing of ***loss*** to the plaintiff. *See Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *5 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim for failure to plausibly allege that plaintiff "suffered damage [resulting from] alleged sharing of her communications"); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp.3d 767, 804 (N.D. Cal. 2019) ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property); *cf. Brown*, *supra*, 685 F.Supp.3d at 920 (plaintiffs "state[d] an economic injury for their misappropriated data" based on allegations that Google itself had piloted a program paying users $3.00 per week for their browsing history, which it instead collected and sold without renumerating the plaintiffs or obtaining consent); *Rodriguez*, *supra*, 772 F.Supp.3d at 1107-10 (entertaining disgorgement of profits theory where plaintiffs affirmatively revoked permission to collect data on which defendant profited). Where, as here,

Plaintiffs have not alleged any permission was revoked, Plaintiffs have not established CDAFA standing.

**4. Plaintiffs Fail to State a Federal Wiretap Act Claim**

Plaintiffs' Federal Wiretap Act claim fails for the same reason as their Section 631(a) claim—failure to allege any collection beyond "record" information. *See supra* § II.B.2; *Graham*, *supra*, 533 F.Supp.3d at 833.

Further, Plaintiffs' allegations indicate Samba is a party to the communications, and is not incapable of being detected, such that it can avail itself of the ECPA's party exception. Specifically, Plaintiffs allege that Samba's chip comes "embed[ed]" in Smart TVs and integrated into the Smart TV's communication process. (SAC ¶¶ 2, 14, 22, 30, 38, 46, 54, 62, 70, 104-11.) Further, Sony's website and the televisions at issue disclose the presence of Samba's technology, and are not furtively embedded in Plaintiffs' devices. (SAC ¶ 167.) The fact that the Samba-enabled Smart TV also communicates with "online service providers (e.g. Hulu and Amazon)" does not make Samba an interloper, nor does it preclude Samba from also being a party to the communication.

In turn, to circumvent the ECPA's "party exception," Plaintiffs attempt to invoke the ECPA's "crime-tort exception." (Opp. at 19.) But this limited exception requires more than alleging Samba "disclose[d] . . . intercepted data to third parties, use[d] it 'for advertising,' or compile[d] comprehensive user files." (Opp. at 19.) In other words, Plaintiffs cannot attempt to "bootstrap an alleged CIPA violation to invoke the Crime-Tort Exception." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025).[7]

Plaintiffs do not allege any criminal or tortious motive apart from the alleged interception itself. (Opp. at 19.) Plaintiffs solely allege that "Samba TV designed its ACR technology and Identity Graph for the exact purpose of intercepting these identifiable communications…." (SAC ¶ 272.) But this type of commercial behavior, absent an ulterior tortious motive, is insufficient to

[7] Because Plaintiffs' "crime-tort exception argument is predicated on [their] CIPA claim and [their] allegations" that Samba's actions "violate" other California laws, to the extent these claims are "inadequately pled" they cannot "provide a basis for the crime-tort exception." *Crano*, 2025 WL 2689267 at *7; *supra* §§ II.B.1-3.

invoke the crime-tort exception. *See, e.g.*, *Lakes v. Ubisoft*, 777 F.Supp.3d 1047, 1057-58 (N.D. Cal. 2025) (cleaned up) (declining to apply crime-tort exception to alleged motive "to improve the effectiveness of its and Meta's advertising and marketing and to monetize the information via targeted advertising, and other means"); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (declining to apply crime-tort exception where alleged motive was "to improve [] marketing and advertising efforts" "rather than to injure plaintiffs tortiously or criminally").[8]

**5. Plaintiffs Fail to State a Claim Under the UCL**

Plaintiffs' UCL claims are "purely hypothetical" because they do not establish any alleged economic loss experienced by Plaintiffs, nor "what the actual value of [] [P]laintiffs' data could be . . . nor how the value of a person's data decreases when their data is misappropriated." *Lineberry v. Addshoppers, Inc.*, 2025 WL 1533136, at *2 (N.D. Cal. May 29, 2025); *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025) (same); *contra Brown*, 685 F.Supp.3d at 920. Because California law does not recognize a free-standing property interest in personal information, Plaintiffs have not established statutory standing. *Gonzales*, 305 F.Supp.3d at 1093.

In their Opposition, Plaintiffs assert that recent authority confirms that Plaintiffs' "loss of [] personal information" or the diminution in its value constitute economic injury. (*See* Opp. at 19-20.) However, the authorities on which they rely are distinguishable.[9] Although there ***might***

---

[8] Plaintiffs mischaracterize Samba's Motion as suggesting that "the existence of a financial motivation for breaking the law" is "a get-out-of-liability free card." (Opp. at 19.) Plaintiffs weave this tale from whole cloth, and ignore Samba's reliance on case law in which alleged mere financial motivation does not support the existence tortious or criminal behavior under the crime-tort exception. (Mot. at 29-30.)

[9] *Calhoun* found sufficient economic injury based on allegations that: "personal information was disclosed in a data breach and [plaintiffs] lost the sales value of their personal information," and a "lost property value of personal information" based on direct material misrepresentations, which were sufficient to establish larceny. 526 F. Supp. 3d at 632-33, 635-36; *see also Brown*, 685 F.Supp.3d at 920 (economic injury based on misappropriated data where allegations showed Google offered to pay users for their browsing history then collected and sold without renumeration or consent); *In re Meta Tax Filings Cases*, 724 F.Supp.3d 987, 1024 (N.D. Cal. 2024) (finding standing appropriate based on "diminished value" when accompanied by allegations that plaintiff "either attempted or intended to participate' in the market for their data, 'or otherwise derive economic value from their PII"); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-61 (D. Md. 2020) (addressing "lost property value" "result[ing] from cyberattack" and sale "by hackers on the dark web").

be a property interest where defendants improperly access and exploit data in the face of representations to consumers to the contrary, this does not mean that ***any time*** there are "unjust profits" accrued by another collecting a plaintiff's data, a property interest sufficient to satisfy standing exists. *See, e.g.*, *Pruchnicki v. Envision Healthcare Corp.*, 845 F.App'x 613, 614-15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that ***her*** personal information actually lost value."); *Gonzales*, 305 F.Supp.3d at 1093 ("an invasion of privacy through the collection of private information is not 'lost money or property' conferring UCL standing").

Here, Plaintiffs have not alleged any representations by Samba that it would not collect or disseminate their information, and Plaintiffs have not alleged how ***their*** personal information actually lost value. *Libman v. Apple, Inc.*, 2024 WL 4314791, at *18 (N.D. Cal. Sept. 26, 2024) ("Although internet browsing history, or other personally identifiable information, can be quantified or sold, Plaintiffs do not allege they intended to sell the data Apple collected or otherwise allege that someone else would have bought the data.").

Plaintiffs' conclusory assertion that they would not have bought their Smart TVs had they been aware of the embedded Samba technology fares no better. (Opp. at 21.)[10] Plaintiffs cannot establish an economic injury without any credible allegations "they were deceived by a [company's representations] into spending money to purchase [a] product, and would not have purchased it otherwise." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F.Supp.3d 625, 764 (C.D. Cal. 2022). Though Plaintiffs make allegations regarding Samba's various online representations with respect to its software and capabilities, there are no allegations that Plaintiffs saw these allegations and, in turn, relied on them or otherwise were influenced by them in making their purchasing decisions. *See generally* SAC; *Seldin v. HSN, Inc.*, 2018 WL 3570308, at *3-4

[10] Plaintiffs attempt to distinguish *Perez v. Romantix Online, Inc.*, 2025 WL 3085786 at *1 (N.D. Cal. Oct. 27, 2025), and *Libman* on the ground that these cases involved "the purchase of physical products, where the allegedly wrongful data collection only occurred through separate apps or websites *after* the transactions" they are inapposite. *Compare* Mot. at 31 *with* Opp. at 21. Not only is this factually inaccurate as to *Perez*, 2025 WL 3085786 at *1 (N.D. Cal. Oct. 27, 2025) (allegations that tracking occurred immediately upon visit of defendant's website prior to any purchases), but the nature of the transactions was wholly irrelevant to both courts' analyses of why statutory standing for the UCL claims was lacking. *See Perez*, 2025 WL 3085786 at *3; *Libman*, 2024 WL 4314791 at *1, *19.

(S.D. Cal. July 25, 2018) (citation omitted) ("When the economic loss is predicated solely on how a product functions, and the product has not malfunctioned . . . something more is required than simply alleging an overpayment for a 'defective' product.").

Plaintiffs cannot establish the "unlawful conduct" prong of its UCL claim where they cannot establish a violation of any predicate claims under CCPA or COPPA. *Stark v. Patreon*, 635 F.Supp.3d 841, 855 (N.D. Cal. 2022) (dismissal of VPPA claim necessitated dismissal of the "'unlawful' prong of the UCL" claim); *compare* SAC (no allegations as to "children under the age of 13") *with Hubbard v. Google LLC*, 2024 WL 3302066, at *2 (N.D. Cal. July 1, 2024) (COPPA protections); (Mot. at 32.) Nor can Plaintiffs establish the unlawful prong based on their improperly pled statutory claims. *Supra* §§ II.B.2-4; *Crano*, 2025 WL 2689267 at *8. Plaintiffs' conclusory allegations similarly fail to state a claim under the unfair prong; instead they "merely parrot the statutory language and therefore fail to state a claim. (SAC ¶ 287.)

Finally, Plaintiffs cannot establish unfair conduct based on the same conduct on which their "unlawful theory" is predicated. (Mot. at 33.) Nor can Plaintiffs rely on broad-based statements by Samba, none of which Plaintiffs were aware of or relied on, regarding their compliance with various privacy laws—particularly in the absence of any allegations demonstrating that Samba in fact violated these laws. All that remains are Plaintiffs' conclusory assertions regarding Samba's conduct being "immoral, unethical, oppressive, unscrupulous, and substantially injurious," which does not withstand scrutiny.

**6. <u>Plaintiffs Equitable Relief Claims Fail</u>**

Plaintiffs have not established that Samba has received "ill-gotten profits rightfully belong[ing]" to them, such that an unjust enrichment claim can stand. *Crano*, 2025 WL 2689267 at *9 ("Because plaintiff has not stated a claim against [Samba] for any unlawful conduct, [they] [have] also failed to state an unjust enrichment claim.") (cleaned up); *supra* §§ II.B.1, 4, 6. For the reasons discussed above, and similar to their initially defective pleading, Plaintiffs have not alleged sufficient detail regarding "what information Samba actually obtains about Plaintiffs." *Wendover Prods., LLC v. PayPal Inc.*, 2025 WL 3251667, at *5 (N.D. Cal. Nov. 21, 2025); *Lair v. Bank of Am., N.A.*, No. 23-cv-01345-WLH, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024)

(SAC ¶¶ 14, 22.) Moreover, Plaintiffs have failed to establish they lack an adequate remedy at law where they seek compensatory damages for the same underlying conduct. Plaintiffs' assertion that *Hubbard* does not apply because the equitable relief was moot in light of an FTC order ignores the fact that the FTC order only applied to a subset of the plaintiffs in that case. 2024 WL 3302066 at *1-2.[11]

## III. CONCLUSION

For the foregoing reasons, Samba respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: March 5, 2026

COZEN O'CONNOR

By: */s/ Matthew E. Lewitz*
Matthew E. Lewitz
Brett N. Taylor
*Attorneys for Defendant*
*Samba TV, Inc.*

[11] With good reason, in light of this Court's 10/30/25 Order, Plaintiffs abandon any argument that their injunctive relief claim should survive. (*See generally*, Opp.; 10/30/25 Order, Dkt. No. 49 at 10.)